UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEANNE TAN, an individual, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>KONNEKTIVE REWARDS, LLC, et al.,<br><br>Defendants. | Case No.: 20-cv-1082-LL-DDL<br><br>**ORDER ON PLAINTIFF'S MOTIONS TO SEAL**<br><br>[Dkt. Nos. 258, 264] |

Before the Court are two Motions for Leave to File Documents Under Seal (the "Motions to Seal") by Plaintiff Leanne Tan ("Plaintiff"). Dkt. Nos. 258, 264. The Konnektive Defendants and the Quick Box Defendants (collectively, "Defendants") join. *See* Dkt. No. 267. For the reasons stated below, the Motions to Seal are **DENIED**.

I.

**BACKGROUND**

In this putative consumer fraud class action, Plaintiff alleges Defendants and others "scammed" her by enticing her to redeem an offer for a free trial of skin care products, only to charge her, unwittingly, for the full price of the products and

ongoing installments of the same. *See generally* Dkt. No. 89. In Plaintiff's case, the alleged scam began with a text message that appeared to be from Amazon. *See id.* Plaintiff alleges she was duped by means of the text message into signing up to receive a sample of skin cream for only the price of shipping – less than $5.00 – but that ultimately Defendants charged her more than $170.00 for products she neither wanted nor consented to buy. *See id.* Plaintiff has moved to certify a class of similarly aggrieved consumers, supported by her deposition testimony about the text message she received. *See* Dkt. Nos. 229, 229-4 (under seal).

On January 4, 2023, the Konnektive Defendants moved for evidentiary sanctions against Plaintiff, reporting that Plaintiff had spoliated her cell phone and with it, the "fake text message" she allegedly received. Dkt. No. 254 (the "Spoliation Motion"). The Quick Box Defendants joined the motion. Dkt. No. 255. Defendants seek an order precluding Plaintiff from testifying, whether by declaration or at trial, about the contents of the text messages that were allegedly lost. Dkt. No. 260 at 6. Plaintiff opposed the Spoliation Motion, Dkt. No. 259, and concurrently moved to seal Exhibits 1 and 4 to her opposition, as well as portions of her opposition brief that quote from or reveal the contents of those exhibits. Dkt. No. 258.

On February 2, 2023, Plaintiff moved for terminating sanctions, alleging that Quick Box's CEO, Stephen Adelé, "perjured himself" in declarations before the District Court, undermining the judicial process and causing "severe[] prejudice" to Plaintiff (the "Perjury Motion"). Dkt. No. 263. Plaintiff asks the Court to enter default judgment against Adelé and Quick Box, LLC. *See id.* Plaintiff concurrently moved to file 18 exhibits to the Perjury Motion under seal.[1] Dkt. No. 264.

---

[1] The Quick Box Defendants' motion to file documents related to their opposition to the Perjury Motion under seal will be addressed in a separate order. *See* Dkt. No. 270.

II.

**LEGAL STANDARDS**

"[T]he courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978). "Unless a particular court record is one 'traditionally kept secret,' a 'strong presumption in favor of access' is the starting point." *Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (*citing Foltz v. State Farm Mut. Auto Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003)). "'The presumption of access is 'based on the need for federal courts, although independent—indeed, particularly because they are independent—to have a measure of accountability and for the public to have confidence in the administration of justice.'" *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1096 (9th Cir. 2016) (citation omitted).

A party seeking to seal a judicial record bears the burden of overcoming the strong presumption of access. *Foltz*, 331 F.3d at 1135. The showing required to meet this burden depends upon whether the documents to be sealed relate to a motion that is "more than tangentially related to the merits of the case." *Ctr. for Auto Safety*, 809 F.3d at 1102. Where the underlying motion is "more than tangentially related to the merits," there must be "compelling reasons" to overcome the public's right of access. *Id*. at 1096–98. Where the underlying motion does not surpass the tangential relevance threshold, materials may be sealed only upon a showing of "good cause." *Id*. Under either standard, limited redactions are to be favored over the wholesale sealing of documents. *See Whitecryption Corp. v. Arxan Techs., Inc.*, No. 15-cv-00754-WHO, 2016 WL7852471, at *2 (N.D. Cal. Mar. 9, 2016) (noting that records should be redacted "in the narrowest way possible to preserve their confidential information while protecting the general right of the public to access court records").

/ / /

### III.
### DISCUSSION

Before proceeding with its analysis, the Court takes the opportunity to address parties' briefing – or lack thereof – on the Motions to Seal. Although each of Plaintiff's filings was styled as a "motion for leave to file documents under seal," Plaintiff does not, in fact, want permission to file any documents under seal. *See* Dkt. Nos. 258, 264. Instead, Plaintiff states in each of her single-page filings that none of the materials at issue qualify for sealing, but that pursuant to the operative protective order, she was required to file them under seal. *See id.* Plaintiff seeks "relief from the requirements of the Protective Order." *Id.* "[T]o avoid repetitive briefing," Plaintiff incorporated by reference a previously filed motion to seal and stated that "for the same reasons articulated in that motion, the materials in this motion . . . should not be required to be filed under seal." Dkt. No. 258 at 2 (referencing Dkt. No. 230); Dkt. No. 264 at 2 (same). While this approach may have spared Plaintiff time and effort, it did not have the same benefit for the Court. Plaintiff is reminded that in seeking relief from the Court, it is her responsibility to provide the Court with the legal and factual bases in support thereof. *See* CivLR 7.1.f. The Court is not obligated to scour the docket for similar motions Plaintiff (or any other party) may have filed and graft the parties' arguments into the present dispute, regardless of any factual or legal overlap. The Court cautions Plaintiff – and all parties – that going forward, motions will be decided on the moving papers **only**, and the failure to provide the Court with complete briefing may result in denial of the requested relief. *See* CivLR 7.1.d.

As to Defendants, their brief in support of sealing is replete with the rote incantation that the documents concern "confidential" and "proprietary" business information, without further analysis and unsupported by a declaration or other evidence. *See generally* Dkt. No. 267. Such "perfunctory submission[s]" do not assist the Court, who must then "decide [the] complex issue of sealing with no

adversarial briefing" from those litigants who are in the best position to explain why their information meets the Ninth Circuit's standard for sealing. *See SiteLock LLC v. GoDaddy.com LLC*, No. CV-19-02746-PHX-DWL, 2021 WL 1574660, at *14 (D. Ariz. Apr. 22, 2021) (denying motion to seal); *see also AngioScore, Inc. v. TriReme Med., Inc.*, No. 12-CV-3393 YGR, 2014 WL 2886246, at *2 (N.D. Cal. June 25, 2014) (noting the "undue burden" imposed upon the Court by sealing motions that do not make more than "bare allegations of harm"). The Court takes the matter of sealing judicial records seriously and expects the parties to do the same by way of complete and thorough briefing.

Notwithstanding the foregoing, the Court has endeavored to evaluate whether the documents before it are sealable. Having reviewed the documents, and considering the governing Ninth Circuit standards for sealing, the Court finds they are not.

**A.   The "Compelling Reasons" Standard Applies**

In determining which standard should govern a request to seal judicial records, the Ninth Circuit cautions against adopting a "bright line rule" that would employ the "compelling reasons" standard only where the underlying motion is "technically dispositive." *Ctr. for Auto Safety*, 809 F.3d at 1101-02. Here, the Court finds that the Spoliation Motion is "'more than tangentially related to the merits of [the] case,'" *id.* at 1102, because the relief requested by Defendants would, if granted, impose restrictions on the evidence Plaintiff can present both for purposes of class certification and at trial. *See Edifecs, Inc. v. Welltok, Inc.*, No. C18-1086JLR, 2019 WL 5618822, at *1 (W.D. Wash. Oct. 31, 2019) (applying compelling reasons standard to a motion for evidentiary sanctions); *see also Charles v. Target Corp.,* No. 20-CV-07854-HSG, 2022 WL 3205047, at *3 (N.D. Cal. July 6, 2022) (applying compelling reasons standard to motion for spoliation sanctions). The Court further finds that the Perjury Motion, indisputably a dispositive motion, is also more than tangentially related to the merits. Therefore,

the Court evaluates the Motions to Seal under the "compelling reasons" standard. To meet that standard, the party seeking sealing must make a showing, **supported by specific facts**, that the records at issue could "'become a vehicle for improper purposes'" if not kept confidential. *Kamakana*, 447 F.3d at 1179 (citation omitted). The Court must then "balance the competing interests of the public and the party seeking to seal judicial records." *In re Midland Nat. Life Ins. Co. Annuity Sales Prac. Litig.*, 686 F.3d 1115, 1119 (9th Cir. 2012) (citation omitted).

**B. Defendants Have Not Articulated Compelling Reasons for Sealing Plaintiff's Opposition to the Spoliation Motion and Exhibits 1 and 4 Thereto**

In support of their request to seal documents related to the Spoliation Motion, Defendants conclusorily assert that Exhibits 1 and 4 contain "confidential business and financial information [that] is likely to be misused to the detriment of both the Konnektive Defendants and its [sic] licensees." Dkt. No. 267 at 5. Defendants further state that Exhibit 1 is a screenshot of Konnektive's "proprietary" software and that disclosure of the way the software "catalogs and organizes information in an easily digestible format for users is proprietary and essential to the Konnektive Defendants' competitive advantage over other services." *Id.* at 4. Defendants also note that the screenshots include the "account settings for one of [their] licensees' customers." *Id.* As to Exhibit 4, Defendants assert that the document contains licensees' sales, pricing, and revenue information "on a granular level" that Konnektive is "contractually obligated" to keep confidential. *Id.* at 5. Defendants' joinder is silent as to the proposed redactions to Plaintiff's opposition brief.

The Court finds that Defendants have failed to carry their burden to establish compelling reasons to seal. To begin, neither party has articulated *any* basis for sealing Plaintiff's opposition brief, and the Court's independent review reveals none. Put simply, nothing in the record before the Court would justify the sealing of information regarding the number of potential class members, the type of phone

Plaintiff used during the time period at issue, or the fact that Defendants or their affiliates tracked the specific advertisements or surveys that led customers to their websites to purchase their products (or obtain them for free).

Further, Defendants' vague, conjectural statements that the information contained in Exhibits 1 and 4 "is likely to be misused" and that its disclosure would "harm" Konnektive's "competitive advantage" are exactly the type of unsubstantiated allegations of nonspecific harm that courts in this Circuit have repeatedly found do not demonstrate good cause, let alone compelling reasons, for sealing. *See Anderson v. Marsh*, 312 F.R.D. 584, 594 (E.D. Cal. 2015) (citing *Foltz* for the proposition that "broad allegations of harm" do not satisfy the good cause standard); *accord Midland*, 686 F.3d at 1120 (noting that even where good cause standard is satisfied, compelling reasons test will not be met). The "parties' mere allegations that disclosure would harm their competitive standing are insufficient to justify sealing court records." *Mission Wellness Pharmacy LLC v. Caremark LLC*, No. CV-22-00967-PHX-GMS, 2022 WL 17039205, at *2 (D. Ariz. Nov. 17, 2022) (citing *Kamakana*, 447 F.3d at 1179).

Relatedly, the bare fact that the documents reveal the "identity and account numbers … and processing capacity" for Defendants' business affiliates, devoid of further analysis, does not establish compelling reasons to seal. *See U.S. Ethernet Innovations, LLC v. Acer, Inc.,* No. C 10-3724 CW, 2013 WL 4426507, at *2 (N.D. Cal. Aug. 14, 2013) (finding that party's "broad and generic statements" of competitive harm and security concerns did not meet the compelling reasons standard for sealing, where party "provide[d] no specific facts or explanation of . . . what these security concerns are, how it would be hurt competitively and why it expects that this would result from public disclosure of this material"); *see also Bunsow De Mory LLP v. N. Forty Consulting LLC,* No. 20-CV-04997-JSC, 2020 WL 7872197, at *2 (N.D. Cal. Aug. 7, 2020) (finding that "merely mentioning a party with whom Plaintiff has done business or worked together does not offer a

compelling reason to seal the party's name absent evidence that the name of its long-time client is a trade secret").

For the same reasons, the Court finds that Defendants have not met their burden of showing that the financial and revenue information contained in Exhibit 4 is sealable. It is true that financial and other "commercially sensitive information" has been found sealable by courts in this District and within the Ninth Circuit. *See* Dkt. No. 257 at 5 (citing *Orthopaedic Hosp. v. Encore Med.*, *L.P.*, No. 19-cv-970 JLS (AHG), 2021 WL 1966121, at *2 (S.D. Cal. Apr. 12, 2021)). But the question for the Court is not whether similar information has been sealed before, but whether the parties have made the necessary showing that it is sealable in this instance. Financial information is not *per se* subject to sealing, particularly where the passage of time has ameliorated the sensitivity of the information. *See Pac. Marine Propellers*, *Inc. v. Wartsila Def.*, *Inc.*, No. 17-cv-555-L-NLS, 2018 WL 6601671, *2 (S.D. Cal. Dec. 14, 2018) (denying motion to seal because "[d]efendants have not shown why this outdated [financial] information would have any effect on [its] competitive standing at the present"). Here, the financial information in question is three to four years out of date, and Defendants have not "supported" the assertion that their interest in the confidentiality of this information outweighs the public's right of access with any "specific factual findings." *Kamakana*, 447 F.3d 1178-79 (citation omitted).

The Court is also unpersuaded by the fact that the "End User License Agreement," entered in the abstract and without regard to whether any particular document or piece of information meets the Ninth Circuit's standard for sealing judicial records, requires the Konnektive Defendants to maintain its licensees' information in confidence. "[T]he fact that parties contract or agree to treat certain information . . . as confidential is an insufficient basis in and of itself for a court to seal a judicial record and override the public's interest in understanding the judicial process." *Grano v. Sodexo Mgmt., Inc.*, No. 18-cv-1818-RSH-BLM, 2022 WL

3371621, at *2 (S.D. Cal. Aug. 16, 2022) (collecting cases). A contrary ruling would render the public's right of access meaningless.

Finally, the Court rejects Defendants' argument that Exhibit 1 should be sealed because it contains account information about "one of the Konnektive Defendants' . . . licensees' customers." Dkt. No. 267 at 4. Here again, Defendants have made no showing of how this information could be misused, as was their burden. *Kamakana*, 447 F.3d 1178-79. Furthermore, the customer in question appears to be Plaintiff, who has already stated her belief that the document should not be sealed.

**C.  Defendants Have Not Articulated Compelling Reasons to Seal Plaintiff's Perjury Motion and Exhibits 6, 7, 8, 10, 11, 12, 13, 14, 17 and 18 Thereto**

As with the Spoliation Motion, Defendants make only broad-strokes arguments in support of sealing Plaintiff's Perjury Motion and certain of the supporting exhibits, nearly all of which are documents produced by Quick Box during the litigation.[2] Defendants generically state that Exhibits 6, 7, 8, 10, 11, 12, 13 and 14 "concern [Quick Box's] business operations" and "business model." Dkt. No. 267 at 5. They assert that disclosure of this "confidential business and financial information would damage Quick Box's ability to compete with other fulfillment companies . . . ." *Id.* at 6. For the same reasons discussed above, the Court finds that these broad, nonspecific assertions are insufficient to meet satisfy Defendants' burden to demonstrate that the documents are sealable. *See Harper v. Nevada Prop. 1, LLC*, 552 F.Supp.3d 1033, 1040 (D. Nev. 2021) (noting that "[t]he burden to show compelling reasons is not met by conclusory assertions").

---

[2] The Quick Box Defendants have withdrawn their confidentiality designations as to Exhibits 1, 2, 3, 4, 5, 9, 15 and 16. Dkt. No. 267 at 2 n.1. The request to seal these documents is therefore moot.

The Court further finds Quick Box's assertion that disclosure of these documents would provide unnamed "others" with "insight . . . as to how they can compete with Quick Box and achieve the same level of success" is entirely speculative. Dkt. No. 267 at 6. Moreover, Defendants' assertions of potential competitive harm are significantly undermined by Quick Box's selective de-designation of documents. Dkt. No. 267 at 2 n.1. The Court cannot discern without guessing, for example, why Quick Box's "Master Services Agreement" can be publicly disclosed but a single-page email containing no text cannot. *Compare* Ex. 3 (Dkt. No. 265-1 at 7-24) with Ex. 14 (*id.* at 114). To the Court's reading, the documents do not reveal any business strategy or trade secrets that would warrant protection, but instead largely concern routine matters such the recovery of receivables from a single business affiliate and a product label mockup. Because the parties have failed to identify a nonspeculative, compelling reason for sealing, the Court also "cannot articulate compelling reasons to keep the information under seal 'without relying on hypothesis or conjecture.'" *In re Google Location Hist. Litig.*, 514 F. Supp. 3d 1147, 1164 (N.D. Cal. 2021) (citation omitted).

The Court further finds the Defendants' contractual obligation to maintain business information in confidence is not a compelling reason to seal the documents. For the reasons explained above, private parties cannot negotiate away the public's right of access to the judicial records.

Defendants also request sealing of Exhibits 17 and 18, emails from Plaintiff's counsel to Defendant's counsel regarding the alleged dishonesty and discovery abuses that are the subject of the Perjury Motion. Dkt. No. 267 at 7. Defendants state these emails "have no evidentiary relevance" and serve only to "further disparage the Quick Box Defendants and their counsel." *Id.* However "unprofessional" (*id.*) these missives might be, though, there is nothing in them that is not also stated in the publicly available Perjury Motion. *See* Dkt. No. 263. The Court appreciates the seriousness of the allegations Plaintiff has made and that

Defendants and their counsel strenuously dispute them. But, given that those allegations are the basis of the Perjury Motion, the Court cannot say that the sole purpose of the emails is to "'gratify private spite.'" Dkt. No. 267 at 7 (citing *Ctr. for Auto Safety*, 809 F.3d at 1097). The Court therefore finds that Defendants have not demonstrated compelling reasons to seal Exhibits 17 and 18.

Having concluded that the exhibits to the Perjury Motion are not sealable, the Court further finds that Plaintiff's memorandum of points and authorities in support of that motion is also not sealable.

**D.    The Parties Failed to Narrowly Tailor Their Sealing Requests**

"Any request to seal must also be 'narrowly tailored' to remove from the public sphere only material that warrants secrecy." *Harper*, 552 F.Supp.3d at 1040-41. Here, Defendants made no effort to limit their requests for sealing to their purportedly sensitive information, choosing instead to advocate for sealing the documents in their entirety. For example, Defendants assert that Exhibit 11, a 96-page printout of a company chat thread, is sealable in its entirety because it "is a day-to-day, moment-by-moment account of how Quick Box" does business. Dkt. No. 267 at 6. Yet even a cursory review of the document reveals a great deal of information that is patently not subject to sealing, including requests to schedule meetings and to be added to distribution lists, the CEO's encouraging remarks in the face of COVID lockdowns and delays, and line upon line of html tags. *See* Dkt. No. 265-2 at 2-97. This information is not remotely protectable under the Ninth Circuit's standards.

Although the Court has found that the documents are not sealable for other reasons as explained above, the parties' failure to narrowly tailor their sealing requests provides an independent reason to deny the Motions to Seal. *See Foltz*, 331 F.3d at 1139 (finding it was an abuse of discretion to grant a motion to seal an entire document where the confidential information could have been "redacted with minimal effort"). The parties are cautioned that Court will not endorse the

wholesale sealing of redactable documents, nor will it undertake the task of redacting limited and potentially sensitive information from a lengthy document where the parties themselves did not do so.

### E. Quick Box's Indiscriminate Designation of Documents as "Confidential"

The Court's review of the exhibits attached to Plaintiff's Perjury Motion suggests that Quick Box's designation of documents as confidential pursuant to the operative protective order has not been the product of "a careful evaluation of the potential harm that might occur if any particular document were disclosed," but instead a troubling practice of designating documents *en masse*. *See McGhee v. N. Am. Bancard, LLC*, No. 17-CV-00586-AJB-KSC, 2021 WL 2577159, at *10 (S.D. Cal. June 23, 2021). The Court's conclusion in this regard is supported by the fact that after the Motions to Seal were filed, Quick Box withdrew its confidentiality designations to eight of the 18 exhibits at issue.

The indiscriminate designation of documents is an abusive discovery practice that "attempt[s] to shift the burden" of identifying a party's confidential information to other parties. *See Gopher Media*, *LLC v. Spain*, No. 319CV02280CABKSC, 2020 WL 12688143, at *4 (S.D. Cal. Aug. 24, 2020) (requiring party to re-review and re-designate entire document production where party indiscriminately designated all documents "attorneys' eyes only") (citation omitted). And, as the instant dispute demonstrates, this practice needlessly multiplies the motions to seal documents so designated, which in turn require the Court's time and attention to resolve. To ameliorate the burdens the over-designation of documents has created, the Court requires that all future motions to seal follow this process: Any party who intends to file a motion to seal documents **that have been designated confidential by another party** must provide the designating party with not less than 36 hours' notice of the motion and the documents at issue. The designating party must inform the moving party within

24 hours of such notice of any documents for which the confidentiality designation has been withdrawn. Any motion to seal must be accompanied by counsel's statement that these procedures were followed.

## IV.

## CONCLUSION

For the reasons stated herein, the Court finds that the parties have not demonstrated compelling reasons to seal Plaintiff's opposition to the Spoliation Motion and Exhibits 1 and 4 thereto. Similarly, the Court finds that the parties have not demonstrated compelling reasons to seal Plaintiff's Perjury Motion and Exhibits 6, 7, 8, 10, 11, 12, 13, 14, 17 and 18 thereto; the request to seal Exhibits 1, 2, 3, 4, 5, 9, 15 and 16 is moot. Furthermore, the Court cannot rely on documents improperly lodged under seal in making findings and recommendations with respect to the Sanctions Motion and the Perjury Motion.

Accordingly, it is hereby **ORDERED** that:

1. Plaintiff's Motion for Leave to File Documents Under Seal [Dkt. No. 258] is **DENIED**;
2. Plaintiff's Motion for Leave to File Documents Under Seal [Dkt. No. 264] is **DENIED**;
3. Within 7 days of the date of this Order, Plaintiff shall file on the public docket unredacted[3] copies of Dkt. Nos. 259, 259-1, 265, 265-1 and 265-2; and

/ / /
/ / /
/ / /
/ / /

---

[3] To the extent Defendants produced the documents at issue to Plaintiff with redactions for privilege or otherwise, those redactions shall remain in place.

4. The parties shall follow the procedures described herein for all future motions to seal. Failure to comply will be considered a basis for denying the motion.

**IT IS SO ORDERED.**

Dated: March 2, 2023

_____
Hon. David D. Leshner
United States Magistrate Judge