UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEANNE TAN, an individual, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>KONNEKTIVE REWARDS, LLC, et al.,<br><br>Defendants. | Case No.: 20-cv-1082-LL-DDL<br><br>**ORDER DENYING DEFENDANTS' MOTION FOR EVIDENTIARY SANCTIONS**<br><br>[Dkt. No. 254] |

Before the Court is the Konnektive Defendants'[1] Motion for Evidentiary Sanctions for Spoliation of Evidence Against Plaintiff Leanne Tan (the "Motion"). Dkt. No. 254. The Quick Box Defendants[2] join the Motion. Dkt. No. 255. For the reasons stated below, the Motion is **DENIED**.

---

[1] The "Konnektive Defendants" are Konnektive Corporation, Konnektive LLC, Konnektive Rewards LLC, Kathryn Martorano, and Matthew Martorano.

[2] The "Quick Box Defendants" are Quick Box LLC, Stephen Adelé, Chad Biggins, and James Martell. The Court refers to the Konnektive Defendants and the Quick Box Defendants collectively as "Defendants" herein.

# I.

# **BACKGROUND**

Plaintiff has sued Defendants (and others) for allegedly tricking her into purchasing a monthly installment of skin care products. *See generally* Dkt. No. 89.[3] Plaintiff alleges that Defendants and others "scammed" her by asking her, through a text message, to take a survey; after completing the survey, she was then invited to redeem an offer for a free trial of La Pura skin care products. *See id.* Despite being assured that she would only have to pay roughly $5.00 to ship the sample, Plaintiff soon noticed charges from Defendants of more than $170.00 for additional products she neither wanted nor consented to buy. *See id.* Plaintiff seeks to represent a class of similarly aggrieved consumers nationwide and in California. *See* Dkt. Nos. 229, 229-4.

The Konnektive Defendants – who disclaim any involvement in the creation or publication of the offending text message – report that after initiating this lawsuit, Plaintiff "traded in her smartphone" without preserving evidence stored in it, including "the text message, the survey she purportedly saw after clicking a link in the text message, or the website she purportedly visited after clicking a link in the survey." Dkt. No. 254-1 at 5-6.[4] The Konnektive Defendants state that the loss of Plaintiff's smartphone has deprived them of "the ability to fully defend themselves," because they "cannot see what Plaintiff claims she saw, what deceived her, and most importantly, what she relied on." *Id.* at 6. To ameliorate this purported

---

[3] The operative complaint is Plaintiff's First Amended Complaint ("FAC"). Dkt. No. 89. Plaintiff's motion to for leave to file a Second Amended Complaint ("SAC") is pending before the District Court. *See* Dkt. No. 240. The SAC adds parties, allegations regarding those parties, and allegations in support of Plaintiff's RICO claim, but the allegations summarized herein are unchanged. *See* Dkt. No. 240-3 (redline of proposed amendment).

[4] All page citations are to the CM/ECF page numbers.

prejudice, the Konnektive Defendants request "an order precluding Plaintiff from offering testimony, whether by declaration or orally, describing what she personally saw, but did not preserve in connection with her purchase of La Pura skin cream products." *Id.*

The Quick Box Defendants join in the Konnektive Defendants' request for an order precluding Plaintiff's testimony describing the text message, the survey, and the website. Dkt. No. 255. The Quick Box Defendants further suggest that "[a]dditionally, and as an alternative, the Court [issue] an adverse inference jury instruction" that the jury may presume that the spoliated information was unfavorable to Plaintiff. *Id.* at 3. The Quick Box Defendants assert that such an adverse inference instruction is warranted because of Plaintiff's "culpability." *Id.* (citing Fed. R. Civ. P. 37(e)(2)).

Plaintiff opposes the Motion. Dkt. No. 276.[5] She asserts that Defendants have not demonstrated that the survey and website were in fact stored on her phone, nor that the information contained in the text message, survey and website cannot be restored through other discovery, as is their burden as the moving parties. *See id.* at 6-15. Plaintiff further states that Defendants have also failed to show prejudice from the alleged spoliation, rendering sanctions unnecessary. *Id.* at 21-23. Finally, Plaintiff states that Defendants have not shown she intended to deprive them of critical evidence when she upgraded her phone. *Id.* at 24. While Plaintiff "may have been negligent in replacing her phone," she argues, the Court must find she acted "maliciously" before imposing Defendants' requested sanctions. *Id.* at 25-27.

---

[5] Plaintiff initially moved to file her opposition and certain exhibits thereto under seal. *See* Dkt. Nos. 258, 259. However, the Court denied the motion to seal and ordered that Plaintiff re-file them publicly and without redaction. Dkt. No. 273. Plaintiff timely complied. Dkt. No. 276. The Court cites to the publicly available version of Plaintiff's opposition and exhibits throughout this Order.

## II.

## **LEGAL STANDARDS**

The law imposes upon litigants "a duty to preserve evidence which [they] know[] or reasonably should know is relevant to" pending or reasonably anticipated litigation. *In re Napster, Inc. Copyright Litig.*, 462 F. Supp. 2d 1060, 1067 (N.D. Cal. 2006). Spoliation is a party's breach of this duty and is sanctionable. *See Compass Bank v. Morris Cerullo World Evangelism*, 104 F. Supp. 3d 1040, 1052 (S.D. Cal. 2015). Such sanctions serve to cure the prejudice created by the spoliation to the extent possible, and to deter any future spoliation. *See Reinsdorf v. Skechers U.S.A., Inc.*, 296 F.R.D. 604, 626 (C.D. Cal. 2013).

Rule 37(e) governs the spoliation of electronically stored information ("ESI").[6] The Rule empowers the Court to sanction a spoliating party when ESI "that should have been preserved in the anticipation or conduct of litigation is lost because [the] party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery . . .." Fed. R. Civ. P. 37(e). The Rule further provides that the Court "may order measures no greater than necessary to cure the prejudice," unless the Court finds that the spoliating party "acted with the intent to deprive another party of the information's use." Fed. R. Civ. P. 37(e)(1) and (2). In the latter circumstance, the Court may impose harsher sanctions, including

/ / /

---

[6] A majority of courts hold that Rule 37 "provides the exclusive source of sanctions for the loss of ESI and forecloses reliance on [the Court's] inherent authority." *Fast v. GoDaddy.com LLC*, 340 F.R.D. 326, 335 (D. Ariz. 2022) (citing Rule 37(e), advisory committee note to 2015 amendment); *see also Gault v. United States*, No. 20-10687 PA (PVC), 2022 WL 4292340, at *6 (C.D. Cal. Aug. 23, 2022) (noting that "[t]he weight of authority holds that [t]he 2015 revision to Rule 37(e) provides the *sole* basis for a court to take action for the failure to preserve electronic evidence") (second alteration and emphasis in original) (citations and internal quotation marks omitted).

"instruct[ing] the jury that it may or must presume the information was unfavorable to the party." Fed. R. Civ. P. 37(e)(2).

Thus, Rule 37(e) "establishes three prerequisites to sanctions" for spoliation of ESI. *Fast*, 340 F.R.D. at 335. First, that "the ESI should have been preserved." *Id.* Second, that the ESI "[was] lost through a failure to take reasonable steps to preserve it." *Id.* And third, that the ESI "cannot be restored or replaced through additional discovery."[7] *Id.* The party moving for sanctions bears the burden of proving that the ESI existed and was spoliated. *See Belew-Nyquist v. Quincy School Dist. No. 144*, No. 2:19-CV-0215-TOR, 2020 WL 6845934, at *11 (E.D. Wash. Nov. 20, 2020) (citation omitted). "The relevant standard of proof . . . is a preponderance of the evidence." *Fast*, 340 F.R.D. at 335 (citations omitted). "[O]nce spoliation is shown, the burden of proof logically shifts to the guilty party to show that no prejudice resulted from the spoliation because that party is in a much better position to show what was destroyed and should not be able to benefit from its wrongdoing." *OmniGen Rsch. v. Yongqiang Wang*, 321 F.R.D. 367, 372 (D. Or. 2017) (citation omitted).

## III.
## DISCUSSION

As noted, there are three pieces of ESI that Defendants assert were lost when Plaintiff upgraded her phone: the text message, the survey linked in the text message, and the website to which she was directed after completing the survey. ///

---

[7] Some courts include a fourth, threshold question of "whether the information qualifies as ESI." *See, e.g., Chinitz v. Intero Real Estate Svcs.*, No. 18-cv-05623-BLF, 2020 WL 7389417, at *3 (N.D. Cal. May 13, 2020) (collecting cases). For present purposes, the Court finds that the text message, survey, and website all qualify as ESI, which all parties appear to concede.

*See* Dkt. No. 254-1 at 5-6.  The Court considers each of Rule 37(e)'s prerequisites as they relate to this ESI.

### A.     <u>Plaintiff's Duty to Preserve ESI Stored on Her Phone</u>

Defendants state that Plaintiff "had possession, custody and control" over her phone and "the alleged false advertising material that underlie[s] all of the claims she makes in this case" that were stored on it, including the text message, survey, and website.  Dkt. No. 254-1 at 13-14.  Defendants assert that this evidence is not only relevant but "the most vital . . . in this lawsuit" and that Plaintiff had a duty to preserve it.  *Id.* at 13.

There are numerous allegations in the FAC that Plaintiff received a "fake text message" and that by following the links in the text message, she was taken to a website and invited to sign up for a "free trial" that was actually an undisclosed subscription for skin care products at a cost of "nearly $100 every month."  *See*, *e.g.*, Dkt. No. 89 at ¶¶110, 111, 123, 124, 188, 199.  Plaintiff further alleges that she relied upon, and was deceived by, the affirmative misrepresentations and material omissions in the text message, survey, and website.  *See*, *e.g.*, *id.* at ¶¶191, 194, 204.  Given these allegations, the Court finds that these three items of ESI are relevant and that Plaintiff had a duty to preserve them if they were stored on her phone.  *See Eacret v. Crunch, LLC*, No. 18-cv-04374-JST (RMI), 2022 WL 4466718, at *2 (N.D. Cal. Sept. 26, 2022) (noting that "possession, custody or control is a necessary prerequisite to evidentiary spoliation" and collecting cases).

Defendants state that "there can be no real dispute about the fact that Plaintiff had possession, custody and control over her smartphone and the alleged false advertising material that underlie[s] all of the claims she makes in this case."  Dkt. No. 254-1 at 13.  The Court agrees that Plaintiff had custody and control over her phone, but the spoliation analysis concerns whether there was relevant information stored on the phone. As Plaintiff correctly points out, Defendants, as the parties seeking sanctions, bear the burden of proof on this question.  *See*

*Belew-Nyquist*, 2020 WL 6845934, at *11 ("The moving party has the burden of showing ESI existed and was subsequently destroyed . . .").

As to the "fake" text message, Plaintiff does not dispute that it was stored on her phone. *See* Dkt. 276 at 10 (acknowledging that "the spam text message [Plaintiff] received would have been stored" on her phone). The Court therefore finds that Plaintiff's duty to preserve the text message existed when her lawsuit became imminent, and no later than June 12, 2020, when she filed her lawsuit.[8] *See Napster, Inc.*, 462 F. Supp. 2d at 1067 (litigant's duty to preserve arises "[a]s soon as a potential claim is identified").

The survey and website are a different matter. Defendants appear to assume that these were stored on Plaintiff's phone. Dkt. No. 254-1 at 13. But "mere speculation that deleted [ESI] may exist is insufficient." *Belew-Nyquist*, 2020 WL 6845934, at *11. Furthermore, the conclusory statement that Plaintiff "had the alleged false advertising she purportedly saw when she filed suit," *see* Dkt. No. 260 at 3, is inconsistent with Plaintiff's allegations, made in her initial complaint and repeated in her FAC, that "the specific landing page [Plaintiff] viewed is unknown." *See* Dkt. No. 1 at ¶ 126; Dkt. No. 89 at ¶ 124. Plaintiff further alleges, in both the initial complaint and the FAC, that there were only two "known" websites to which she could have been redirected, describes why either one would have been misleading to her, and identifies "on information and belief" the one she believes she visited. *See* Dkt. No. 1 at ¶¶ 134-159, 226; Dkt. No. 89 at ¶¶ 132-157, 224. Defendants complain that Plaintiff and her "internet gumshoes" – i.e., her counsel – refer to "outdated, random, and otherwise wholly irrelevant data."

---

[8]    Defendants do not know precisely when Plaintiff traded in her phone, but state that it was after the lawsuit was filed. *See* Dkt. No. 254-1 at 15; Dkt. No. 260 at 2. Plaintiff does not dispute this and testified at deposition that she "guessed" she upgraded her phone after the lawsuit was filed. *See* Dkt. No. 254-3 at 7.

Dkt. No. 254-1 at 7, 14. Whether or not that is true, however, Plaintiff's inability to identify the misleading website has been apparent since the filing of her complaint.

More significant for the Court's present purposes, Plaintiff's lack of recall undermines any assumption that information about the offending website and survey were stored in a cache on Plaintiff's phone. On the record before it, the Court concludes that Defendants have not met their burden to establish that the survey and website were stored on Plaintiff's phone – and thus in Plaintiff's possession – at the time she traded in the phone. Therefore, the Court cannot find that Plaintiff was under a duty to preserve her phone to avoid the loss of the website and survey. *See Hammann v. 800 Ideas*, *Inc.*, No. 2:08-cv-00886-LDG-GWF, 2010 WL 4943991, at *7 (D. Nev. Nov. 22, 2010) ("Obviously, the party charged with spoliation must have been in the possession, custody or control of the evidence in order for the duty to preserve to arise.").

Because Defendants have "failed to establish the first element required for spoliation – that [Plaintiff] had possession or control over the [website and survey] at issue and had an obligation to preserve them at the time they were destroyed," *Harfouche v. Stars on Tour, Inc.*, No. 2:13-cv-00615-LDG-NJK, 2016 WL 54203, at *3 (D. Nev. Jan. 5, 2016), the Court will limit the remainder of its discussion to applying the second and third factors under Rule 37(e) to the admittedly-spoliated text message.

### B. Plaintiff Failed to Take Reasonable Steps to Preserve the Text Message

Plaintiff concedes that the text message was stored on her phone when she upgraded it. *See* Dkt. 276 at 10. Defendants note that Plaintiff has not explained why neither she nor her attorneys "made a forensic copy" of the phone "or at least make screenshot images" of this message either before or after filing suit, nor has she stated whether she or her attorneys made any effort to recover the text message after she traded in her phone. *See* Dkt. No. 260 at 5. As other courts have recognized, the loss of relevant text messages can be prevented "with

8

20-cv-1082-LL-DDL

reasonable proactivity." *Youngevity Int'l v. Smith*, No. 3:16-cv-704-BTM-JLB, 2020 WL 7048687, at *2 (S.D. Cal. July 28, 2020). Reasonable steps to preserve the text message might have included taking a screenshot, saving the message to the cloud, or backing up her phone. *See id.* (collecting cases). These methods were readily available to Plaintiff, and her failure to take such "affirmative steps" to preserve the text message was unreasonable. *See id.* The Court finds that Defendants have met their burden of showing that Plaintiff failed to take reasonable steps to preserve this ESI. *See* Fed. R. Civ. P. 37(e).

### C.  Defendants Have Not Established that the Text Message Cannot Be Replaced or Recovered from Another Source

"A court may not sanction a party for spoliation under [Rule] 37(e) if the parties can restore or replace the lost ESI through feasible means." *Oracle USA, Inc. v. Rimini St., Inc.*, No. 2:10-CV-0106-LRH-VCF, 2020 WL 9209714, at *4 (D. Nev. Sept. 21, 2020), *report and recommendation adopted*, 2021 WL 1224904 (D. Nev. Mar. 31, 2021), *on reconsideration*, 2021 WL 9333202 (D. Nev. June 9, 2021). This is because ESI "often exists in multiple locations" such that "loss from one source may . . . be harmless when substitute information can be found elsewhere." Fed. R. Civ. P. 37(e), advisory committee notes to 2015 amendment. Thus, the Court turns to whether the text message can be restored or replaced through additional discovery.

On the current record, Defendants have not persuaded the Court that the text message is irretrievably lost. *See Garrison v. Ringgold*, No. 19-cv-0244 GPC-DEB, 2020 WL 6537389, at *6 (S.D. Cal. Nov. 6, 2020) (noting that "[t]he moving party has the burden to show that the ESI was in fact lost"); *RG Abrams Ins. v. L. Offs. of C.R. Abrams*, 342 F.R.D. 461, 506 (C.D. Cal. 2022) ("The showing that ESI actually was lost, or likely lost, must be made through competent evidence, which could take the form of expert testimony or other evidence.") (citation and quotations omitted). In fact, their moving papers are largely silent on the issue.

Instead, they cite the "self-executing" sanctions under Rule 37(c)(1) for information that Plaintiff "failed to furnish" and "collapse" the elements of loss and prejudice. Dkt. No. 276 at 12, 15-17.[9]

Defendants' reliance on Rule 37(c)(1) is misplaced. The ESI at issue has either been "withheld," *see id.*, or it has been spoliated, but not both – otherwise, Rule 37(e) would be superfluous. "[T]he Federal Rules are to be given their plain meaning." *United States v. Real Prop. and Improvements Located at 1840 Embarcadero, Oakland, Ca.*, 932 F. Supp. 2d 1064, 1069 (N.D. Cal. 2013) (citation omitted); *see also United States v. $133,420.00 in United States Currency*, 672 F.3d 629, 643 (9th Cir. 2012) ("It is a 'cardinal rule of statutory interpretation that no provision should be construed to be entirely redundant.'") (citation omitted).

Here, Defendants appear to have at their disposal a significant amount of information about the marketing that was directed to Plaintiff. There are references in documents produced by the Konnektive Defendants indicating that Plaintiff was sent materials identified as "Affiliati – 1 Step Survey," "Affiliati – 2 Step," "Anaconda," and "C2M – 2 Step," with "tracking links" to each. *See* Dkt. No. 276-1 at 11. Plaintiff was also identified as part of the "LaPura Skin (Main) – QB" campaign, again with reference to the "Affiliati 1-Step Survey." *See id.* at 13, 15, 16, 35. Konnektive's records further detail transactions with and regarding Plaintiff, including the "upsell" and "checkout" websites from which she placed her initial

/ / /

---

[9] Defendants state that Plaintiff "failed to furnish" copies of the text message, survey, and website with her Rule 26(a) disclosures. Dkt. No. 254-1 at 12. However, Rule 26(a) provides that a disclosing party may **either** disclose "a copy" of the documents upon which it will rely to prove its claims or defenses, **or** it may "descri[be]" those documents by category and location. Fed. R. Civ. P. 26(a)(ii). Defendants have not provided the Court with any evidence that plaintiff's Rule 26(a) disclosures did not comport with this alternative method of disclosure.

order in January 2020. *Id.* at 18. Logically, if Plaintiff received these marketing messages, somebody sent them – and not just to Plaintiff.

It is significant that, despite the centrality of the "alleged false advertising [Plaintiff] viewed" to Plaintiff's claims and that production of these materials was requested over a year and a half ago, Dkt. No. 254-1 at 10, the parties are unable today to state definitively whether the text message is available from any other source. "ESI is not 'lost' if it is available from another source." *Belew-Nyquist*, 2020 WL 6845934, at *10 (citation omitted). Defendants have not provided the Court with any evidence that the text message was sought from any of their affiliates, other parties or nonparties, or from within their own files, but remains unavailable. On this record, the Court cannot agree that "neither Plaintiff *nor anyone else*" knows the contents of the text message she received. Dkt. No. 260 at 2 (emphasis added). *See* Fed. R. Civ. P. 37(e), advisory committee notes to 2015 amendment ("Rule 37(e) directs that the initial focus should be on whether the lost information can be restored or replaced through additional discovery.").

The Court agrees with Plaintiff that the plain terms of Rule 37(e) require "a moving party to explore other avenues of discovery" before sanctions are appropriate.[10] Dkt. No. 276 at 5. Whether the onus was on Plaintiff to seek the text message and other alleged false advertising materials could have been

---

[10] Although Plaintiff's legal arguments are persuasive, their delivery is not. Plaintiff's opposition brief is littered with invective and aspersions that were neither helpful to the Court's resolution of the legal issue presented nor appreciated by the Court. *See, e.g.*, Dkt. No. 276 at 5 (accusing Defendants of "searching for any technicality to obtain a 'get-out-of-jail-free card'"); 12 (stating Defendants "file sanctions motion for the most spurious of reasons"); 21 (Defendants are "searching for a way out of the consequences that come from helping people commit a fraud"); 22 n.3 (suggesting that defense counsel are "churning" their bills). It is apparent that the parties feel strongly about their respective positions in this lawsuit, but personal attacks are outside the bounds of zealous advocacy. *See* CivLR 2.1.

addressed in the context of a motion to compel, but Defendants apparently chose not to bring such a motion.[11] *See Mfg. Automation & Software Sys., Inc. v. Hughes*, No. 216CV08962CASKSX, 2018 WL 2059839, at *7 (C.D. Cal. Apr. 30, 2018) (noting that "[t]he first step in requesting discovery sanctions is to seek a court order compelling the discovery sought"); *see also Youngevity Int'l, Corp. v. Smith*, No. 16CV00704BTMJLB, 2019 WL 1542300, at *13 (S.D. Cal. Apr. 9, 2019), *report and recommendation adopted*, 2019 WL 11274846 (S.D. Cal. May 28, 2019) (recommending denial of motion for sanctions where moving party "could have brought the matter to the Court in a timely-filed motion to compel . . . [but] opted against this course of action."). Instead, they proceeded directly to a motion for sanctions under Rule 37(e), for which they bear the burden of "show[ing] by competent evidence . . . that the ESI sought was actually lost."[12] *Colonies Partners, L.P. v. Cnty. of San Bernardino*, No. 518CV00420JGBSHK, 2020 WL 1496444, at *5 (C.D. Cal. Feb. 27, 2020), *report and recommendation adopted*,

---

[11] Defendants served discovery requesting that Plaintiff produce the "fake text message," and Plaintiff responded in September 2021 that she "will search for documents responsive to this Request" and "will produce any non-privileged, non-work product documents responsive to this Request." Dkt. No. 254-4 at 4-5. The record does not reveal whether Defendants sought to meet and confer with Plaintiff after not receiving the "fake text message" in discovery or why Plaintiff's counsel apparently never apprised Defendant's counsel prior to Plaintiff's deposition in September 2022 that Plaintiff had traded in the phone on which she received the message.

[12] The Court need not address Defendants' concerns regarding the Best Evidence Rule. *See* Dkt. No. 254-1 at 17-18; Dkt. No. 260 at 4-5. The Court makes no findings herein regarding the application of that doctrine to Plaintiff's testimony. However, even accepting Defendants' premise that Plaintiff cannot testify about the contents of the text message she viewed unless she can produce it verbatim, because the parties have not pursued discovery of the text message (or an exact replica of it) – *including from its sender* – the Court finds there is no basis at this time to limit her testimony.

2020 WL 1491339 (C.D. Cal. Mar. 27, 2020) (citation omitted). For the reasons explained herein, the Court finds Defendants have not met this burden.[13]

The Court's analysis ends here. *See Gault*, 2022 WL 4292340, at *8 (finding motion for sanctions "fail[ed]" for the "fundamental reason" that the moving party could not show that ESI was lost or destroyed). Because Defendants have not satisfied all the prerequisites of Rule 37(e), the Court need not address whether to impose sanctions no greater than necessary to cure the prejudice under Rule 37(e)(1) or harsher sanctions under Rule 37(e)(2). *See Oracle Am., Inc., v. Hewlett Packard Enter. Co.*, 328 F.R.D. 543, 549 (N.D. Cal. 2018) (finding the "threshold issue" of whether ESI was lost "dispositive" and declining to "reach the issues of intent or . . . prejudice"); *Belew-Nyquist,* 2020 WL 6845934, at *10 (noting that sanctions are available "*if* the moving party satisfies all three elements" of Rule 37(e)) (emphasis added).

## IV.
## **CONCLUSION**

For the reasons stated herein, Defendants have not met their burden to show that the text message, survey, and website viewed by Plaintiff as alleged in her complaint were spoliated within the meaning of Federal Rule of Civil Procedure 37(e). Accordingly, Defendants' Motion for Evidentiary Sanctions for Spoliation of Evidence Against Plaintiff Leanne Tan [Dkt. No. 254] is **DENIED**.

**IT IS SO ORDERED.**

Dated: March 28, 2023

_____
Hon. David D. Leshner
United States Magistrate Judge

---

[13] For the same reasons, the Court finds that Defendants failed to demonstrate that the survey and website are lost, providing an independent and alternative basis for denial of the Motion as to these items of ESI.