**KNEUPPER & COVEY, PC**
Kevin Kneupper, Esq. (CA SBN 325413)
kevin@kneuppercovey.com
A. Cyclone Covey, Esq. (CA SBN 335957)
cyclone@kneuppercovey.com
17011 Beach Blvd., Suite 900
Huntington Beach, CA 92647
Tel: (512) 420-8407

*Attorneys for Plaintiff LeAnne Tan*
*and the putative Class*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEANNE TAN, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>QUICK BOX, LLC, et al,<br><br>Defendants. | Case No.: 3:20-cv-1082-LL-DDL<br><br>**PLAINTIFF'S MOTION FOR SANCTIONS FOR IMPROPER DEPOSITION CONDUCT**<br><br>*PER CHAMBERS RULES, NO ORAL ARGUMENT UNLESS SEPARATELY ORDERED BY THE COURT<br><br>Complaint Filed: June 12, 2020 |

# TABLE OF CONTENTS

Page(s)

I.   INTRODUCTION ........................................................................................... 1

II.  ARGUMENT ................................................................................................. 1

A.  Konnektive's Counsel Improperly Instructed Kathryn Martorano
Not to Answer Various Questions ...................................................... 1

1.  The instructions as to privilege were improper. ....................... 3

2.  The instructions not based on privilege were improper because
the Konnektive Defendants never sought a protective order ...................... 5

B.  Konnektive Defendant's Counsel Repeatedly Made Insulting Comments .......... 6

C.  Improper Coaching of Witnesses / Speaking Objections ................................. 7

D.  Improper Asked and Answered Objections ......................................... 10

E.  The Konnektive Defendants Made Improper Relevance Objections ................ 12

F.  Sanctions Are Warranted ................................................................ 13

**Cases**

*Barajas v. Abbott Labs., Inc.*,
No. 18-cv-00839-EJD (VKD), 2018 U.S. Dist. LEXIS 202690
(N.D. Cal. Nov. 29, 2018)................................................................3

*Biovail Labs., Inc. v. Anchen Pharms., Inc.*,
233 F.R.D. 648 (C.D. Cal. 2006) .......................................................5

*BNSF Ry. Co. v. San Joaquin Valley R.R. Co.*,
No. 1:08-cv-01086-AWI-SMS, 2009 U.S. Dist. LEXIS 111569
(E.D. Cal. Nov. 17, 2009) ................................................................4

*Direct Purchaser v. Mitsubishi (In re Cathode Ray Tube (CRT) Antitrust Litig.)*,
No. MDL No 1917, 2015 U.S. Dist. LEXIS 139385 (N.D. Cal. May 28, 2015) ...........4

*Doe v. City of San Diego*,
No. 12-cv-0689-MMA (DHB), 2013 U.S. Dist. LEXIS 179077
(S.D. Cal. Dec. 13, 2013) ................................................................6

*E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*,
277 F.R.D. 286 (E.D. Va. 2011) ......................................................14

*Ethicon Endo-Surgery v. United States Surgical Corp.*,
160 F.R.D. 98 (S.D. Ohio 1995) .......................................................1

*Hall v. Clifton Precision*,
150 F.R.D. 525 (E.D. Pa 1993) ..................................................3, 8, 15

*Hardin v. Mendocino Coast Dist. Hosp.*,
No. 17-cv-05554-JST (TSH), 2019 U.S. Dist. LEXIS 70312
(N.D. Cal. Apr. 25, 2019) ...............................................................11

*Holloway v. Cty. of Orange*,
No. SA CV 19-01514-DOC (DFMx), 2021 U.S. Dist. LEXIS 31683
(C.D. Cal. Jan. 11, 2021).................................................................6

*Horowitz v. Yishun Chen*,
No. SA CV 17-00432-AG (DFMx), 2018 U.S. Dist. LEXIS 164515
(C.D. Cal. Sep. 20, 2018)..........................................................3, 6, 15

*Hoyt v. Valdovinos*,
No. 3:19-cv-01553-L-AHG, 2021 U.S. Dist. LEXIS 116382
(S.D. Cal. June 22, 2021)................................................................4

*Hunter v. GEICO Gen. Ins. Co.*,
No. 17-05070, 2018 U.S. Dist. LEXIS 155335 (E.D. La. Sep. 12, 2018)......................1

*In re Ford Motor Co. DPS6 Powershift Transmission Prods. Liab. Litig.*,
No. 2:18-cv-1893 AB (FFMx), 2019 U.S. Dist. LEXIS 91557
(C.D. Cal. May 13, 2019) ................................................................................ 14

*In re Remec Sec. Litig., This Document Relates To: All Actions*,
No. 04cv1948 MMA (AJB), 2009 U.S. Dist. LEXIS 134946
(S.D. Cal. Feb. 20, 2009) ................................................................................... 3

*La Jolla Spa MD, Inc. v. Avidas Pharms., LLC*,
No. 17-CV-1124-MMA(WVG), 2019 U.S. Dist. LEXIS 148721
(S.D. Cal. Aug. 30, 2019 ..................................................................6, 10, 12, 13

*Luangisa v. Interface Operations*,
No. 2:11-cv-00951-RCJ-CWH, 2011 U.S. Dist. LEXIS 139700
(D. Nev. Dec. 5, 2011) ..................................................................................... 12

*Mashiri v. Ocwen Loan Servicing, LLC*,
No. 12cv2838-L (MDD), 2014 U.S. Dist. LEXIS 129599 (S.D. Cal. Sep. 15, 2014) .... 5

*MGA Entm't, Inc. v. Nat'l Prods.*,
No. CV 10-07083 JAK (SSx), 2012 U.S. Dist. LEXIS 196273
(C.D. Cal. Apr. 12, 2012) ................................................................................. 14

*Redwood v. Dobson*,
476 F.3d 462 (7th Cir. 2007) .............................................................................. 5

*Sedie v. United States Postal Serv.*,
No. C-08-04417 EDL, 2009 U.S. Dist. LEXIS 113206 (N.D. Cal. Nov. 19, 2009) ....... 1

*Shreves v. Frontier Rail Corp.*,
No. 1:19-cv-03012-SMJ, 2021 U.S. Dist. LEXIS 54899 (E.D. Wash. Mar. 23, 2021) ..5

*Silgan Containers v. Nat'l Union Fire Ins.*,
No. C 09-05971 RS (LB), 2011 U.S. Dist. LEXIS 35010 (N.D. Cal. Mar. 23, 2011)....4

*Tan v. Quick Box, LLC*,
No. 3:20-cv-01082-H-DEB, 2020 U.S. Dist. LEXIS 230427
(S.D. Cal. Dec. 8, 2020) ................................................................................... 13

*Tattersalls Ltd. v. Wiener*,
2020 U.S. Dist. LEXIS 265504 (S.D. Cal. June 8, 2020) ........................................... 10

*Zeleny v. Newsom*,
No. 17-cv-07357-RS (TSH), 2020 U.S. Dist. LEXIS 210458
(N.D. Cal. Nov. 10, 2020) ................................................................................. 10

**Statutes**

28 U.S.C. § 1927 ................................................................................................. 13

**Rules**

Chambers Rules of Hon. David D. Leshner, Rule III(D) ...................................................5

Fed. R. Civ. P. 30(c)(2) ...................................................................................4, 5

Fed. R. Civ. P. 30(d)(1) ...............................................................................10, 13

Fed. R. Civ. P. 30(d)(3) ...................................................................................5

Fed. R. Civ. P. 30(d)(4) ...................................................................................5

**Other Authorities**

Rutter Group Prac. Guide Fed. Civ. Pro. Before Trial Ch. 11(IV)-A § 11:1565 ..............12

# I.    INTRODUCTION

Depositions are court proceedings, and are to be conducted as if they were being held at the actual trial. And "[c]onduct that is not permissible in the courtroom during the questioning of a witness is ordinarily not permissible at a deposition." *Sedie v. United States Postal Serv.*, No. C-08-04417 EDL, 2009 U.S. Dist. LEXIS 113206 at *3 (N.D. Cal. Nov. 19, 2009) (quoting *Ethicon Endo-Surgery v. United States Surgical Corp.*, 160 F.R.D. 98, 99 (S.D. Ohio 1995)). But during a four-day series of depositions of Konnektive employees, this basic rule was ignored. Defending counsel engaged in a series of speaking objections, improper instructions not to answer, insults, making strange accusations at opposing counsel out of nowhere, and extensive coaching of the witnesses. The behavior was extreme. As another court has held in evaluating similar conduct during a deposition: "The Court simply cannot accept that someone with [this attorney's] experience could think of getting away with this sort of conduct in a courtroom with a judge presiding." *Hunter v. GEICO Gen. Ins. Co.*, No. 17-05070, 2018 U.S. Dist. LEXIS 155335 at *24 (E.D. La. Sep. 12, 2018). Plaintiff requests sanctions including a jury instruction to correct that prejudice.

# II.   ARGUMENT

## A.    Konnektive's Counsel Improperly Instructed Kathryn Martorano Not to Answer Various Questions

During the deposition of Kathryn Martorano, her counsel improperly instructed her not to answer various questions.

| Question and Instruction | Basis |
|---|---|
| Q Ms. Martorano, your counsel said that he needed to get some water. We took a break. After or during the break, did you speak with your counsel about your declaration?<br>MR. QUEALLY: Objection. Any conversation we had with her and my other client, Matthew Martorano, is privileged. The content is privileged.<br>MR. COVEY: Are you instructing her not to answer?<br>MR. QUEALLY: Yes.<br>Dep. of K. Martorano at 45:7-17. | Privilege |
| Q Did you discuss the substance of your testimony here today with your counsel during the break?<br>MR. QUEALLY: I'm going to instruct her not to answer that question – | Privilege / Work Product |

| | |
|---|---|
| MR. COVEY: Okay.<br>MR. QUEALLY: -- based on attorney/client privilege and work product.<br>Dep. of K. Martorano at 45:25 – 46:7 | |
| Q Mrs. Martorano, did you speak with your counsel about any declarations that you gave in this case during the break?<br>MR. QUEALLY: I'll object based on the attorney/client privilege and the attorney work product doctrine, and I'll instruct the witness not to answer on that basis because during the break I had discussion with both of my clients, Mrs. Katie Martorano and Mr. Matthew Martorano, standing out in the hall.<br>Dep. of K. Martorano at 53:11-21. | Privilege / Work Product |
| MR. COVEY: Mrs. Martorano, did you have any conversation with your counsel during the break about corporate formalities?<br>MR. QUEALLY: Same objections, same instruction.<br>Dep. of K. Martorano at 53:22-54:2. | Privilege / Work Product |
| MR. COVEY: Mrs. Martorano, did you have any communication with your counsel during the break about Konnektive Corporation's bylaws?<br>MR. QUEALLY: Same objections, same instructions.<br>Dep. of K. Martorano at 54:3-8. | Privilege / Work Product |
| MR. COVEY: Mrs. Martorano, did you have any communication with your counsel during the break about your roles at Konnektive Corporation?<br>MR. QUEALLY: Same objections, same instructions.<br>Dep. of K. Martorano at 54:9-14. | Privilege / Work Product |
| Q Ms. Martorano, during the break did you discuss with your counsel the organization chart that we've been looking at prior to the break?<br>MR. QUEALLY: Object based on the attorney/client privilege as well as the attorney work product doctrine. And I'll instruct the witness not to answer….<br><br>Dep. of K. Martorano at 100:5-22. | Privilege / Work Product |
| Q So you've been the CEO of Konnektive Corporation since 2019, right?<br>A Right.<br>Q But you don't know if you have the authority to hire people, right?<br>MR. QUEALLY: Objection, asked and answered many times. You can answer again.<br>A I rely on people to do that.<br>BY MR. COVEY: Q Well, that's not what I'm asking you though. What I'm asking you is: Do you know if you have the authority to do it?<br>MR. QUEALLY: I'm going to object and instruct the witness not to answer because I'm going to file a motion for protective order with the | Asked and Answered / "Harassment" |

| | |
|---|---|
| Court to object to this line of questioning as harassing since you've already asked it. So don't answer it. He's asked many times. You've answered it now. That's fair. Instructing you not to answer.<br>Dep. of K. Martorano at 108:22 – 109:17 | |
| Q Do you have the power to terminate the employment of an employee at Konnektive Corporation as the CEO?<br>MR. QUEALLY: Asked and answered.<br>A I rely on other people to do that.<br>BY MR. COVEY: Q Why don't you want to answer that question?<br>MR. QUEALLY: Objection, argumentative. Instruct not to answer.<br>Dep. of K. Martorano at 111:9 – 117:15. | Argumentative |
| I'm not -- I'm instructing her not to answer any further questions about the statement in here where it says on line 12 I was a representative of Konnektive, LLC and -- yeah, that statement because you've already covered it.<br>Dep. of K. Martorano at 215:21 – 220:14 | "Staring at the witness" / "threatening" the witness |

### 1. The instructions as to privilege were improper.

"A witness being deposed may not confer with his counsel during a deposition unless the conference is for the purpose of determining whether an applicable privilege should be asserted." *Horowitz v. Yishun Chen*, No. SA CV 17-00432-AG (DFMx), 2018 U.S. Dist. LEXIS 164515 at \*8 (C.D. Cal. Sep. 20, 2018) (citing *Hall v. Clifton Precision*, 150 F.R.D. 525 (E.D. Pa 1993)); *Barajas v. Abbott Labs., Inc.*, No. 18-cv-00839-EJD (VKD), 2018 U.S. Dist. LEXIS 202690 at \*10-11 (N.D. Cal. Nov. 29, 2018) ("Counsel's coaching breaks were absolutely improper here. The question for the Court is whether a further deposition is warranted so that Abbott's counsel may learn what was said during the breaks and how those communications may have influenced the witness's testimony."); *In re Remec Sec. Litig., This Document Relates To: All Actions*, No. 04cv1948 MMA (AJB), 2009 U.S. Dist. LEXIS 134946 at \*11 (S.D. Cal. Feb. 20, 2009) ("Counsel and their witness-clients shall not engage in private, off-the-record conferences during depositions or during breaks or recesses, except for the purpose of deciding whether to assert a privilege.").

Courts have compelled additional deposition time where, for example, a party conferenced with their counsel during a break and the witness's answers changed after the break. *Direct Purchaser v. Mitsubishi (In re Cathode Ray Tube (CRT) Antitrust Litig.)*, No.

*MDL No 1917*, 2015 U.S. Dist. LEXIS 139385 at *185-86 (N.D. Cal. May 28, 2015) (noting that "after the break, the witness answered questions in a noticeably more circumspect and uninformative way than he had been answering before the break"); *BNSF Ry. Co. v. San Joaquin Valley R.R. Co.*, No. 1:08-cv-01086-AWI-SMS, 2009 U.S. Dist. LEXIS 111569 at *9-10 (E.D. Cal. Nov. 17, 2009) ("It has been held that if improper conferences occur, then they are subject to inquiry in further discovery."). The conference here occurred after Mrs. Martorano's counsel requested to stop questioning for a drink of water—then had an extended conversation with his clients. Dep. of K. Martorano at 44:17-20. Her answers as to whether (1) she had signed declarations, and (2) knew what corporate formalities meant changed after this break. Compare *id.* at 44:1-13 to 59:12-14; compare 43:1-3 to 65:8-16.

Furthermore, even if Defendant's counsel were permitted to consult with Mrs. Martorano about the substance of her testimony on a break, the instructions not to answer are still clearly inappropriate. An objection based on privilege does not permit a witness to refuse to identify the high-level subject matter of communications with their attorney. Indeed, privilege logs are routinely required to include such a description in order to meet a party's burden of asserting the privilege. *See Hoyt v. Valdovinos*, No. 3:19-cv-01553-L-AHG, 2021 U.S. Dist. LEXIS 116382 at *12 n.6 (S.D. Cal. June 22, 2021) (holding that privilege log was inadequate for failing to disclose "sufficient information about the subject matter of the communications"); *see also Silgan Containers v. Nat'l Union Fire Ins.*, No. C 09-05971 RS (LB), 2011 U.S. Dist. LEXIS 35010 at *10 (N.D. Cal. Mar. 23, 2011) (requiring privilege logs to disclose "the subject matter or general nature of the document (without disclosing its contents)"). Not only is the general subject matter of privileged materials ordinarily included in a privilege log, but a failure to include it ordinarily constitutes a waiver of the privilege.

Yet Mrs. Martorano's counsel instructed her not to answer questions which were directed not at the contents of the communications, but even their high level general subject matter. She was not even allowed to answer whether she discussed "the substance of your

testimony here today" during a break in the deposition. The improper instructions were targeted at questions which would not have invaded the privilege even if there was one.

### 2. The instructions not based on privilege were improper because the Konnektive Defendants never sought a protective order.

Federal Rule of Civil Procedure 30(c)(2) is unequivocal that there are only three permissible reasons to instruct a witness not to answer in a deposition: "A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)." For the vast majority of the instructions not to answer at issue, the only potential basis for such an instruction was "to present a motion under Rule 30(d)(3)." That rule provides that "**[a]t any time during a deposition**, the deponent or a party may move to terminate or limit it on the ground that it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party." Federal Rule of Civil Procedure 30(d)(3).

Based on this language, courts have held that to instruct a witness not to answer, a protective order must be sought while the deposition is still ongoing. *See Redwood v. Dobson*, 476 F.3d 462, 467-68 (7th Cir. 2007) ("Counsel for the witness may halt the deposition and apply for a protective order, *see* Rule 30(d)(4), but must not instruct the witness to remain silent."); *see also Mashiri v. Ocwen Loan Servicing, LLC*, No. 12cv2838-L (MDD), 2014 U.S. Dist. LEXIS 129599 at *5 (S.D. Cal. Sep. 15, 2014); *Shreves v. Frontier Rail Corp.*, No. 1:19-cv-03012-SMJ, 2021 U.S. Dist. LEXIS 54899 at *4-5 (E.D. Wash. Mar. 23, 2021). Courts have held that it violates Rule 30(c)(2) to instruct a witness not to answer, but then never actually move for a protective order. *See Redwood*, 476 F.3d at 467-68 ("Webber violated this rule repeatedly by telling Gerstein not to answer yet never presenting a motion for a protective order."); *Biovail Labs., Inc. v. Anchen Pharms., Inc.*, 233 F.R.D. 648, 653 (C.D. Cal. 2006).

But the Konnektive Defendants never sought a protective order as to any of the questions on which the witnesses were instructed not to answer. Even aside from Rule 30(d)(3)'s requirement of immediacy, this Court's discovery procedures require any

PLAINTIFF'S MOTION FOR SANCTIONS FOR IMPROPER DEPOSITION CONDUCT

discovery dispute to be raised within 30 days of the deposition itself. Chambers Rules of Hon. David D. Leshner, Rule III(D). That deadline is now long past—and yet no motion for protective order as to any of these instructions not to answer has ever been filed. Despite failing to ever file for a protective order, the Konnektive Defendants have continued to oppose allowing Plaintiff's counsel to resume the questioning which was improperly cut off. They have improperly forced the filing of this motion, when the rules contemplate that they have the burden of seeking (and winning) a motion to terminate the questioning.

And these objections were substantively baseless as well. "[O]bjections that questions had been asked and answered, exceeded the scope of the deposition, lacked relevance, assumed facts, and misstated [a witness's] prior testimony are improper grounds for instructing [the witness] not to answer." *Doe v. City of San Diego*, No. 12-cv-0689-MMA (DHB), 2013 U.S. Dist. LEXIS 179077 at *13 (S.D. Cal. Dec. 13, 2013). Similarly, while harassing the witness or threatening the witness can justify terminating the deposition to seek a protective order if it had actually occurred, "the Rules do not permit counsel to refuse to answer questions on this basis" and "'[a] deponent may not unilaterally refuse to answer questions at a deposition and then require a deposing party to obtain a court order directing the deponent to answer.'" *Holloway v. Cty. of Orange*, No. SA CV 19-01514-DOC (DFMx), 2021 U.S. Dist. LEXIS 31683 at *13-14 (C.D. Cal. Jan. 11, 2021).

## B.  Konnektive Defendant's Counsel Repeatedly Made Insulting Comments

A defending attorney is not permitted to insult or disparage the deposing attorney in their objections. For example, in *Horowitz v. Yishun Chen*, No. SA CV 17-00432-AG (DFMx), 2018 U.S. Dist. LEXIS 164515 at *12-13 (C.D. Cal. Sep. 20, 2018), an attorney defending a deposition made disparaging comments about wasting time and "stupid, ridiculous questions" which the court found was "antagonistic behavior" that "emboldened [the witness] to be uncooperative, rendering the deposition nearly wholly ineffective." Courts routinely impose sanctions against counsel who engage in insults in depositions. *See La Jolla Spa MD, Inc. v. Avidas Pharms., LLC*, No. 17-CV-1124-MMA(WVG), 2019 U.S. Dist. LEXIS 148721 at *60 n.22 (S.D. Cal. Aug. 30, 2019) (collecting cases).

The worst example occurred during the deposition of Kathryn Martorano, when her counsel suddenly began making accusations against the deposing attorney, Cyclone Covey. Dep. of K. Martorano at 215:20 - 220:14. Konnektive's counsel accused Mr. Covey of threatening the witness, of abusing the process, of trying to intimidate her, and a bevy of similar insults. He then instructed her not to keep answering questions about the topic (a false statement Mrs. Martorano made in a declaration to the Court). This was despite being reminded by Mr. Covey that Judge Butcher had already ordered Konnektive's counsel not to make such improper instructions not to answer.

This particular outburst by Konnektive's counsel came out of nowhere. Plaintiff has lodged a video of this portion of the deposition given the seriousness of the accusations against Mr. Covey. Ex. 1. Nothing in Mr. Covey's tone leading up to it is "threatening," "unethical," or "pure intimidation." Nothing in the witness's demeanor in the questions leading up to the outburst suggests that she is being threatened or intimidated. And while this was the worst incident, it was not an isolated one. Konnektive's counsel repeatedly made similar unprofessional and insulting comments:

| Objection / Statement | Citation |
|---|---|
| "MR. QUEALLY: I think that she has answered your question but it wasn't to your liking, so you're kind of getting a little bit snippy with her and harassing her." | K. Martorano at 113:15-19 |
| "I'm sorry, can I have that silly question read back?" | K. Martorano at 123:21-22 |
| "Is that a serious question?" | K. Martorano at 124:3-4 |
| "Q. You don't remember if you read the complaint? A. I know I looked it over. MR. QUEALLY: More than 10 percent of it? Just kidding, withdrawn." | K. Martorano at 200:6-10 |
| "This line of questioning is ridiculous." | K. Martorano at 235:20 |
| "I'm not trying to interfere, Mr. Covey. I'm just trying to set some limits on what you can ask this witness because it seems like you don't have any limits." | K. Martorano at 247:14-18. |
| "complete waste of time" | K. Martorano at 247:14-18. |

### C.    Improper Coaching of Witnesses / Speaking Objections

In addition to the previous examples, Konnektive's counsel engaged in regular speaking objections which amounted to a running commentary on the lawsuit, the

questioning, and opposing counsel. Frequently these objections included suggested answers for the witness. "The Federal Rules of Evidence contain no provision allowing lawyers to interrupt the trial testimony of a witness to make a statement. Such behavior should likewise be prohibited at depositions, since it tends to obstruct the taking of the witness's testimony." *Hall v. Clifton Precision*, 150 F.R.D. 525, 530 (E.D. Pa. 1993). A non-exhaustive set of examples is below.

| Objection / Statement | Citation |
|---|---|
| That's almost a question that I should instruct him not to answer because you're asking for his legal opinion on the defense and that can only be after he's consulted with his lawyer. So that's -- that's really out of bounds, Counsel. I'm going to let him answer, but I just think the question is entirely improper. | M. Martorano at 51:16 – 52:0 |
| Objection, argumentative, improper, this is bordering on harassment. It's also a waste of time. You can answer his question. | K. Martorano at 66:14-22 |
| He already said he couldn't remember who he heard them from. | M. Martorano at 47:14-24 |
| I'll object that it calls for speculation and incomplete hypothetical since he doesn't know all the circumstances surrounding the recording of this call. | M. Martorano at 49:15 – 50:19 |
| Well, I'll -- hang on. Object to misstates prior testimony. I don't think he said he did an investigation. I just think he says he knows. | M. Martorano at 53:7 – 54:9 |
| You indicated you would need -- ….He would need a true exemplar. You can answer. | M. Martorano at 78; 79:9-23 |
| I think in order to answer that, you want a verbatim answer you have to look at every word in this contract to compare it to everything that's ever been on Konnektive's website which is kind of an overbroad question. | M. Martorano at 84:17 – 85:8 |
| It was a long video that went through a number of different web pages. It looks like it went through a 10-or 15-page agreement. So if you're asking him to authenticate the page and the agreement and all its contents, I think that's a little bit unfair just by looking at the video. | M. Martorano 90:5 – 90:19 |
| Objection, argumentative, misstates the evidence. The previous page said read our EULA, not print it and forge it. Argumentative. | M. Martorano at 96:10-17. |
| Counsel, just because you're able to sort of finagle this and what looks like forge something there, doesn't mean someone who does | M. Martorano at 100:25 – 101:19 |

| | |
|---|---|
| not have your same skills with documents could do the same thing. It's argumentative.  Also object to the preface of your little demonstration here which was not on the record. | |
| MR. QUEALLY:  Hang on.  Hang on.  Is that a question you want him to answer?<br>MR. COVEY:  Yes.<br>Okay.  Objection, argumentative, also calls for an expert opinion about what you can do, Mr. Covey, based on your technical skill set. | M    Martorano    at 101:21 – 102:14 |
| I think he already testified about it being an oversight, and I think he already testified he didn't know that was there today so -- But you can answer. | M.    Martorano    at 102:25 – 103:20. |
| Objection.  That's not what he said.  He already testified they farm that out. | M.    Martorano    at 103:25 – 104:11 |
| He's noted previously they were kicked out. You can answer his question. | M.    Martorano    at 124:10-22. |
| Objection -- hang on. Objection, argumentative.  I don't think today he said he does not thoroughly vet them. | M.    Martorano    at 129:5-16. |
| Objection, argumentative.  I believe, in the video, he talked about clients -- people who come to Konnektive that are not clients yet. You can answer. | M.    Martorano    at 142:13 -143:2. |
| Objection, calls for speculation. I think you're asking what he said and what he meant on this undated video. You can answer. | M.    Martorano    at 143:18 -144:18 |
| I'll just object. Misstates the record, argumentative. There's nothing in here that asked Mr. Martorano or Konnektive to commit fraud. | M.    Martorano    at 151:4-16. |
| Objection, misstates prior testimony.  Mr. Martorano didn't say he routes anything. | M.    Martorano    at 183:21 – 184:7 |
| Objection, argumentative.  How could they be avoiding detection if MasterCard can go into the system and look anytime it likes? | M.    Martorano    at 242:18 – 243:9 |
| Just object, misstates prior testimony. He said he expected it might -- it would be in there or might be in there, not that it is in there. | J.    Martorano    at 115:7-21 |
| Objection, assumes facts, argumentative. I mean this doesn't say Konnektive held the money meetup. | J.    Martorano    at 167:8-16 |
| Objection, assumes facts, argumentative, assumes there is such a thing as load balancer based on this unverified complaint. | K.    Martorano    at 206:22 – 207:2 |
| Objection as to "it," argumentative, calls for an expert legal conclusion. Also note that this – it contradicts the testimony of the plaintiff who said she sued -- under oath she sued Mrs. Martorano because she was married to Mr. Martorano was the reason for her lawsuit. | K.    Martorano    at 233:16 – 234:2 |

PLAINTIFF'S MOTION FOR SANCTIONS FOR IMPROPER DEPOSITION CONDUCT

| Objection, lacks foundation. And I'll tell you the reason I'm making that is because there's no foundation that this actually happened. It's unverified. | K. Martorano at 250:12-19 |
|---|---|
| Objection, vague as to what is corporate information and how you remove it if it's in digital form. | K. Martorano at 261:17-24 |
| Well, fair enough, but I think it's -- it would be more helpful in the context -- in context because sometimes it's easy to tell what to do in – in situations. Other times based on the facts, you might need to consult, it might be your obligation to consult with an accountant or an attorney. I think it's a difficult question to answer without more meat on the bones. That's all. My objections stand. I don't even know what they were. | K. Martorano at 255:1 - 256:12 |

Another form of improper objection is telling a witness that they may answer "if they know" or "if they understand" a question. Such statements are coaching and violate Rule 30(d)(1). *See Tattersalls Ltd. v. Wiener*, 2020 U.S. Dist. LEXIS 265504 at *24 (S.D. Cal. June 8, 2020); Dep. of K. Martorano at 98:7; 235:21; 237:23-24; Dep. of J. Martorano at 47:8; Dep. of M. Martorano at 33:23; 45:21; 93:16-17.

### D. Improper Asked and Answered Objections

"In the context of a deposition, 'asked and answered' objections are utterly pointless and serve no purpose." *La Jolla Spa MD, Inc. v. Avidas Pharm., LLC*, No. 17-CV-1124-MMA(WVG), 2019 U.S. Dist. LEXIS 148721 at *52 (S.D. Cal. Aug. 30, 2019). To the extent there is a purpose, it is an improper one, i.e. to coach a witness. *Zeleny v. Newsom*, No. 17-cv-07357-RS (TSH), 2020 U.S. Dist. LEXIS 210458 at *11 (N.D. Cal. Nov. 10, 2020). Despite this prohibition, the Konnektive Defendants made this objection aggressively throughout the depositions, as reflected in the chart below:

| Deposition | Objection Citation |
|---|---|
| Kathryn Martorano | (1) 15:23-24; (2) 24:15-16; (3) 26:15-16; (4) 26:15-16; (5) 30:2-3; (6) 30:11-12; (7) 32:25-33:1; (8) 36:13-14; (9) 38:18; (10) 43:21-23; (11) 65:13-14; (12) 77:1-2; (13) 82:19-20; (14) 83:5-6; (15) 84:15-16; (16) 87:1-2; (17) 95:2-6; (18) 95:11; (19) 97:21; (20) 103:6-9; (21) 109:2-3; (22) 110:11-12; (23) 110:25 – 111:1; (24) 111:6; (25) 117:12-13; (26) 119:8-9; (27) 122:11-12; (28) 124:21-22; (29) 125:2; (30) 128:14-15; (31) 169:16-17; (32) 193:25 – 194:1; (33) 194:14; (34) 214:19-20; (35) 231:19-21; (36) 237:8-9; (37) 264:1-2; (38) 267:2-3; (39) 270:23-25 |

| Jacob Martorano | (1) 59:6; (2) 67:10; (3) 71:8-9; (4) 79:25- 80:2; (5) 89:15-16; (6) 125:8-9; (7) 125:16-18; (8) 126:1-2; (9) 137:9-13; (10) 138:3-4; (11) 144:25; (12) 171:1; (13) 171:10-11; (14) 175:18-19; (15) 176:1-3; (16) 177:17-19; (17) 178:4-5 |
|---|---|
| Matthew Martorano | (1) 10:7-8; (2) 14:23-24; (3) 19:18-21; (4) 37:13-14; (5) 46:14; (6) 93:14-17; (7) 95:22 – 96:1; (8) 127:4-5; (9) 150:25 – 160:1; (10) 171:25 – 172:1; (11) 173:19-20; (12) 188:17-18; (13) 196:20-21; (14) 210:21-22; (15) 220:24-25; (16) 231:16-17 |

On one of these occasions, as described above, the witness (Kathryn Martorano) was actually instructed not to answer on the basis of this objection. *See* Dep. of K. Martorano at 108:22 – 109:17. On other occasions, counsel specifically used the objection as an opportunity to instruct her as to what to say in response to a question, which she repeated:

Q Well, it was either intentional or it was accidental, right?
MR. QUEALLY: Objection, asked and answered. She said it was an oversight.
A It was accidental.

Dep. of K. Martorano at 214:17-21. On another occasion, counsel instructed the witness (Jacob Martorano) at length that he should respond to a question by saying he couldn't see the exhibit, which he then did:

Q So you're not able to tell the jury if that is the load balancing popup or not?
MR. QUEALLY: Objection, asked and answered. The witness said he's not able to see it.
A I can't –
MR. QUEALLY: So he can't because you can't blow it up any better. You can answer him again.
THE WITNESS: I cannot read it due to the sizing of -- of this video.

Dep. of J. Martorano at 177:15-25.

To suggest an answer to a question is a serious violation of the rules. And it does not matter if that answer has been given before. It is coaching, and it is improper, no matter how repetitive the questioning. *Hardin v. Mendocino Coast Dist. Hosp.*, No. 17-cv-05554-JST (TSH), 2019 U.S. Dist. LEXIS 70312 at *11-12 (N.D. Cal. Apr. 25, 2019). These objections became so ubiquitous during the week of depositions that one witness, Jacob Martorano, **began making the objection himself**:

Q Okay. What's the purpose of these limits fields?
MR. QUEALLY: Asked and answered.
A Asked and answered. I answered this the previous –
MR. COVEY: Okay. I just –
MR. QUEALLY: I'll be the lawyer. You are the witness.

Dep. of J. Martorano at 170:24 – 171:6. This exchange cuts to the heart of the problem: the lawyer was, in effect, the witness throughout much of these depositions.

### E.    The Konnektive Defendants Made Improper Relevance Objections

Another kind of objection that is improper during depositions are relevance objections. Numerous such objections were made during the deposition:

| Deposition | Objection Citation |
|---|---|
| Matthew Martorano | (1) 8:20-23; (2) 13:22-23; (3) 92:8-11; (4) 161:19-24; (5) 163:8-14; (6) 164:2; (7) 241:20-25; (8) 249:3-4; (9) 250:4-5; (10) 260:16-18 |
| Kathryn Martorano | (1) 17:21-23; (2) 22:18; (3) 37:15-16; (4) 39:10-11; (5) 42:6-7; (6) 73:5; (7) 76:14-16; (8) 78:20; (9) 80:1-3; (10) 80:12; (11) 94:2; (12) 120:19-21; (13) 121:2; (14) 124:3-4; (15) 136:17; (16) 155:5-6; (17) 158:19-14; (18) 170:13-15; (19) 178:2; (20) 202:19 – 203:2; (21) 234:20-23; (22) 240:14; (23) 241:20 – 243:5; (24) 260:15-16; (25) 260:25 – 261:1; (26) 262:13; (27) 270:4 |

"Rule 30(c)(2) renders 'relevancy' objections meaningless in most depositions. The deponent must even answer questions calling for blatantly irrelevant information 'subject to the objection.'" *La Jolla Spa MD, Inc. v. Avidas Pharm., LLC*, No. 17-CV-1124-MMA(WVG), 2019 U.S. Dist. LEXIS 148721 at *22 (S.D. Cal. Aug. 30, 2019) (quoting Rutter Group Prac. Guide Fed. Civ. Pro. Before Trial Ch. 11(IV)-A § 11:1565); *Luangisa v. Interface Operations*, No. 2:11-cv-00951-RCJ-CWH, 2011 U.S. Dist. LEXIS 139700 at *30 (D. Nev. Dec. 5, 2011). The *Luangisa* court confronted a situation where, as here, defense counsel interrogated the plaintiff's counsel as to the relevance of their questions. That court ordered sanctions based on similar misconduct. *Id.* at *31-32; *44-45. One particularly egregious example is a lengthy exchange in front of the witness when Plaintiff's counsel was attempting to question Kathryn Martorano about alter ego issues—a core part of her motion to dismiss. Her counsel did exactly what the *Luangisa* court sanctioned—a

nine-page interrogation of Plaintiff's counsel about the relevance of the questioning. Dep. of K. Martorano at 241:17 – 249:20. This objection was directed at a question about changes in the routing numbers for Konnektive's bank accounts—something that was alleged under oath in a verified complaint by Konnektive's former CTO against Konnektive, LLC, Konnektive Corporation, and Matthew Martorano filed in Georgia. That verified complaint was specifically relied upon by Judge Huff in allowing the alter ego allegations to proceed. *Tan v. Quick Box, LLC*, No. 3:20-cv-01082-H-DEB, 2020 U.S. Dist. LEXIS 230427 at *42-46 (S.D. Cal. Dec. 8, 2020). Despite this, Konnektive's counsel not only interrogated Plaintiff's counsel about the questions for nine full pages, but repeatedly interjected false statements into the record that the complaint was not verified despite Judge Huff's ruling that it was. *See* Dep. of Kathryn Martorano at 206:24 – 207:2; 239:1-16; 250:18.

### F. Sanctions Are Warranted

This misbehavior is sufficiently extreme that sanctions are necessary, and those sanctions must be strong enough to deter similar misbehavior at trial. Federal Rule of Civil Procedure 30(d)(1)(2) specifically authorizes "an appropriate sanction," including expenses and attorney's fees. The Advisory Committee Notes to Rule 30 from 1993 state that both a party and their counsel may be sanctioned, and further state that improper instructions not to answer, improper objections, or an "excessive number of unnecessary objections" are sanctionable under this Rule.

Other courts have also found that it warrants sanctions under the court's inherent powers as well as 28 U.S.C. § 1927, which prohibits attorneys from vexatiously multiplying the proceedings. *See La Jolla Spa*, 2019 U.S. Dist. LEXIS 148721 at *58-61. For purposes of 28 U.S.C. § 1927 and inherent powers sanctions, the Court must find bad faith. *Id.* at *61-65. Bad faith is clear in this case. As in *La Jolla Spa*, "[t]he sheer volume of [counsel's] antics belie any notion of mistake or negligent conduct…." Konnektive's counsel has been practicing law for more than 20 years. The rules being violated here are basic ones which any attorney with that level of experience would know. And worse, at a prior hearing after similar misconduct in another deposition, Magistrate Judge Butcher specifically warned

PLAINTIFF'S MOTION FOR SANCTIONS FOR IMPROPER DEPOSITION CONDUCT

Konnektive's counsel: "I can tell you, though, that silly and inappropriate is not a valid basis for objecting, let alone instructing a witness not to answer." Dep. of T. Martorano at 75:7-11. Then, as now, Konnektive's counsel argued that it was appropriate to instruct that witness not to answer questions if they were repetitive or harassing. *Id.* at 76:8-18. Judge Butcher considered the argument and ruled: "I haven't heard, Mr. Queally, a valid basis for instructing the witness not to answer." *Id.* at 76:19 – 77:21. And this was not mere dicta: Judge Butcher specifically described his statements as "his rulings." *Id.* at 81:18-22. Konnektive's counsel was thus not merely violating a rule of procedure: he was directly disobeying a court order not to make such objections and instructions.

Plaintiff has attached declarations showing the amount of fees incurred in association with (1) the depositions themselves, and (2) preparing the instant motion. *See* Decl. of C. Covey and K. Kneupper. For category (1), this amounts to $75,454. Decl. of C. Covey at ¶ 6. For category (2), this amounts to $18,659. Decl. of K. Kneupper at ¶ 37. Other courts have ordered as a sanction the full amount of time spent in relation to the depositions which were interfered with. *See In re Ford Motor Co. DPS6 Powershift Transmission Prods. Liab. Litig.*, No. 2:18-cv-1893 AB (FFMx), 2019 U.S. Dist. LEXIS 91557 at *18-20 (C.D. Cal. Plaintiff also requests an opportunity to re-open the depositions to continue questioning on the areas where improper instructions not to answer were given.

Plaintiff further requests a corrective jury instruction, and believes the prejudice created by the behavior during these depositions cannot be corrected without one. "One of the main purposes of the discovery rules, and the deposition rules in particular, is to elicit the facts before the trial and to memorialize witness testimony before the recollection of events fade or "it has been altered by . . . helpful suggestions of lawyers.'" *MGA Entm't, Inc. v. Nat'l Prods.*, No. CV 10-07083 JAK (SSx), 2012 U.S. Dist. LEXIS 196273 at *4-5 (C.D. Cal. Apr. 12, 2012) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 277 F.R.D. 286, 297 (E.D. Va. 2011)). "A deposition is meant to be a question-and-answer conversation between the deposing lawyer and the witness. There is no proper need for the witness's own lawyer to act as an intermediary, interpreting questions, deciding which

questions the witness should answer, and helping the witness to formulate answers." *Tattersalls*, 2020 U.S. Dist. LEXIS 265504 at \*24 (quoting *Hall v. Clifton Precision*, 150 F.R.D. 525, 528 (E.D. Pa. 1993)).

Other courts have ordered corrective jury instructions specifically to address witness coaching during depositions. *See Horowitz v. Yishun Chen*, No. SA CV 17-00432-AG (DFMx), 2019 U.S. Dist. LEXIS 232218 at \*12 (C.D. Cal. Aug. 22, 2019). A lesser sanction would be inadequate. It is impossible for Plaintiff to ever obtain untainted testimony from Jacob Martorano, Kathryn Martorano, and Matthew Martorano. They know what questions are coming, and will have even more time to prepare or be coached. The opportunity to obtain candid testimony from the witnesses, as opposed to their lawyer, is gone. Plaintiff should not be the one to suffer that prejudice. A lesser sanction would encourage more misbehavior. Konnektive's counsel engaged in this behavior despite a prior court order. Courts rely on counsel at trial to obey motions *in limine* and ensure that their clients do as well. Attorney's fees are a limited deterrent because the damages here are likely to exceed $30 million. It would make economic sense to continue violating orders because any fees would pale compared to the strategic benefit. Without a strong consequence, it would create a heavy incentive to try to provoke a mistrial if the case is going badly.

Plaintiff requests the ability to play the testimony and Counsel's improper objections to the jury with the following corrective instruction from the Court:

> You are about to hear recorded testimony from the deposition of [NAME]. Ordinarily, objections made by attorneys during the deposition are not played before the jury, and are edited out of the video. Depositions are recorded testimony that follow the same rules as if they were held in a courtroom. Attorneys are not permitted to coach the witnesses during the deposition or during breaks. They are also not permitted to make objections which suggest an answer to the questions. And all objections must be short. In this case, I have found that the Defendants' attorney made improper objections that were designed to coach the witnesses as to how they should answer the questions. I have denied each of the objections you are about to see. But it is up to you as the jury to evaluate the credibility of the witnesses and decide what effect the improper objections by the Defendants' attorney had on the testimony of the witnesses.

DATED: January 9, 2024

**KNEUPPER & COVEY, PC**

/s/Kevin M. Kneupper

Kevin M. Kneupper, Esq.

*Attorneys for Plaintiff LeAnne Tan and the putative Class*