1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT
9                   SOUTHERN DISTRICT OF CALIFORNIA
10

| | |
|---|---|
| 11 LEANNE TAN, Individually and On Behalf of All Others Similarly Situated, | Case No.:  20cv1082-LL-DDL |
| 12 | |
| Plaintiff, | **ORDER GRANTING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION** |
| 13 v. | |
| 14 | |
| QUICK BOX, LLC, et al., | **[ECF Nos. 229, 378]** |
| 15 Defendants | |
| 16 | |
| 17 ———————————————— | |
| 18 AND RELATED CROSSCLAIMS AND THIRD-PARTY CLAIMS. | |
| 19 | |
| 20 | |

21        Before the Court is Plaintiff's Motion for Class Certification [ECF Nos. 229, 378];
22 an  Opposition  filed  by  Defendants  Converging  Resources  Corp.[1],  Konnektive  LLC,
23 Konnektive Rewards LLC, Kathryn Martorano, and Matthew Martorano (collectively the
24 / / /
25 / / /
26
27 ————————————————
28 [1] Defendant  Konnektive  Corporation  changed  its  name  to  Converging  Resources
Corporation. ECF No. 378 at 17 n.3.

"Konnektive Defendants") [ECF Nos. 383 (sealed), 390, 309, 310, 312, 313, 314[2]]; and Plaintiff's Reply [ECF No. 317)].[3] Also before the Court are the following supplemental briefings: Plaintiff's Supplemental Motion in Support of Class Certification [ECF No. 365], Konnektive Defendants' Opposition to Plaintiff's Supplemental Motion [ECF No. 372], and Plaintiff's Reply in Support of Supplemental Motion [ECF No. 376]. The following Defendants did not submit a response to the Motion: Beautiful Skin and Health SL, Inc., Beauty and Balance LV, Inc., Coastal Beauty Care KV, Inc., Coastal Health & Body TML, Inc., Coastal Skin Care DC, Inc., Complete Beautiful Skin DT, Inc., Complete Dietary Health DT, Inc., DL Group, Inc., Diet and Beauty Enterprise JB, Inc., Diet Focus MG, Inc., Dietary 8 Leaves TL, Inc., Dietary Care Group MK, Inc., Dietary Health DL, Inc., Dietary Health Management SL, Inc., Dietary Health Supplements ADN, Inc., Dietary Mind & Body AR, Inc., Dietary Pills TTH, Inc., Dietary Supplements 8 Leaves TL, Inc., Dietary Supplements NS, Inc., EM Strength & Wellness Products, Inc., EW Ideal Health Store, Inc., EW Radiant Skin Store, Inc., Fit Body Forever KZ, Inc., Fit Lifestyle Enterprise JD, Inc., Fit and Slim Body Olo, Inc., Fitness & Health Supplements PKL, Inc., Flawless Beauty Forever MC, Inc., Forever Beautiful Products KZ, Inc., Forever Beauty and Balance JL, Inc., Health & Body Care TN, Inc., Health & Skin Nutrition JLN, Inc., Health & Wellness Products EM, Inc., Health Enterprise AR, Inc., Health Enterprise LT, Inc.,

---

[2] ECF No. 383 is the sealed Opposition and sealed Exhibits A, B, and C to the Declaration of Christopher B. Queally ("Queally Decl."). ECF No. 390 is the redacted Opposition and redacted Exhibits A, B, and C to the Queally Decl. ECF No. 309 is the Declaration of Damon Wright. ECF No. 310 is the Declaration of Tom Knuth. ECF No. 312 is the Queally Decl. and Exhibits D, E, and F. ECF Nos. 313 and 314 are notices of the lodgment of exhibits.

[3] Defendants Quick Box LLC, Stephen Adele, Chad Biggins, and James Martell (collectively the "Quick Box Defendants") jointly submitted the Opposition with the Konnektive Defendants. However, since then, the Quick Box Defendants reached an agreement for settlement with Plaintiff and a motion for preliminary approval of a class action settlement between Plaintiff and the Quick Box Defendants is pending before the Court. ECF No. 350.

Health Skin and Beauty Maya, Inc., Health Skin and Body JB, Inc., Health and Diet Products ISA, Inc., Health and Fitness Lifestyle JL, Inc., Healthy and Slim TT, Inc., Healthy Beautiful Skin JD, Inc., Healthy Body & Balance CD, Inc., Healthy Fit Lifestyle DC, Inc., Healthy Leaves TL, Inc., Healthy Lifestyle Diet JL, Inc., Healthy Skin Group TQH, Inc., Healthy Skin Lifestyle JB, Inc., Healthy Supplements Maya, Inc., Ideal Skin & Health Care NA, Inc., Lasting Fitness & Beauty JLN, Inc., PKL Everlasting Beauty, Inc., Radiant Skin & Body Shop ATN, Inc., Remarkable Beauty TN, Inc., Remarkable Health Supply PO, Inc., Select Skin Products MV, Inc., Skin Beauty & Health JN, Inc., Skin Beauty Enterprise MG, Inc., Skin Beauty Products ISA, Inc., Skin Beauty and Balance CD, Inc., Skin Care Enterprise TTH, Inc., Skin Care Group MK, Inc., Skin Products Rubio, Inc., Skin and Beauty NS, Inc., Strength & Fitness Lifestyle LT, Inc., Total Fitness & Health MC, Inc., Total Health Supply TUA, Inc., and Vibrant Face & Beauty Shop ATN, Inc. (collectively the "La Pura Defendants"). The Court deems this Motion suitable for determination on the papers submitted and without oral argument. *See* S.D. Cal. CivLR 7.1(d)(1). For the reasons discussed below, the Motion is **GRANTED**.

## I.    BACKGROUND

This lawsuit involves an alleged fraudulent "free trial" scheme in which Defendants allegedly use fake celebrity and magazine endorsements, as well as misrepresentations about price and limited availability, to induce customers into purchasing beauty and skincare products. ECF No. 89 ¶¶ 8–12, 192. Defendants allegedly advertise the products are available as a "free trial" with only nominal shipping and handling charges, then subsequently bill customers around $100 monthly for a subscription service that customers did not knowingly agree to. *Id.* ¶¶ 8–9, 187–88. Defendants allegedly operate "false front" websites to mislead banks and credit card companies investigating complaints and chargebacks. *Id.* ¶¶ 9–10. The following allegations are taken from Plaintiff's first amended complaint ("FAC"). ECF No. 89 ("FAC").

Plaintiff LeAnne Tan alleges that Defendants worked together to perpetrate a lucrative "free trial" scam on the internet. *Id.* ¶ 8. Consumers encounter an advertisement

or a text message from a third party for a La Pura skin product or a survey promising a free gift of a product, which funnels them to a landing page for the product. *Id.* ¶¶ 122–23. These landing pages are inaccessible to anyone who does not view the advertisements or are deleted after a few weeks or months to avoid detection. *Id.* ¶ 124. Because of this, Plaintiff is unable to provide the specific landing page she viewed but provides two other known landing pages for La Pura products. *Id.* Plaintiff reached the landing page via text message, but other consumers viewed "affiliate pages" with a fake news article claiming false celebrity endorsements and the false success of clinical trials, fake celebrity reviews, fake customer reviews, fake magazine endorsements, and false claims about a limited supply of the product and a limited time to sign up for a free sample. *Id.* ¶¶ 125–32. When consumers sign up for the free sample on the La Pura landing page, the check-out page states the price they will pay is "free" with $4.97 for shipping and handling and prompts them to enter their credit card information. *Id.* ¶¶ 140, 156. On these pages, the terms and conditions of purchases are hidden or buried, and consumers are not required to agree to them to complete the purchase. *Id.* ¶¶ 135–38, 151. The terms of service state that instead of a free trial of the product for which only shipping and handling will be charged, consumers will be billed $88.46 unless they cancel within fourteen days of their order, and then they will be billed $93.42 every month for a new thirty-day supply of the product. *Id.* ¶¶ 139–40, 157. The terms of service directly contradict what is displayed on the advertisements, the landing page, and the check-out page, which say nothing about signing up for a monthly subscription or the need to cancel within fourteen days to avoid being billed. *Id.* ¶¶ 140–41.

Defendants also deceive banks and credit card companies. When consumers discover these additional charges beyond shipping and handling and dispute the charge with their bank or credit card company, Defendants present investigators with a "false front" website that resembles the landing pages consumers use to make purchases but differs in that the terms of service are clearly stated. *Id.* ¶¶ 163–71. The false front websites deceive investigators into believing consumers made their purchases there and agreed to

the prominent terms of sale. *Id.* ¶¶ 167–68. Additionally, Defendants create multiple shell companies, each of which signs up for a unique merchant account. *Id.* ¶¶ 170, 172. These merchant accounts are rotated through customer billings with "load balancing" software to prevent any individual account from being flagged for fraud due to high levels of chargebacks. *Id.*

Plaintiff alleges that Defendants worked together to perpetrate this "free trial" scheme. The La Pura Defendants are the marketers and branders of the La Pura products who allegedly create the hidden landing pages viewed by consumers as well as the false front websites provided to banks and credit card companies. *Id.* ¶ 10. The La Pura Defendants share the same registered agent in Sacramento, California, and Plaintiff alleges they are shell entities used to apply for merchant accounts to avoid fraud detection. *Id.* ¶¶ 23–88, 158–63, 205–19. The Quick Box Defendants are a fulfillment company that allegedly provides generic "white label" products to the La Pura Defendants, assists the La Pura Defendants with affiliate marketing and advertising, distributes the products to consumers, and handles returns when customers complain. *Id.* ¶ 10. The Konnektive Defendants are a customer relationship management ("CRM") software company that allegedly provides specialized "load balancing" software to the La Pura Defendants to enable the use of multiple merchant accounts and chargeback/re-billing screening to avoid fraud detection. *Id.* ¶¶ 10, 298–305. The Konnektive Defendants sell their CRM software under the brand name Konnektive. *Id.* ¶ 288.

Plaintiff alleges the following causes of action: (1) violation of California's Consumer Legal Remedies Act ("CLRA"), (2) violation of California's False Advertising Law ("FAL"), (3) violation of the unfair and fraudulent prongs of California's Unfair Competition Law ("UCL"), (4) violation of the unlawful prong of California's UCL, and (5) civil Racketeer Influenced and Corrupt Organizations ("RICO") Act violations.[4]

---

[4] Plaintiff alleges that the La Pura Defendants and Quick Box Defendants directly violated the CLRA and FAL. FAC ¶¶ 369–70, 465–66. She also alleges that the Quick Box

*Id.* ¶¶ 363–897; *see also* ECF No. 130 at 45 (granting dismissal of Plaintiff's non-California state consumer protection law claims in the FAC).

Plaintiff moves to certify two classes pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3) as follows:[5]

(1) A nationwide class for the RICO claim consisting of all consumers in the United States who, within the applicable statute of limitations period until the date notice is disseminated, were billed for products sold, shipped, or caused to be sold or shipped by any of the Defendants under the La Pura, La'Pura, La' Pura, or LaPura brand names.

(2) A California subclass for the state law causes of action consisting of all consumers in California who, within the applicable statute of limitations period until the date notice is disseminated, were billed for products sold, shipped, or caused to be sold or shipped by any of the Defendants under the La Pura, La'Pura, La' Pura, or LaPura brand names.

---

Defendants and Konnektive Defendants violated the CLRA and FAL by aiding and abetting the La Pura Defendants. *Id.* ¶¶ 375, 380, 385, 390, 395, 399, 403, 407, 411, 471, 475, 480, 485, 490, 494, 498, 502, 506. Plaintiff further alleges that all Defendants violated the CLRA and FAL by conspiring with one another. *Id.* ¶¶ 415, 510. As to the UCL claims, Plaintiff alleges all Defendants directly violated them, aided and abetted the La Pura Defendants, and conspired with one another. *Id.* ¶¶ 559–61, 562, 566, 570, 575, 580, 585, 589, 593, 597, 601, 605, 729–31, 732, 736, 740, 745, 750, 755, 759, 763, 767, 771, 775. For the RICO claim, Plaintiff alleges that all Defendants violated the statute, directly committed some predicate acts, and conspired to commit other predicate acts. *Id.* ¶¶ 840–41, 855–57, 859, 861–62, 870–72, 895.
[5] The Court notes that the classes Plaintiff seeks to certify in her Motion are different from the classes alleged in the FAC. *Compare* ECF No. 378 at 9, *with* FAC ¶¶ 350–51. Because the class definitions in the Motion are narrower than the those in the SAC and do not involve a new claim for relief, the Court is allowed to analyze class certification based on the definitions in the Motion. *See Holt v. Noble House Hotels & Resort, Ltd.*, No. 17cv2246-MMA (BLM), 2018 U.S. Dist. LEXIS 177940, at *6 (S.D. Cal. Oct. 16, 2018) (citations omitted) (allowing the plaintiff to propose a new class definition in her motion for class certification although it differed from that in her complaint because it was narrower and did not involve a new claim for relief).

ECF No. 378 at 9. Plaintiff requests that the class definitions exclude any of the following: "any consumer who received a full refund for the products, governmental entities, Defendants, any entity in which Defendants have a controlling interest, and Defendants' officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns," as well as "any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff." *Id.*

## II.   LEGAL STANDARD

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (internal quotation marks and citation omitted). Parties seeking class certification must satisfy each of the four requirements of Federal Rule of Civil Procedure 23(a) and at least one of the requirements of Rule 23(b). *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1124 (9th Cir. 2017) (citation omitted). "Rule 23(a) states four threshold requirements applicable to all class actions: (1) numerosity (a class so large that joinder of all members is impracticable); (2) commonality (questions of law or fact common to the class); (3) typicality (named parties' claims or defenses are typical of the class); and (4) adequacy of representation (representatives will fairly and adequately protect the interests of the class)." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997) (internal quotation marks, brackets, and ellipses omitted). Certification under Rule 23(b)(3), which is applicable here, is appropriate only if "common questions of law or fact found under Rule 23(a)(2) 'predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.'" *Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1132 (9th Cir. 2016) (citing Fed. R. Civ. P. 23(b)(3)). The party seeking class certification has the burden of affirmatively demonstrating that the class complies with Rule 23. *Wal-Mart Stores, Inc.*, 564 U.S. at 350. In the Ninth Circuit, that burden is met by a preponderance of the evidence. *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th

651, 665 (9th Cir. 2022), *cert. denied sub nom. StarKist Co. v. Olean Wholesale Grocery Coop., Inc.*, 143 S. Ct. 424 (2022).

When considering class certification, courts must engage in "a rigorous analysis" to ensure that "the prerequisites of Rule 23(a) have been satisfied." *Wal-Mart Stores, Inc.*, 564 U.S. at 350–51 (citing *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982)). Thus, "a district court *must* consider the merits if they overlap with the Rule 23(a) requirements." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011) (emphasis in original) (citations omitted). At the same time, courts "consider merits questions at the class certification stage *only* to the extent they are relevant to whether Rule 23 requirements have been met." *Ruiz Torres*, 835 F.3d at 1133 (emphasis added) (citation omitted). "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013). "A court, when asked to certify a class, is merely to decide a suitable method of adjudicating the case and should not 'turn class certification into a mini-trial' on the merits." *Edwards v. First Am. Corp.*, 798 F.3d 1172, 1178 (9th Cir. 2015) (citing *Ellis*, 657 F.3d at 983 n.8).

## III.   DISCUSSION

### A.   Standing

Plaintiff argues that the issue of standing was previously briefed and argued before the Court, which found that Plaintiff has standing under the causes of action. ECF No. 378 at 18. Plaintiff further argues that discovery has confirmed that she only received a partial refund and was thus injured, and that she would not have bought the La Pura products but for Defendants' misrepresentations and omissions. *Id.*

Konnektive Defendants argue that Plaintiff does not have standing because (1) she asked for a refund and agreed to receive a partial refund, and (2) she was not deceived by any claimed characteristic or quality of La Pura products and successfully canceled her trial. ECF No. 390 at 23–24.

A plaintiff must have standing to bring a claim in federal court, which "requires a plaintiff to 'have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'" *Hall v. Smosh Dot Com, Inc.*, 72 F.4th 983, 988 (9th Cir. 2023) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016), *as revised* (May 24, 2016)). To show standing in a UCL or FAL claim, a party must "(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury,* and (2) show that that economic injury was the result of, i.e., *caused by,* the unfair business practice or false advertising that is the gravamen of the claim." *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 322, 246 P.3d 877, 885 (2011) (emphasis in original). "[A]ny plaintiff who has standing under the UCL's and FAL's 'lost money or property' requirement will, *a fortiori,* have suffered 'any damage' for purposes of establishing CLRA standing." *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1108 (9th Cir. 2013), *as amended on denial of reh'g and reh'g en banc* (July 8, 2013).

The Court finds that Plaintiff has standing. When Defendants previously made a factual attack on jurisdiction as to standing, the Court found Plaintiff had standing because she adequately alleged that "she suffered an economic injury in that she was overcharged for the products, never received a full refund, and would not have completed her purchase in the first place if not for the misrepresentations about the endorsements, effectiveness, price, etc. of the products, and the omissions about the subscription service, false front websites, and other details of the fraudulent scheme." *Tan v. Quick Box, LLC*, No. 3:20-cv-01082-H-DEB, 2021 U.S. Dist. LEXIS 67791, at *29 (S.D. Cal. Apr. 7, 2021); *see also Tan v. Quick Box, LLC*, No. 3:20-cv-01082-H-DEB, 2020 U.S. Dist. LEXIS 230427, at *58–62, 89–90, 96 (S.D. Cal. Dec. 8, 2020). Defendants' argument that testimony since then reveals otherwise is not convincing.

The Court finds Plaintiff suffered an economic injury. Plaintiff testified that she asked for a full refund but was only able to obtain a partial refund. ECF No. 317-2 at 10–11. Unlike the cases cited by Defendants, Plaintiff did not receive a full refund and

that is sufficient to establish an economic injury for purposes of standing. *See Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 330 n.15 (2011) (citation omitted) ("It suffices that a plaintiff can allege an 'identifiable trifle' of economic injury.").

Plaintiff's testimony also supports her argument that her economic injury was a result of Defendants' misrepresentations and omissions. She believed the La Pura products were featured in magazines and that she was ordering a free gift, but instead she was enrolled into a subscription with monthly fees, charged more than $80 for a product, sent products she did not want, and found the cream she ordered did not moisturize her skin. ECF No. 317-2 at 7, 10–11, 14–16. Although she was able to cancel the subscription, it was never her intention to sign up for one at all. *Id.* at 10.

In sum, the Court finds Plaintiff has standing because she has adequately shown that she suffered an economic injury that was caused by Defendants' misrepresentations and omissions. *See Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th at 322.

### B.    Rule 23(a) Requirements

#### 1.    Numerosity

Plaintiff argues that numerosity is satisfied because data produced by Konnektive Defendants shows that from 2019 to 2020, 1,646 customers had the exact sequence of transactions as Plaintiff.[6] ECF No. 378-4, Declaration of Cyclone Covey ("Covey Decl."), ¶¶ 23–24, 27–29. Additionally, Quick Box shipped 82,206 orders of La Pura products in the U.S., of which 11,797 of those were in California. ECF No. 378 at 19; ECF No. 378-3 (Ex.50) at 60. Konnektive Defendants are silent on the issue of numerosity.

Rule 23(a) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Numerosity does not have a fixed numerical threshold and instead requires an examination of the specific facts of each case. *Rannis v.*

---

[6] Plaintiff's purchase on a La Pura website resulted in three separate charges on her credit card on the same day in the following amounts: $3.97, $4.97, and $19.95. Covey Decl. ¶ 28.

*Recchia*, 380 F. App'x 646, 651 (9th Cir. 2010) (citing *Gen. Tel. Co. of the Nw. v. Equal Emp. Opportunity Comm'n*, 446 U.S. 318, 330 (1980)). Courts generally find numerosity met when a class contains at least forty members. *Id.* (citation omitted).

The Court finds that numerosity has been met. Although the proposed class definitions are for consumers who were "billed for products sold, shipped, or caused to be sold or shipped by any of the Defendants under the La Pura, La'Pura, La' Pura, or LaPura brand names," the Court can reasonably infer from the shipping and transaction data that more than forty consumers purchased La Pura products. *See Hilsley v. Ocean Spray Cranberries, Inc.*, No. 17CV2335-GPC(MDD), 2018 WL 6300479, at *3 (S.D. Cal. Nov. 29, 2018) ("A court may reasonably infer based on the facts of each particular case to determine if numerosity is satisfied." (citation omitted)). Based on the shipping and transaction data, it is highly likely that at least forty consumers were billed for La Pura products sold, shipped, or caused to be sold or shipped by any of the Defendants. The Court finds that the class would consist of more than forty members and that joinder of all members would be impracticable.

### 2.    Commonality

Plaintiff argues that her claims under the California consumer protection statutes and RICO satisfy the commonality requirement because they focus on Defendants' fraudulent scheme and "derive from a single course of conduct." ECF No. 378 at 20. She also contends that "the aiding and abetting, conspiracy, and RICO conspiracy claims are a core issue, and the evidence on those claims is uniform across the class." *Id.*

Konnektive Defendants oppose, arguing that Plaintiff cannot establish that everyone who purchased La Pura products saw the same general misrepresentations or that everyone had the same purchasing experience. ECF No. 390 at 28. Additionally, Konnektive Defendants argue that Plaintiff has no evidence that they deceived the credit card brands and payment processors. *Id.* at 29.

To satisfy the commonality requirement, a plaintiff must establish that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Plaintiffs' claims

must depend upon a common contention. *Dukes*, 564 U.S. at 350. "That common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* Accordingly, "it is not just the common contention, but the answer to that contention, that is important . . . [what matters is] the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Alcantar v. Hobart Serv.*, 800 F.3d 1047, 1052 (9th Cir. 2015) (emphasis in original) (internal quotation marks and citation omitted). Dissimilarities within the proposed class "have the potential to impede the generation of common answers." *Dukes*, 564 U.S. at 350 (citation omitted). "In determining whether the 'common question' prerequisite is met, a district court is limited to resolving whether the evidence establishes that a common question is *capable* of class-wide resolution, not whether the evidence in fact establishes that plaintiffs would win at trial." *Bumble Bee Foods LLC*, 31 F.4th at 666–67 (emphasis in original).

The Court finds that commonality has been met. Plaintiff contends that all class members suffered an economic loss after purchasing La Pura products following exposure to misrepresentations and omissions that promised a free product but instead charged them for the product and signed them up for a monthly subscription without their knowledge or permission, as part of a scheme using shell companies and load balancing. Thus, common questions capable of classwide resolution with common evidence include, *inter alia*, (1) whether the objective reasonable consumer is likely to be deceived by the advertising or promotional material for the free La Pura products (UCL and FAL claims), (2) whether a reasonable consumer would find the misrepresentations or omissions material to the decision to order a La Pura product (CLRA claim), (3) whether Konnektive Defendants gave substantial assistance or encouragement to La Pura Defendants to deceive consumers into purchasing La Pura products (aiding and abetting claims), and (4) whether a RICO enterprise exists and whether Konnektive Defendants engaged in a scheme to defraud (RICO claim).

Konnektive Defendants argue that Plaintiff has not met her burden of establishing that everyone who purchased La Pura products saw the same general misrepresentations, but the Court does not agree. Plaintiff provided copies and videos of webpages and texts from 2019 to 2020 that contain misrepresentations similar to what she experienced. ECF Nos. 229-2 (Ex. 2); 229-3 at 2–6 (Ex. 3), 15 (Ex. 5), 33–37 (Ex. 9), 45 (Ex. 11), 57 (Ex. 17); 365-2 at 15–19 (Ex. P048), 21 (Ex. P050), 23 (Ex. P126), 25 (Ex. P127). In her deposition, Plaintiff's description of her experience in receiving a text purported to be from Amazon to take a survey to get a free gift, choosing a skin care product that took her to a La Pura landing page with magazine endorsements and testimonials, and filling out a form for a free gift with no mention of a subscription is similar to the copies and videos of webpages and texts she provided. ECF No. 309-1 at 11–12, 15, 17–18, 20–22. Konnektive Defendants provide testimony that Plaintiff did not recall seeing celebrity endorsements for La Pura products, the hyperlink for "terms" on a landing page, and certain other landing pages. ECF No. 390 at 14–15. However, elsewhere in the deposition, Plaintiff does recall similarities in certain landing pages and order pages to what she experienced, such as the product, magazine endorsements, order form, wording, before and after photos, and payment information box. ECF No. 309-1 at 25–26. The Court also notes that Plaintiff viewed the La Pura landing pages on her cellphone, which are different than the landing pages viewed on a computer. ECF No. 309-1 at 17; *compare* ECF No. 229-2 at 45 (Ex. 11) (landing pages on a cellphone), *with* ECF No. 229-3 at 2–6, 15, 33–37 (landing pages on a computer).

Plaintiff also provided copies of affiliate offer websites for the La Pura products that contain screenshots of the same landing page websites that consumers visited and that advertise offers including "trials" or "surveys" or "upsells." ECF No. 229-3 at 47 (Ex. 12), 49 (Ex. 13), 51 (Ex. 14), 53 (Ex. 15), 55 (Ex. 16). The affiliate offers are similar to each other and reference the surveys, trials, or upsells Plaintiff and others experienced, reinforcing that even if different affiliates advertised La Pura products, they were similar advertisements.

On the whole, the Court finds Plaintiff has shown by a preponderance of the evidence that class members viewed the same general misrepresentations. That there were different landing pages with similar information, that consumers arrived at the landing pages through emails or texts for surveys or through other websites, that class members purchased different items, or that some class members were offered additional products as upsells does not defeat a finding that class members experienced the same general misrepresentations of being offered a free La Pura product but were ultimately charged for the product and enrolled in a subscription. *See Ellis*, 657 F.3d at 981 (citation omitted) ("The requirements of Rule 23(a)(2) have 'been construed permissively,' and '[a]ll questions of fact and law need not be common to satisfy the rule.'").

Konnektive Defendants also argue that Plaintiff has no evidence that they deceived the credit card brands and payment processors, but the Court does not agree. Plaintiff offers testimony and letters to support her contention that Konnektive Defendants created a load balancer called GT Pay to allow its clients to avoid being flagged for having too many chargebacks, in violation of rules by banks and credit card companies. ECF No. 378 at 13–17; *see also* ECF No. 229-4 at 94, ECF No. 378-3 at 33, 42. In opposition, Konnektive Defendants offer testimony as evidence that no deception was found. ECF Nos. 390 at 18; 383 (sealed) at 18–19. The Court finds Plaintiff has shown by a preponderance of the evidence that Konnektive Defendants deceived banks and credit card companies. What Konnektive Defendants present with their competing evidence is a factual dispute, which the Court is not required to resolve at this stage of the litigation. *Ellis*, 657 F.3d at 983 n.8 ("The district court is required to examine the merits of the underlying claim in this context, only inasmuch as it must determine whether common questions exist; not to determine whether class members could actually prevail on the merits of their claims.").

### 3.   Typicality

Plaintiff contends that typicality is met because her claims are substantially similar to those of other class members and arise from the same course of conduct by Defendants.

ECF No. 378 at 21. Konnektive Defendants primarily argue that there is no typicality because Plaintiff is subject to various unique defenses. ECF No. 390 at 25–28.

"To demonstrate typicality, Plaintiffs must show that the named parties' claims are typical of the class." *Ellis*, 657 F.3d at 984 (citing Fed. R. Civ. P. 23(a)(3)). The focus of the inquiry is "on the class representative's claim—but not the specific facts from which the claim arose—and ensures that the interest of the class representative aligns with the interests of the class." *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1116 (9th Cir. 2017) (internal quotation marks and citation omitted). "The requirement is permissive, such that representative claims are typical if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *Id.* (internal quotation marks and citation omitted). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (internal quotation marks and citation omitted). However, "a named plaintiff's motion for class certification should not be granted if 'there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it.'" *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (citation omitted).

First, Konnektive Defendants argue that Plaintiff's allegation that she was forced to purchase two additional La Pura products that appeared in her online shopping cart is either dubious, or if true, demonstrates that she was not deceived because she intentionally purchased them knowing she would seek a refund. The Court does not find this would subject Plaintiff to a unique defense that would become a major focus of the litigation. Data produced by Konnektive Defendants shows that from 2019 to 2020, 1,646 customers had the exact sequence of transactions as Plaintiff, which supports her argument that she only wanted one item but was unable to remove the two unwanted items. *See* Covey Decl. ¶¶ 23–24, 27–29. More importantly, regardless of whether class members willingly or involuntarily bought any additional items, the common contention remains unaffected:

that they believed they were ordering free products but were instead charged for the full price and enrolled in a monthly subscription without their knowledge or permission.

Konnektive Defendants next argue that Plaintiff is subject to unique defenses because she agreed to accept a partial refund, but the Court does not agree that this would defeat typicality. Plaintiff seeks to exclude class members who received a full refund. Those who received partial refunds still suffered an economic harm and would remain in the class. It is possible that other class members received a partial refund, so this will not present a unique defense for the named Plaintiff.

Third, Konnektive Defendants contend that Plaintiff is subject to unique defenses because she spoliated evidence and has poor recall, but the Court does not agree. ECF No. 390 at 27–28. The spoliation involved the text message that Plaintiff described as purportedly sent to her from Amazon inviting her to complete a survey and receive a free gift, which she failed to preserve when she upgraded her phone. ECF No. 89 ¶ 110; *see also* ECF No. 279 at 2, 8. The Court denied Konnektive Defendants' motion for sanctions for the spoliation, finding that they failed to establish that the text message cannot be replaced or recovered from another source. ECF No. 279 at 9–11. The Court also noted that other evidence produced by Konnektive Defendants regarding the marketing directed to Plaintiff indicated she was sent materials identified as "Affiliati – 1 Step Survey," "Affiliati – 2 Step," "Anaconda," and "C2M – 2 Step," with tracking links to each. *Id.* at 10. Konnektive Defendants argue that the spoliation raises credibility concerns. Given that the Court denied the motion for sanctions and noted other evidence that indicated support for Plaintiff's description of the text message she received, the Court finds the spoliation issue would not subject Plaintiff to a unique defense that would become a major focus of the litigation. *See Beaton v. SpeedyPC Software*, No. 13-cv-08389, 2017 U.S. Dist. LEXIS 173631, at *20–21 (N.D. Ill. Oct. 19, 2017).

As to the poor recall argument, the Court has already discussed that although Plaintiff did not recall seeing certain landing pages for the La Pura Products, she did recall similarities in other landing pages and order pages to what she saw on her cellphone.

*See supra* Part III.B.2. Thus, the Court does not find that this would subject Plaintiff to a unique defense that would become a major focus of the litigation.

Finally, Konnektive Defendants argue that Plaintiff's failure to sue Rocket Management Group ("RMG")—the umbrella management company for La Pura Defendants—makes her claims atypical from other class members. ECF No. 390 at 26. Plaintiff contends that she has obtained an entry of default against the shell companies that comprise the La Pura Defendants, which she will pursue to default judgment against RMG and its principals by piercing the corporate veil. ECF No. 317 at 8. The Court finds that Plaintiff's intention to sue RMG through default judgment is sufficient to maintain typicality.

The Court finds typicality has been met because Plaintiff has shown that each member's claim arises from the same course of conduct, each class member has the same injury, and each member makes similar legal arguments. *See Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1018 (9th Cir. 2011) ("The typicality requirement looks to whether the claims of the class representatives [are] typical of those of the class, and [is] satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." (citation omitted)), *abrogated on other grounds by Comcast Corp. v. Behrend*, 569 U.S. 27 (2013); *Hanon v. Dataproducts Corp.*, 976 F.2d at 508.

### 4.    Adequacy

Plaintiff contends that the adequacy requirement has been met because (1) she intends to fairly and adequately represent the interests of class members [ECF No. 378 at 22; ECF No. 229-6, Declaration of LeAnne Tan ("Tan Decl."), ¶¶ 4–7] and (2) Plaintiff's counsel have extensive experience in class actions, complex litigation, and consumer law, have no conflicts of interest with the class, and will prosecute this matter with vigor [ECF No. 378 at 23; Covey Decl. ¶¶ 14–20; ECF No. 378-1, Declaration of Kevin Kneupper ("Kneupper Decl."), ¶¶ 2, 19–21].

1   Konnektive Defendants argue that Plaintiff cannot establish adequacy because
2   (1) she lacks knowledge about the suit and has barely participated, (2) her spoliation and
3   related credibility problems make her inadequate, and (3) her failure to sue RMG and its
4   principals make her inadequate. ECF No. 390 at 30–31.

5   Rule 23(a) requires representative parties to "fairly and adequately protect the
6   interests of the class." Fed. R. Civ. P. 23(a)(4). "To determine whether named plaintiffs
7   will adequately represent a class, courts must resolve two questions: (1) do the named
8   plaintiffs and their counsel have any conflicts of interest with other class members and
9   (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of
10  the class?" *Ellis*, 657 F.3d at 985 (internal quotation marks and citation omitted).

11  The Court finds adequacy is met. Although Plaintiff testified to only reading about
12  ten percent of the First Amended Complaint at the time of the deposition, other parts of her
13  testimony demonstrate her familiarity with the basic outlines of the suit and her knowledge
14  of other documents such as written and recorded interviews, as well as text messages and
15  emails between Defendants. ECF No. 309-1 at 23, 34; ECF No. 317-2 at 22–25. "The
16  threshold of knowledge required to qualify as a class representative is low; it is only a bar
17  to certification where the representative [is] startlingly unfamiliar with the case." *Johnson
18  v. Hartford Cas. Ins. Co.*, No. 15-cv-04138-WHO, 2017 U.S. Dist. LEXIS 77482, at *38
19  (N.D. Cal. May 22, 2017) (internal quotation marks and citations omitted). Although
20  Plaintiff could not explain some of the relationships and intricacies between the various
21  defendants and their roles in the alleged scheme, Plaintiff articulated the factual basis of
22  the suit and demonstrated enough knowledge to meet the low threshold required of a class
23  representative. *See id.* at 39 (finding a class representative who had knowledge of the
24  factual basis of the suit and why he was wronged to be an adequate representative even
25  though he may not have read the complaint); *see also Gamino v. Kpc Healthcare Holdings,
26  Inc.*, No. 5:20-cv-01126-SB-SHK, 2022 U.S. Dist. LEXIS 66311, at *6 (C.D. Cal. Apr. 5,
27  2022) ("A class representative need not be intimately familiar with every factual and legal
28  issue in the case as long as she understands the gravamen of the claim." (internal quotation

marks and citation omitted)). The Court is also not persuaded by the arguments regarding spoliation and RMG. These are not a bar to adequacy for the same reasons they could not bar typicality. *See supra* Part III.B.3.

The Court finds Plaintiff and her counsel will adequately protect the interests of the class. Plaintiff attests that she has no conflicts between her interests and the interests of the class, that she intends to vigorously pursue all claims in the suit, and that she is able to fulfill her duties as a class representative. Tan Decl. ¶¶ 5–6. Plaintiff's counsel are experienced, able to fairly and adequately protect the interests of the class, and capable of prosecuting this consumer class action. *See Turrey v. Vervent, Inc.*, No. 20-CV-0697 DMS (AHG), 2023 WL 163200, at *6 (S.D. Cal. Jan. 11, 2023) ("The named plaintiffs and their counsel must have sufficient 'zeal and competence' to protect the interests of the rest of the class." (citing *Fendler v. Westgate-Cal. Corp.*, 527 F.2d 1168, 1170 (9th Cir. 1975)).

Having addressed the Rule 23(a) requirements, the Court now turns to Rule 23(b)(3).

## C.    Rule 23(b)(3) Requirements

### 1.    Predominance

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prod., Inc.*, 521 U.S. at 623. It requires a court to find that "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). To prove that a common question predominates, a plaintiff must show that the common question relates to a central issue in the plaintiff's claim. *Bumble Bee Foods LLC*, 31 F.4th at 665. In doing so, a plaintiff must show that essential elements of the cause of action are capable of being established through a common body of evidence applicable to the whole class. *Id.* at 666 (internal quotation marks and citation omitted). "When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some

affirmative defenses peculiar to some individual class members." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (internal quotation marks and citation omitted).

### a.   UCL, FAL, CLRA claims

Plaintiff contends that common questions predominate over individual inquiries for the California consumer law claims because they will turn on common proof and generate common answers. ECF No. 378 at 26.

Konnektive Defendants argue that individualized inquiries into what consumers understood, whether they were deceived, and whether and how they were damaged will predominate over common issues. ECF No. 390 at 32.

The UCL prohibits "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. The FAL prohibits "untrue or misleading" advertising. Cal. Bus. & Prof. Code § 17500. "To state a claim under the UCL or the FAL 'based on false advertising or promotional practices, it is necessary only to show that members of the public are likely to be deceived.'" *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 985 (9th Cir. 2015) (quoting *In re Tobacco II Cases*, 46 Cal. 4th 298, 312 (2009)). This showing does not require "individualized proof of deception, reliance and injury." *Id.* Instead, the inquiry is based on an objective reasonable consumer "who is neither the most vigilant and suspicious of advertising claims nor the most unwary and unsophisticated, but instead is the ordinary consumer within the target population." *Chapman v. Skype Inc.*, 220 Cal. App. 4th 217, 226 (2013) (internal quotation marks and citation omitted).

The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices" in commercial transactions. Cal. Civ. Code § 1770(a). In a class action, the CLRA requires each class member to have an actual injury caused by the unlawful act. *Steroid Hormone Prod. Cases*, 181 Cal. App. 4th 145, 156 (2010), *as modified on denial of reh'g* (Feb. 8, 2010). Causation as to the entire class may be established by showing that material misrepresentations were made to class members. *In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 129 (2009). A misrepresentation or omission is material if a reasonable consumer "would attach importance to its existence or nonexistence in determining his

choice of action in the transaction in question." *Steroid Hormone Prod. Cases*, 181 Cal. App. 4th at 157 (citations omitted).

The Court has already found that Plaintiff has shown by a preponderance of the evidence that class members were exposed to the same general misrepresentations and omissions that promised a free product but instead charged them for the product and signed them up for a monthly subscription without their knowledge or permission, as part of a scheme using shell companies and load balancing. *See supra* Part III.B.2.

The Court finds common questions predominate over individual issues as to the consumer law claims. Under the UCL, FAL, and CLRA, individual proof of deception, reliance, and injury is not required because these claims look instead to the objective reasonable consumer test to determine whether misrepresentations and omissions about the La Pura products were material and likely to deceive a reasonable consumer. Because the reasonable consumer test is objective, the essential elements of the causes of action are capable of being established through a common body of evidence applicable to the whole class. *See Bumble Bee Foods LLC*, 31 F.4th at 666. The questions Konnektive Defendants pose as individual inquiries will instead be answered with common proof per the reasonable consumer test.

Plaintiff contends that common questions include (1) whether Defendants made certain representations and omissions to consumers regarding the La Pura Products; (2) whether these representations and omissions were material to the decisions of consumers to purchase; (3) whether these representations and omissions were false and misleading; and (4) whether the class members were damaged by purchasing La Pura products based on these misrepresentations and omissions. ECF No. 378. at 27. The Court finds these questions are common to the class and will predominate over individual inquiries.

Similarly, the Court finds common questions predominate as to the aiding and abetting claims against Konnektive Defendants for violations of the California consumer statutes. A claim for aiding and abetting a tort requires that the defendants "(a) [knew] the

1  other's conduct constitute[d] a breach of duty and [gave] substantial assistance or
2  encouragement to the other to so act or (b) [gave] substantial assistance to the other in
3  accomplishing a tortious result and the person's own conduct, separately considered,
4  constitute[d] a breach of duty to the third person." *Bradshaw v. SLM Corp.*, 652 F. App'x
5  593, 594 (9th Cir. 2016) (quoting *Casey v. U.S. Bank Nat. Assn.*, 127 Cal. App. 4th 1138,
6  1144 (2005)); *Decarlo v. Costco Wholesale Corp.*, No. 14CV00202 JAH-BLM, 2020
7  WL 1332539, at *5 (S.D. Cal. Mar. 23, 2020) ("Liability may be imposed on those who
8  aid and abet another's violation of the UCL if the individual knows the other's conduct
9  constitutes a violation and gives substantial assistance or encouragement to the other to so
10 act." (citing *People ex rel. Harris v. Sarpas*, 225 Cal. App. 4th 1539, 1563 (2014)).
11 Individual inquiries are not necessary because aiding and abetting looks to the actions of
12 Konnektive Defendants and as such, those questions will be common to the class
13 as a whole.

### b.    RICO claims

15      A civil RICO claim requires "(1) conduct (2) of an enterprise (3) through a pattern
16 (4) of racketeering activity (known as predicate acts) (5) causing injury to plaintiff's
17 business or property." *Just Film, Inc.*, 847 F.3d at 1116 (citation omitted); *see also*
18 18 U.S.C. §§ 1962(c), 1964(c). The last factor of causation requires a plaintiff to show that
19 "the defendant's RICO violation was not only a 'but for' cause of his injury, but that it was
20 a proximate cause as well." *Oki Semiconductor Co. v. Wells Fargo Bank, Nat. Ass'n*, 298
21 F.3d 768, 773 (9th Cir. 2002) (citation omitted). "[T]he proximate-cause requirement
22 generally bars suits for alleged harm that is 'too remote' from the defendant's unlawful
23 conduct." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 133 (2014).
24 Thus, there is "a demand for some direct relation between the injury asserted and the
25 injurious conduct alleged." *Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 268 (1992).
26 A RICO conspiracy claim requires a showing that the defendant "knew about and agreed
27 to facilitate the scheme." *United States v. Fiander*, 547 F.3d 1036, 1041
28 (9th Cir. 2008) (citation omitted).

Plaintiff contends that RICO conspiracy and the first four elements for RICO will be proven as to every class member with the same common evidence because all depend on the conduct of Defendants, not on any individualized inquiry specific to the named Plaintiff or any putative class member. ECF No. 378 at 29. As for causation, Plaintiff contends that she will show that uniform representations and omissions were made to all class members about the La Pura products and a classwide presumption of reliance is appropriate. *Id.* at 30–31.

Konnektive Defendants argue that predominance cannot be met because individual inquiries are required to determine if they defrauded a credit card brand or payment processor associated with a La Pura customer or otherwise proximately caused an injury to a La Pura customer. ECF No. 390 at 34.

The Court finds individual proof of reliance is not required in this case to establish proximate cause. Proximate cause under RICO may be established without a showing of reliance when the plaintiff's injury is the direct result—"a foreseeable and natural consequence"—of the defendant's fraud. *Painters & Allied Trades Dist. Council 82 Health Care Fund v. Takeda Pharms. Co. Ltd.*, 943 F.3d 1243, 1250–51 (9th Cir. 2019) (citing *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 658, 661 (2008)); *see also Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006) ("When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries."). Here, Plaintiff alleges Defendants' misrepresentations and omissions promised her a free product but instead charged her for the product and signed her up for a monthly subscription without her knowledge or permission, as part of a scheme using shell companies and load balancing. Plaintiff's alleged injury is an economic loss suffered when she was unable to obtain a full refund; she would not have purchased the La Pura products at all had she known the advertising was false. Because Plaintiff was the immediate victim of Defendants' fraudulent scheme to sell more La Pura products at full price, the alleged RICO violation has a direct relation

to Plaintiff's alleged harm and satisfies proximate cause. *See Bridge*, 553 U.S. at 658–59, 661; *Painters & Allied Trades Dist. Council 82 Health Care Fund*, 943 F.3d at 1250–51.

The Court finds common questions will predominate for the RICO claims. The RICO claims, including RICO conspiracy, do not require individual inquiries and will instead turn on common proof. As discussed earlier, the Court finds Plaintiff has shown by a preponderance of the evidence that Konnektive Defendants deceived the credit card brands and payment processors. *See supra* Part III.B.2. Plaintiff will be able to show on a classwide basis whether Konnektive Defendants participated in the conduct at issue; whether Konnektive Defendants' participation in the conduct was part of an enterprise and was performed through a pattern of racketeering activity; whether it caused injury to Plaintiff; or whether Konnektive Defendants knew about and agreed to facilitate the scheme. These questions focus on Konnektive Defendants' conduct and will predominate over individual inquiries. *See Just Film, Inc.*, 847 F.3d at 1122 ("These issues are appropriate for classwide litigation because they focus on Leasing Defendants' conduct. Whether Leasing Defendants were part of an enterprise operating an alleged scheme to defraud class members can be resolved on a classwide basis.").

### c.   Damages

Plaintiff contends that any individual issues of calculating damages do not predominate. ECF No. 378 at 31. Plaintiff proposes (1) a full refund model to remedy injuries incurred when victims were signed up for monthly subscriptions without their consent and were subsequently charged for products they did not order and (2) a price premium model to calculate damages based on the percentage of the retail price of La Pura products attributable to the misrepresentations contained on the landing pages. *Id.* at 31–32.

Konnektive Defendants argue that Plaintiff's "full refund" and "price premium" proposals do not provide a reliable mechanism for determining classwide damages, which defeats a finding that common questions predominate over individual inquiries. ECF No. 390 at 38. Specifically, they argue that a full refund model is often rejected because it

ignores the value of what consumers received, it does not consider consumers who consented to the subscriptions, and it does not align with Plaintiff's theory of liability. *Id.* at 37–38. Regarding the price premium model, they contend that Plaintiff has no common evidence that everyone saw the same alleged misrepresentations, she failed to do an expert analysis on the proposed calculations, and it does not align with Plaintiff's theory of liability. *Id.*

"[P]laintiffs must be able to show that their damages stemmed from the defendant's actions that created the legal liability." *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 514 (9th Cir. 2013) (citing *Comcast Corp. v. Behrend*, 569 U.S. 27, 38 (2013)). The potential for individual damage assessments cannot, by itself, defeat class certification under the predominance requirement. *See id.*

The Court finds Plaintiff's damage models do not defeat a finding that common questions predominate over individual inquiries. First, a full refund model appropriately aligns with Plaintiff's theory of liability that but for Defendants' misrepresentations and omissions, she would not have been enrolled in a subscription that she did not consent to, receive products she did not order, and be charged for them; every penny of the money she paid was due to the misrepresentations and omissions. *See Krueger v. Wyeth, Inc.*, 396 F. Supp. 3d 931, 953–54 (S.D. Cal. 2019) (noting that if the fact finder finds in favor of Plaintiff's legal theory, restitution in the form of a full refund would be an appropriate remedy under the law). Plaintiff's theory is that no consumer consented to being enrolled in the subscription, so this contention will not create individual questions. The price premium model also aligns with Plaintiff's theory of liability that but for Defendants' misrepresentations, consumers would have paid less than what they were charged for the products they ordered. Plaintiff's theory is that all consumers saw the same misrepresentations of celebrity endorsements, limited supply, products featured in major magazines, fake reviews, and fake before and after photos showing dramatic skin improvement. ECF No. 378 at 32. Whether these representations were false, material, and viewed by all class members will be resolved according to the objective reasonable

consumer test before damages are determined. The Court finds Plaintiff shows that damages can be determined without excessive difficulty and that each model stems from her theory of liability, which is sufficient at this stage to establish that common questions predominate. *Just Film, Inc.,* 847 F.3d at 1121 ("At this [class certification] stage, Plaintiffs need only show that such damages can be determined without excessive difficulty and attributed to their theory of liability . . . .").

### 2. Superiority

The second requirement of Rule 23(b)(3) is a finding that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). In determining superiority, courts should consider "the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3)(D). "Where classwide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation*." Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996).

Plaintiff contends that absent a class action, most of the putative class members will not recover at all because each individual claim is too small to provide sufficient incentive for them to bring individual suits. ECF No. 378 at 33. Konnektive Defendants are silent on the issue of superiority.

The Court finds the superiority requirement has been satisfied. Each class member's injury is a small sum and the costs of litigation would far exceed an individual's recovery, so they would be unlikely to pursue individual lawsuits. *Clevenger v. Welch Foods Inc.*, 342 F.R.D. 446, 461 (C.D. Cal. 2022). In this situation, a class action may be the only way to resolve the dispute fairly and efficiently. Furthermore, Plaintiff alleges a single common fraudulent scheme, so it is more efficient and cost effective to pursue this matter as a class action rather than as many individual lawsuits with duplicate discovery. *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1176 (9th Cir. 2010).

/ / /

/ / /

**D.     Ascertainability and Manageability**

Konnektive Defendants argue the proposed class definitions that include anyone billed for La Pura products are overbroad because they include people who were not injured due to their prompt cancellation of their trial or a desire to continue receiving the products. ECF No. 390 at 24. They further argue that even if narrowed, the class would not be ascertainable by objective criteria. *Id.* at 24–25.

Plaintiff contends that ascertainability of class members is not a requirement in the Ninth Circuit and can be addressed with affidavits. ECF No. 317 at 7. She also notes that she expressly requests that any consumers who "received a full refund for the products" be excluded from the class. *Id.*

The Court agrees with Konnektive Defendants that the class definitions should be narrowed to exclude uninjured people by incorporating Plaintiff's request to exclude consumers who received a full refund. *See Ruiz Torres*, 835 F.3d at 1137 ("We conclude that such fortuitous non-injury to a subset of class members does not necessarily defeat certification of the entire class, particularly as the district court is well situated to winnow out those non-injured members at the damages phase of the litigation, or to refine the class definition."). However, Plaintiff is correct that ascertainability is not a requirement for class certification. *Briseno*, 844 F.3d at 1133 ("[T]he language of Rule 23 neither provides nor implies that demonstrating an administratively feasible way to identify class members is a prerequisite to class certification . . . ."). Accordingly, the Court does not find the class to be unmanageable and instead amends the definitions as set forth below in the conclusion.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Class Certification is **GRANTED**. The Court certifies the following classes:

(1) A nationwide class for the RICO claim consisting of all consumers in the United States who, within the applicable statute of limitations period until the date notice is disseminated, were billed for products sold, shipped, or caused to be sold or shipped by any of the Defendants under the La Pura, La'Pura,

La' Pura, or LaPura brand names, and who did not receive a full refund for the products.

(2) A California subclass for the state law causes of action consisting of all consumers in California who, within the applicable statute of limitations period until the date notice is disseminated, were billed for products sold, shipped, or caused to be sold or shipped by any of the Defendants under the La Pura, La'Pura, La' Pura, or LaPura brand names, and who did not receive a full refund for the products.

The following are excluded from the classes: governmental entities; Defendants; any entity in which Defendants have a controlling interest; Defendants' officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns; and any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

Additionally, the Court appoints LeAnne Tan as class representative. The Court appoints Kevin Kneupper and Cyclone Covey of Kneupper & Covey, PC as class counsel.

**IT IS SO ORDERED.**

Dated:  January 12, 2024

Honorable Linda Lopez
United States District Judge