1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEANNE TAN, Individually and On Behalf of All Others Similarly Situated,<br><br>                                   Plaintiff,<br><br>v.<br><br>QUICK BOX, LLC, et al.,<br><br>                                   Defendants<br>_____<br><br>AND RELATED CROSSCLAIMS AND THIRD-PARTY CLAIMS.<br>_____ | Case No.:  20cv1082-LL-DDL<br><br>**ORDER DENYING DEFENDANT KATHRYN MARTORANO'S MOTION FOR SUMMARY JUDGMENT**<br><br>**[ECF No. 338]** |

        Before the Court is Defendant Kathryn Martorano's ("Defendant" or "Kathryn") Motion for Summary Judgment, or in the Alternative, Partial Summary Judgment. ECF Nos. 338, 389 (sealed).[1] Defendant's Motion for Summary Judgment has been fully

_____

[1] ECF No. 338 is the redacted Motion for Summary Judgment. ECF No. 338-8 is the redacted Exhibit E to the Declaration of Christopher B. Queally. ECF No. 338-11 is the redacted Exhibit A to the Declaration of Matthew Martorano. ECF No. 389 is the sealed Motion for Summary Judgment. ECF No. 389-3 is the sealed Exhibit E to the Declaration of Christopher B. Queally. ECF No. 338-2 is the sealed Exhibit A to the Declaration of

1

briefed, and the Court deems it suitable for submission without oral argument. For the reasons stated below, the Court **DENIES** Defendant's Motion for Summary Judgment in its entirety.

## I.   BACKGROUND

### A.   Factual Disputes

The Court has taken the relevant facts from the parties' declarations, exhibits, and respective Rule 56.1 statements of facts. ECF No. 389-1 (sealed)[2], Defendant's Separate Statement of Undisputed Material Facts ("DSSUF"); ECF No. 407-4 (sealed)[3], Plaintiff's Response to Defendant's Separate Statement of Undisputed Material Facts ("PRSSUF"). Based on the parties' statements of facts, the Court references Plaintiff Leanne Tan's ("Plaintiff") version of the facts when noting a genuine factual dispute. *See Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (where genuine disputes exist, the courts "view the evidence in the light most favorable to the opposing party."). The Court also notes where facts are disputed by the non-moving party.

### B.   Factual Background

In 2017, Matthew Martorano founded Konnektive LLC, a software technology company, in Puerto Rico. DSSUF ¶ 1. Konnektive LLC is headquartered in Puerto Rico, where most of its nine employees work, and has additional offices in Roswell, Georgia. *Id.* ¶ 2; ECF No. 338-10, Declaration of Matthew Martorano in Support of Motion for Summary Judgment ("M. Martorano Decl.") ¶ 4. The Konnektive LLC organization chart

---

Matthew Martorano. ECF Nos. 340, 340-2, and 340-3 are notices of the lodgment of the Motion for Summary Judgment and exhibits.

[2] ECF No. 338-2 is the redacted Separate Statement. ECF No. 389-1 is the sealed Separate Statement. ECF No. 340-1 is the notice of the lodgment of the Separate Statement.

[3] ECF No. 367-4 is the redacted Response to Defendant's Separate Statement. ECF No. 407-4 is the sealed Response to Defendant's Separate Statement. ECF No. 370-5 is the notice of the lodgment of the Response to Defendant's Separate Statement.

shows that Matthew Martorano is the CEO, and Kathryn Martorano, Matthew Martorano's wife, is the COO. ECF No. 367-3, Ex. 11; DSSUF ¶¶ 13, 15.

Konnektive LLC's primary product is its customer relationship management (CRM) platform which allows users, such as online retail merchants, to manage, track, and organize customer data, including customer names, contact information, communications, sales, and marketing. DSSUF ¶ 3. Most of the merchants who purchase a license to use the Konnektive CRM are retailers who sell their products via the Internet. *Id.* ¶ 4. To accept credit card payments for sales, online merchants need a merchant identification number ("MID") so that funds can be transferred via a credit card network (e.g., MasterCard or Visa) from the customer's account to the merchant's account. *Id.* ¶ 6. MIDs are issued by a bank or payment processor. *Id.* Konnektive LLC is not involved in issuing MIDs or processing transactions, but Konnektive LLC is registered as a service provider to multiple banks. *Id.* ¶¶ 7, 36.

Konnektive LLC is a ███████████████████████████████████████████████████████. *Id.* ¶ 37; M. Martorano Decl. ¶ 12; PRSSUF ¶ 37. According to Defendant, ████████████████████████████████████████████████████████. DSSUF ¶ 38; M. Martorano Decl. ¶ 12. Plaintiff contends that Konnektive LLC only became a ████████████████████████████████. PRSSUF ¶ 38.

Some of the technology that Konnektive LLC offers was developed by another entity, Converging Resources Corporation (CRC) (formerly Konnektive Corporation), which is based in Roswell, Georgia.[4] DSSUF ¶ 10. After the CRM platform was developed and its rights were assigned to Konnektive LLC, Kathryn Martorano became the sole owner and sole shareholder of CRC. *Id.* ¶ 11. The CRC organization chart shows that Kathryn

---

[4] Kathryn Martorano and Matthew Martorano live in Puerto Rico and typically work remotely, but Kathryn periodically travels to the CRC office in Georgia. DSSUF ¶ 15.

Martorano is the CEO and supervises various employees. ECF No. 367-3, Ex. 10. Defendant states that Konnektive LLC and CRC were companies with separate identities, separate books, and separate employees, but Plaintiff disputes this. DSSUF ¶ 39; PRSSUF ¶ 39. Defendant further states that CRC has sufficient assets to meet its debts, including employee payroll, taxes, overhead, and other debts, but Plaintiff also disputes this. DSSUF ¶ 40; PRSSUF ¶ 40.

The parties disagree on the scope of Kathryn Martorano's duties and responsibilities as CEO of CRC and COO of Konnektive LLC. First, Defendant states that although she holds the title of COO of Konnektive LLC, she is not an owner of Konnektive LLC and never has been. DSSUF ¶ 14. Defendant's duties are limited to handling administrative HR functions, such as onboarding employees, exit interviews, payroll, benefits, and diversity training. *Id.* ¶ 18. Defendant also assists the CFO in managing the books and furnishing information annually to outside auditors. *Id.* ¶ 19. Defendant's use of the Konnektive CRM is limited to running reports for purposes of accounts receivable for the billing and collecting licensing fees from merchants. *Id.* ¶¶ 20–21. Defendant states she was not involved in the design, development, coding, updates, or maintenance of the Konnektive CRM software and does not supervise anyone who does. *Id.* ¶¶ 16–17, 25, 34.

Next, Defendant states she does not handle management of Konnektive licensee accounts and does not perform any type of marketing, sales, onboarding, or management of merchants who use Konnektive software. *Id.* ¶¶ 21–22, 24, 26, 31. Specifically, Defendant states she was unaware of RMG's status as a licensee prior to the action being filed and that she had never met or communicated with any of the RMG representatives or La Pura entities. *Id.* ¶¶ 23–24. Defendant was also unaware of RMG's business practices, what products RMG was selling, how RMG's products were manufactured and labeled, how RMG's products were marketed, and to whom the products were being sold to. *Id.* ¶¶ 27, 30, 35. In particular, Defendant states she had never met Plaintiff Leanne Tan and had no knowledge of the details of Plaintiff's purchase of a La Pura product, including how payment was accepted. *Id.* ¶¶ 29, 30. In addition, Defendant states that she had no

knowledge of what financial institutions RMG applied to for MIDs, what representations were made to secure the MIDs, which MID was used by RMG or a La Pura entity at any given time, or how RMG used its MIDs. *Id.* ¶ 28. Lastly, according to Defendant, Defendant does not use CRC or Konnektive LLC to pay her personal debts, and she received a salary from Konnektive LLC and dividends from CRC when they were declared. *Id.* ¶ 41.

Plaintiff disputes Kathryn Martorano's statements that she had limited knowledge and a limited role at Konnektive LLC and CRC. *Id.* ¶¶ 18, 20–24, 26–31, 40–41. Plaintiff further disputes the credibility of Kathryn Martorano's testimony, alleging that it contradicts with her declaration. *Id.* ¶¶ 18, 20–24, 26–31, 40–41.

Plaintiff argues that Kathryn Martorano had knowledge of the products and controlled and directed key employees as the CEO of CRC and COO of Konnektive LLC. *Id.* ¶¶ 18, 27. ███████████████████████████████████ ECF No. 407-2 at 1–39 (sealed)[5], Deposition of Jeremy Sistrunk Volume I ("Sistrunk Depo. Vol. I") 91:10-25; PRSSUF ¶ 18. ██████████████████████████████ ███████████████████████████████████████████ ██████████████████ Sistrunk Depo. Vol. I 92:16-25; PRSSUF ¶ 18. Additionally, Aaron Turgeman, a former Konnektive LLC developer, testified that Kathryn Martorano sometimes attended company meetings with the software development team where they discussed progress on the software's features, load balancing, and MID management. ECF No. 367-2, Ex. 6, Deposition of Aaron Turgeman ("Turgeman Depo.") 43:16-44:14, 69:15-22; PRSSUF ¶ 18. Further, the former Konnektive LLC employees testified that it was common knowledge to the employees that that the load balancing feature was unethical,

---

[5] ECF No. 367-2 at page 175 is the redacted Deposition of Jeremy Sistrunk Volume I. ECF No. 407-2 at pages 1 through 39 is the sealed Deposition of Jeremy Sistrunk Volume I. ECF No. 370-3 is the notice of lodgment of the deposition.

illegal, or fraudulent and that it "enable[d] people to trick people out of money." *See* ECF No. 367-2, Ex. 7, Deposition of Justin Reviea ("Reviea Depo.") 64:5-65:20, 67:25-68:15, 104:4-105:5, 161:17-162:18; *see also* Sistrunk Depo. Vol. I 83:14-84:25 91:10-25; ECF No. 407-2 at 40-64 (sealed)[6], Deposition of Jeremy Sistrunk Volume II ("Sistrunk Depo. Vol. II") 72:4-10, 85:10-86:10, 115:9-116:24; PRSSUF ¶ 30.

### C.    Procedural Background

On January 7, 2021, Plaintiff filed a First Amended Complaint ("FAC"). ECF No. 89. In the FAC, Plaintiff alleges the following causes of action: (1) violation of California's Consumer Legal Remedies Act ("CLRA"), (2) violation of California's False Advertising Law ("FAL"), (3) violation of the unfair and fraudulent prongs of California's Unfair Competition Law ("UCL"), (4) violation of the unlawful prong of California's UCL, and (5) civil Racketeer Influenced and Corrupt Organizations ("RICO") Act violations. *Id.* ¶¶ 363–897; *see also* ECF No. 130 at 45 (granting dismissal of Plaintiff's non-California state consumer protection law claims in the FAC).

On August 30, 2023, Defendant filed a Motion for Summary Judgment. ECF Nos. 338, 389 (sealed). On December 8, 2023, Plaintiff filed her opposition ("Opposition" or "Oppo."). ECF Nos. 367, 407 (sealed).[7] On December 15, 2023, Defendant filed her Reply ("Reply") in support of her Motion for Summary Judgment and objected to Plaintiff's evidence. ECF Nos. 373, 374. On December 26, 2023, Plaintiff filed an opposition to Defendant's evidentiary objections. ECF No. 381.

/ / /

/ / /

---

[6] ECF No. 367-2 at page 176 is the redacted Deposition of Jeremy Sistrunk Volume II. ECF No. 407-2 at pages 40 through 64 is the sealed Deposition of Jeremy Sistrunk Volume I. ECF No. 370-3 is the notice of lodgment of the deposition.

[7] ECF No. 367 is the redacted Opposition. ECF No. 407 is the sealed Opposition. ECF No. 370 is the notice of lodgment of the Opposition.

## II.   EVIDENTIARY OBJECTIONS

As a preliminary matter, Defendant raises various evidentiary objections to the evidence in support of Plaintiff's Opposition. ECF No. 374. Specifically, Defendant targets statements in the depositions of Defendant Kathryn Martorano, Matthew Martorano, Jeremy Sistrunk, Aaron Turgeman, and Justin Reviea. *See id.* Defendant objects to portions of these declarations on various evidentiary grounds, including relevance, hearsay, speculative lay testimony, and improper legal conclusions. *See id.*

Before ordering summary judgment, a district court "must also rule on evidentiary objections that are material to its ruling." *Norse v. City of Santa Cruz*, 629 F.3d 966, 973 (9th Cir. 2010). "To begin, objections for relevance are generally unnecessary on summary judgment because they are 'duplicative of the summary judgment standard itself.'" *Sandoval v. Cnty. of San Diego*, 985 F.3d 657, 665 (9th Cir. 2021) (quoting *Burch v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006)). "[I]f evidence submitted on summary judgment could create a genuine dispute of material fact, it is, by definition, 'of consequence in determining the action,' and therefore relevant." *Id.* (quoting *Burch*, 433 F. Supp. 2d at 1119). "Conversely, if the submitted evidence does not create a genuine dispute of material fact, there is no need for the court to separately determine whether it is relevant because, even assuming it is not, it will not affect the ultimate summary judgment ruling." *Id.*

"[O]bjections to evidence on the ground that it is irrelevant, speculative, and/or argumentative, or that it constitutes an improper legal conclusion are all duplicative of the summary judgment standard itself." *Burch*, 433 F. Supp. 2d at 1119. "Moreover, Federal Rule of Evidence 403 objections are unnecessary at the summary judgment stage because there is no jury that can be misled and no danger of confusing the issues." *See Holt v. Noble House Hotels & Resort, Ltd.*, 370 F. Supp. 3d 1158, 1164 (S.D. Cal. 2019). "Accordingly, the Court does not consider any objections on the grounds that the evidence is irrelevant, speculative, argumentative, prejudicial, that it constitutes hearsay or inadmissible lay

opinion, or that there is a lack [of] personal knowledge." *Id.* (citing *Burch*, 433 F. Supp. 2d at 1122).

Here, Defendant's objections on the grounds that Plaintiff's evidence is irrelevant, constitutes an improper legal conclusion, or constitutes as hearsay are redundant of the summary judgment standard and lack a sufficient legal basis. *See Holt*, 370 F. Supp. 3d at 1164; *Sandoval*, 985 F.3d at 665. Therefore, the Court overrules these evidentiary objections.

The remaining evidentiary objections are the Defendant's speculative lay testimony objections. ████████████████████████████████████████████ ████████████████████████████████ *See* ECF No. 374 at 107–99. Defendant provides no reasoning beyond her boilerplate objections as to why these portions of the depositions would qualify as improper evidence.

An objection alleging that the proffered evidence is improper lay opinion testimony, which goes to the content of the evidence, may be appropriate on summary judgment. *See United States v. Durham*, 464 F.3d 976, 982 (9th Cir. 2006). Yet, lay opinion testimony is permissible provided it is "(a) rationally based on the perception of the witness, (b) helpful to a clear understanding of [the witness's] testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." *Id.* (quoting Fed. R. Evid. 701). "[T]he line between lay and expert opinion depends on the basis of the opinion, not its subject matter." *United States v. Barragan*, 871 F.3d 689, 704 (9th Cir. 2017). "Opinion testimony of lay witnesses must be predicated upon concrete facts within their own observation and recollection-that is facts perceived from their own senses, as distinguished from their opinions or conclusions drawn from such facts." *Durham*, 464 F.3d at 982 (quoting *United States v. Skeet*, 665 F.2d 983, 985 (9th Cir. 1982)) (internal quotation marks omitted); *see United States v. Losch*, 603 F. Supp. 3d 795, 799 (D. Ariz. 2022) (finding that an engineer witness "may testify as a lay witness about a specialized or technical subject where the testimony is based on the witness's personal knowledge").

█████   ████████████   ████   ███   █████   ███   ████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

█████ *See* Sistrunk Depo Vol. I at 19:11-23; Turgeman Depo. at 9:20-10:16;

Reviea Depo. at 15:3-6. ████████████████████████████████████████

████████████████████ *See* Sistrunk Depo. Vol. I 68:1-

19; Turgeman Depo. at 22:5-27:18; Reviea Depo. at 42:2-23, 44:14-48:17. ██████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████ *See Losch*, 603 F. Supp. 3d at 799; Fed. R. Evid. 701. Accordingly, the Court overrules Defendant's speculative lay testimony objections as to the depositions of the former Konnektive LLC employees.

## II.   LEGAL STANDARD

Summary judgment is appropriate if, viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmoving party, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 321 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law," and a dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable trier of fact to decide in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Cline v. Indus. Maint. Eng'g & Contracting Co.*, 200 F.3d 1223, 1229 (9th Cir. 2000). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 248 (citations omitted).

The moving party bears the initial burden of identifying the portions of the pleadings and record that it believes demonstrate the absence of an issue of material fact. *See Celotex*, 477 U.S. at 323. The burden then shifts to the non-movant to show "there is a genuine issue of material fact." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585

9

(1986). The non-movant must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, [and] designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (internal quotation marks omitted). In carrying their burdens, the parties can either cite to evidence supporting their own position or show the other side's position is either unsupportable or devoid of any genuine dispute. Fed. R. Civ. P. 56(c)(1). In addition, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] he is ruling on a motion for summary judgment." *Anderson*, 477 U.S. at 255.

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248; *see also T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) ("Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.")).

## III.   DISCUSSION

Defendant moves for summary judgment on each cause of action remaining in Plaintiff's FAC. *See* ECF No. 389 (sealed), Motion for Summary Judgment ("Motion" or "Mot."). The Court addresses each of Defendant's challenges to Plaintiff's claims in turn.

### A.   Aiding and Abetting

First, Defendant argues that she is entitled to summary judgment on the CLRA, FAL, and UCL claims because there is no evidence that Defendant aided and abetted RMG and the La Pura entities. *See id.* at 15–18; Reply at 5–6, 10–11.

A claim for aiding and abetting a tort requires that the defendants "(a) [knew] the other's conduct constitute[d] a breach of duty and [gave] substantial assistance or encouragement to the other to so act or (b) [gave] substantial assistance to the other in accomplishing a tortious result and the person's own conduct, separately considered, constitute[d] a breach of duty to the third person." *Bradshaw v. SLM Corp.*, 652 F. App'x 593, 594 (9th Cir. 2016) (quoting *Casey v. U.S. Bank Nat. Assn.*, 26 Cal. Rptr. 3d 401, 405

1   (Ct. App. 2005)) (alterations in original); *Decarlo v. Costco Wholesale Corp.*, 2020 WL
2   1332539, at *5 (S.D. Cal. Mar. 23, 2020) ("Liability may be imposed on those who aid and
3   abet another's violation of the UCL if the individual knows the other's conduct constitutes
4   a violation and gives substantial assistance or encouragement to the other to so act.").

### 1.   Knowledge or Substantial Participation in the Breach[8]

Under California law, aiding and abetting liability requires the defendant have "actual knowledge of the specific primary wrong the defendant substantially assisted." *See In re First All. Mortg. Co.*, 471 F.3d 977, 993 (9th Cir. 2006) (quoting *Casey*, 26 Cal. Rptr. 3d at 406). The actual knowledge standard requires more than "a vague suspicion of wrongdoing," and a defendant must have known more than that "something fishy was going on." *Id.* at 993 n.4 (quoting *Casey*, 26 Cal. Rptr. 3d 409) (emphasis omitted). However, "[a] plaintiff may prove actual knowledge through inference or circumstantial evidence." *Simi Mgmt. Corp. v. Bank of Am., N.A.*, 930 F. Supp. 2d 1082, 1099 (N.D. Cal. 2013). Courts have found that a defendant's "decision to ignore suspicious activity or red flags is sufficient to demonstrate actual knowledge." *In re Woodbridge Invs. Litig.*, 2020 WL 4529739, at *6 (C.D. Cal. Aug. 5, 2020); *see In re First All. Mortg. Co.*, 471 F.3d at 999 (noting that coming "upon red flags which were seemingly ignored was enough to establish actual knowledge under the California aiding and abetting standard"). Courts have also found that allegations concerning a defendant's knowledge and familiarity with the structure and operation of an alleged fraudulent scheme are relevant to the actual knowledge inquiry. *See Gonzales v. Lloyds TSB Bank, PLC*, 532 F. Supp. 2d 1200, 1208 (C.D. Cal. 2006) ("In further support of their allegation that Defendant had knowledge of

---

[8] Plaintiff asserts Defendant's liability under both theories of aiding and abetting in the FAC, but the parties present the same arguments and evidence in this Motion for the "substantial participation" prong of aiding and abetting liability and the "actual knowledge" prong of aiding and abetting liability.

the Ponzi scheme, Plaintiffs allege that Defendant knew the hallmark characteristics of a Ponzi scheme, and identified these characteristics in the Midland Entities' accounts.").

The substantial assistance standard "requires that the defendant's actions be a 'substantial factor' in causing the plaintiff's injury." *Facebook, Inc. v. MaxBounty, Inc.*, 274 F.R.D. 279, 285 (N.D. Cal. 2011) (quoting *Impac Warehouse Lending Grp. v. Credit Suisse First Boston LLC*, 270 Fed. Appx. 570, 572 (9th Cir. 2008)). Ordinary business transactions "can satisfy the substantial assistance element of an aiding and abetting claim if the [defendant] actually knew those transactions were assisting the [principal] in committing a specific tort. Knowledge is the crucial element." *In re First All. Mortg. Co.*, 471 F.3d at 995 (quoting *Casey*, 26 Cal. Rptr. 3d at 406).

Defendant states that Plaintiff's allegations are false and contends that there is no evidence that Defendant knew of the La Pura entities' alleged fraudulent scheme or that Defendant assisted RMG or the La Pura entities in any way. *See* Mot. at 17–18. To support this argument, Defendant cites to her own declaration in stating that she had never met or communicated with any of the RMG or La Pura representatives. *See id.* at 17; ECF No. 338-9, Declaration of Kathryn Martorano in Support of Motion for Summary Judgment ("K. Martorano Decl.") ¶ 10; DSSUF ¶ 23. Defendant states that she did not sign up any of the La Pura entities as licensees and that she was unaware of what products RMG sold and to whom they were being sold. *See* Mot. at 17–18; K. Martorano Decl. ¶¶ 11–12; DSSUF ¶¶ 24, 27, 28, 30. Defendant asserts she had no knowledge of what financial institutions RMG applied to for MIDs, what representations were made to secure the MIDs, which MID was used by RMG or a La Pura entity at any given time, or how RMG used its MIDs. *See* Mot. at 18; DSSUF ¶ 28. Defendant also states that she did not design, develop, or code any of the Konnektive CRM software. *See* Mot. at 17; K. Martorano Decl. ¶ 14; DSSUF ¶ 25. Moreover, Defendant states she never met Plaintiff Leanne Tan and had no knowledge of the details of Plaintiff's purchase of a La Pura product, including how payment was accepted. *See* Mot. at 18; K. Martorano Decl. ¶ 15; DSSUF ¶¶ 29, 30.

Further, Defendant relies heavily on *Twitter, Inc. v. Taamneh*, for the proposition that an attenuated nexus between a tortious act and a defendant's general knowledge that its users will misuse its software service is insufficient to impose aiding and abetting liability. *See Twitter, Inc. v. Taamneh*, 598 U.S. 471, 505–06 (2023); Mot. at 16. However, *Taamneh* is distinguishable on the facts. In *Taamneh*, the defendants provided generally available virtual platforms, such as Twitter, and the defendants failed to stop ISIS despite knowing that ISIS was using these platforms to plan terrorist attacks. *Id.* at 505–06. The Supreme Court found that there was an "arm's length" relationship between the defendants and the wrongful terrorist act because "defendants' platforms [were] global in scale and allow[ed] hundreds of millions (or billions) of people to upload vast quantities of information on a daily basis." *Id.* at 500.

Although the scale of the Konnektive software and its users is disputed, the evidence indicates the Konnektive platform is not similar to the defendants' platforms in *Taamneh*, which included hundreds of millions (or billions) of people. *See* DSSUF ¶ 12; *Taamneh*, 598 U.S. at 500. Further, the defendants in *Taamneh* were portrayed as bystanders because "plaintiffs point to no act of encouraging, soliciting, or advising the commission of the Reina attack that would normally support an aiding-and-abetting claim." *Taamneh*, 598 U.S. at 500. In contrast, here, Plaintiff has presented evidence that Defendant's relationship to the tortious act was not "arm's length, passive, and largely indifferent." *Id.*

The instant case also has a different context from *Taamneh*. Although *Taamneh* outlines general aiding and abetting liability principles, *Taamneh* held plaintiffs failed to plausibly allege aiding and abetting liability under a motion to dismiss, not a motion for summary judgment. *Id.* at 482. This Court previously denied the Konnektive Defendants' motion to dismiss, stating that the FAC's allegations were sufficient to state a claim against the Konnektive Defendants for violations of the CLRA, FAL, and UCL under an aiding and abetting theory of liability. *See* ECF No. 130 at 28–31.

In opposition to Defendant's Motion, Plaintiff argues that a jury could infer from the circumstantial evidence that Defendant would have known about or authorized, approved,

or consented to the fraudulent conduct of CRC and Konnektive LLC as the CEO and COO. *See* Oppo. at 28. Plaintiff first offers evidence of the corporate organization charts, which were drafted by Defendant, that show that Defendant was the CEO of CRC and the COO of Konnektive LLC. *See* ECF No. 367-3, Exs. 10, 11; ECF No. 407-1, Ex. 1 (sealed)[9], Deposition of Kathryn Martorano ("K. Martorano Depo.") 92:24-93:10. Next, Plaintiff offers testimony from a former Konnektive LLC developer, Turgeman, that Defendant sometimes attended company meetings with the software development team where they discussed progress on the software's features, load balancing, and MID management. *See* Turgeman Depo. 43:16-44:14, 69:15-22. ███████████████████ ███████████████████████████████████████████ ██████████████████████████████ Sistrunk Depo. Vol. I 91:10-25, 92:16-25. Plaintiff also emphasizes testimonial evidence from former Konnektive LLC employees that it was common knowledge to the employees that the load balancing feature was unethical, illegal, or fraudulent and that it "enable[d] people to trick people out of money." *See* Reviea Depo. 64:5-65:20, 67:25-68:15, 104:4-105:5, 161:17-162:18; *see also* Sistrunk Depo. Vol. I 83:14-84:25 91:10-25; Sistrunk Depo. Vol. II, 72:4-10, 85:10-86:10, 115:9-116:24.

Further, Plaintiff disputes Defendant's credibility and states that there are inconsistencies and contradictions between Defendant's testimony and declaration. *See* Oppo. at 28; PRSSUF ¶ 18. On summary judgment, the conflicting inferences from this evidence must be resolved in Plaintiff's favor as the non-moving party, and any credibility determinations must be reserved for the jury. *See Anderson*, 477 U.S. at 255; *LaLonde v. Cnty. of Riverside*, 204 F.3d 947, 959 (9th Cir. 2000) ("If conflicting inferences may be drawn from the facts, the case must go to the jury.").

---

[9] ECF No. 367-2 at pages 1 through 139 is the redacted Deposition of Kathryn Martorano. ECF No. 407-1 at pages 1 through 139 is the sealed Deposition of Kathryn Martorano. ECF No. 370-2 is the notice of lodgment of the deposition.

The evidence presented by Plaintiff regarding Defendant's knowledge and familiarity with the structure and operation of Konnektive LLC, CRC, and the Konnektive software leads to the inference that Defendant had actual knowledge of the fraudulent scheme or substantially assisted in the fraudulent scheme. *See Gonzales*, 532 F. Supp. 2d at 1208; *In re First All. Mort. Co.*, 471 F.3d at 995. Moreover, Defendant has failed to show that there are no disputes of material fact regarding Defendant's knowledge of or substantial assistance in the fraudulent scheme. As laid out in the Factual Background section above, Plaintiff and Defendant dispute almost every fact that could possibly be material to Plaintiff's CLRA, FAL, and UCL claims.

Accordingly, the Court denies Defendant's Motion for Summary Judgment as to Plaintiff's claims that Defendant aided and abetted RMG and the La Pura entities in violating the CLRA, FAL, and UCL.

## B.    RICO Claims

Defendant argues that Plaintiff's RICO conspiracy claim fails because there is no evidence that Defendant agreed to participate in a conspiracy to violate RICO. *See* Mot. at 19–23; Reply at 6–10.

To establish a RICO conspiracy under 18 U.S.C. § 1962(d), a plaintiff "must allege either an agreement that is a substantive violation of RICO or that the defendants agreed to commit, or participated in, a violation of two predicate offenses." *Howard v. Am. Online Inc.*, 208 F.3d 741, 751 (9th Cir. 2000) (citing *Baumer v. Pachl*, 8 F.3d 1341, 1346 (9th Cir. 1993)). "A [defendant] must intend to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense, but it suffices that he adopt the goal of furthering or facilitating the criminal endeavor." *Salinas v. United States*, 522 U.S. 52, 65 (1997). A defendant must have been "aware of the essential nature and scope of the enterprise and intended to participate in it." *Baumer*, 8 F.3d at 1346.

"The illegal agreement need not be express as long as its existence can be inferred from the words, actions, or interdependence of activities and persons involved." *Oki Semiconductor Co. v. Wells Fargo Bank, Nat'l Ass'n*, 298 F.3d 768, 775 (9th Cir. 2002).

"Unlike common law conspiracy, which requires that a participant specifically intend the object of the conspiracy be accomplished, RICO conspiracy requires only 'that two or more people agreed to commit a[t least two] crime[s] covered by the [RICO] . . . statute (that a conspiracy existed) and that the defendant knowingly and willfully participated in the agreement (that he was a member of the conspiracy).'" *United States v. Wallis*, 630 Fed. App'x 664, 668 (9th Cir. 2015) (citing *Smith v. United States*, 568 U.S. 106, 110 (2003)) (alterations in original).

Here, Defendant argues that she cannot be said to have known the business operation of every licensee, understood every function of the Konnektive software, or "agreed" to personally participate in each and every scheme simply by virtue of her positions at CRC and Konnektive LLC and her marriage to Matthew Martorano. *See* Mot. at 20, 23. In particular, Defendant contends that ███████████████████████████████ ██████████████████████████████████████████████████████████████████████ ████████████████████████████████████ *Id.* at 22.

In opposition, Plaintiff contends that there is strong circumstantial evidence that Defendant knew about the essential nature of the scheme and intended to participate in it. *See* Oppo. at 26–27. First, Plaintiff cites to testimony from former Konnektive developers and programmers that state it was common knowledge to the employees that the load balancer, a major feature of the Konnektive software, was unethical, illegal, or fraudulent and that it "enable[d] people to trick people out of money." *See* Reviea Depo. 64:5-65:20, 67:25-68:15, 104:4-105:5, 161:17-162:18; *see also* Sistrunk Depo. Vol. I 83:14-84:25 91:10-25; Sistrunk Depo. Vol. II, 72:4-10, 85:10-86:10, 115:9-116:24. Second, Plaintiff points out that Defendant must have known the load balancer was illegal because the Konnektive software included a pop-up when it was used "such that if [Defendant] ever attempted to use her own company's software she would have seen the warning about load balancing" that stated: "Load balancing activity is prohibited by the card schemes and banks and will lead to termination of your merchant facilities if discovered." ECF No. 367-3 at 15–16, Ex. 13; Oppo. at 26. Indeed, Defendant has still not set forth evidence or an

explanation for how a load balancing software could be used for a lawful, non-fraudulent purpose. In addition, Plaintiff argues that Turgeman's deposition testimony reveals that Defendant sometimes attended company meetings with the software development team where they discussed progress on the software's features, load balancing, and MID management. *See* Turgeman Depo. at 43:16-44:14, 69:15-22. According to Plaintiff, a jury could infer that Defendant knew the load balancer was illegal given Defendant's role at Konnektive LLC, the load balancer pop-up, and Defendant's attendance at these meetings. *See* Oppo. at 26–27.

In light of the evidence that Plaintiff has presented, there are several triable issues of fact relevant to Plaintiff's § 1962(d) claim against Defendant, including the extent of Defendant's awareness of the essential nature of the scheme and her intent (or agreement) to participate in it. As stated above, a RICO conspiracy claim does not require Defendant to have specifically or expressly intended the object of the conspiracy be accomplished. *Wallis*, 630 Fed. App'x at 668; *Oki Semiconductor Co.*, 298 F.3d at 775. Further, the Court agrees with Plaintiff that intent "is a question of the state of mind . . . a factual matter rarely free from dispute and thus rarely enabled in summary proceedings." *Tatung Co., Ltd. v. Shu Tze Hsu*, 217 F. Supp. 3d 1138, 1171 (C.D. Cal. 2016) (quoting *Ferring B.V. v. Barr Labs., Inc.*, 437 F.3d 1181, 1204 (Fed. Cir. 2006)). ████████████████ ██████████████████████████████████████████████ ███████████████████████████ *See Anderson*, 477 U.S. at 255. Accordingly, the Court denies Defendant's Motion for Summary Judgment as to Plaintiff's RICO conspiracy claim.

### C.    Personal Liability of Kathryn Martorano

Next, Defendant argues that she cannot be held personally liable for the alleged misconduct of the Konnektive entities by virtue of her positions at CRC and Konnektive LLC. *See* Mot. at 23–26.

"Corporate director or officer status neither immunizes a person from personal liability for tortious conduct nor subjects him or her to vicarious liability for such acts . . .

17

Directors or officers of a corporation do not incur personal liability for torts of the corporation merely by reason of their official position, unless they participate in the wrong or authorize or direct that it be done." *Balsam v. Trancos, Inc.*, 138 Cal. Rptr. 3d 108, 128 (Ct. App. 2012) (internal citations and quotation marks omitted). However, "[t]acit consent is enough to prove a conspiracy against a director or officer of a corporation, so long as the director or officer concurred in the tortious scheme with knowledge of its unlawful purpose." *Schwartz v. Pillsbury Inc.*, 969 F.2d 840, 844 (9th Cir. 1992) (citation and internal quotation marks omitted); *PMC, Inc. v. Kadisha*, 93 Cal. Rptr. 2d 663, 671 (Ct. App. 2000) ("A corporate director or officer's participation in tortious conduct may be shown not solely by direct action but also by knowing consent to or approval of unlawful acts").

Here, Defendant argues that there is no evidence that Defendant authorized or directed unlawful activity of any entity. *See* Mot. at 25. Defendant asserts that she only handled administrative HR functions and accounts receivable at Konnektive LLC. *See id.*; DSSUF ¶ 18. Defendant contends she did not personally develop any software used or licensed by Konnektive and had no knowledge of the business practices or interests of RMG or the La Pura entities. *See* DSSUF ¶¶ 34, 35. Defendant further states that Konnektive is merely "a software technology company that provides a CRM platform to retail merchants . . . it's not a piece of malware." Mot. at 25. To support this argument, Defendant argues that Konnektive is registered as a service provider with multiple banks and that ███████████████████████████████████████. *Id.*; DSSUF ¶ 37; M. Martorano Decl. ¶ 12. According to Defendant, ██████████████████ ████████████████████████████████████████████████████████████ ███████████████████. DSSUF ¶ 38; M. Martorano Decl. ¶ 9.

Defendant relies on *Balsam v. Trancos, Inc.* for the proposition that personal liability cannot be imposed on a CEO and sole owner of a corporation when the CEO has minimal involvement with the division's operation, did not knowingly consent to or approve of any unlawful acts on the corporation's part, and did not participate in most of the corporation's

decisions. *See* Oppo. at 23–25; *Balsam*, 138 Cal. Rptr. 3d at 129. *Balsam* is distinguishable on the facts. In *Balsam*, there was no evidence that the CEO knew or should have known what he was doing was tortious or wrongful. *Id.* Further, in *Balsam*, the CEO committed a tort in reasonable reliance on expert advice. *Id.*

On the contrary, Plaintiff offers evidence demonstrating that Defendant was involved with Konnektive LLC and CRC's operations. Again, Plaintiff points to evidence that Defendant sometimes attended corporate meetings with Konnektive LLC employees where they discussed the software updates, the load balancer, and MID management. *See* Turgeman Depo. at 43:16-44:14, 69:15-22. Plaintiff also offers evidence that former Konnektive LLC employees testified that it was common knowledge to the employees that the load balancing feature was unethical, illegal, or fraudulent and that it "enable[d] people to trick people out of money." *See* Oppo. at 24; Reviea Depo. 64:5-65:20, 67:25-68:15, 104:4-105:5, 161:17-162:18; *see also* Sistrunk Depo. Vol. I 83:14-84:25 91:10-25; Sistrunk Depo. Vol. II 72:4-10, 85:10-86:10, 115:9-116:24. ██████████████

████████████████████████████████████████████████████████████

██████████████ Sistrunk Depo. Vol. I 91:10-25. Plaintiff argues that it is highly unlikely that Defendant, in her level of involvement as COO and CEO of Konnektive LLC and CRC, was the only person at the company who did not know that they were selling something illegal or fraudulent. *See* Oppo. at 24. █████████████████████

████████████████████████████████████████████████████████████

███████ ████████████████████████████████████████████████████

██████████. *Id.* at 25.

In light of the evidence that Plaintiff has presented, Defendant's argument is unavailing. Plaintiff has offered sufficient evidence to demonstrate there is a triable issue of material fact. Drawing all inferences in Plaintiff's favor, the Court finds a reasonable jury could find that Defendant participated in or consented to tortious conduct. Additionally, Defendant's personal liability does not depend on having developed the actual software or the actions or inaction of other corporations, such as the banks and

MasterCard. *See Schwartz*, 969 F.2d at 844. Accordingly, the Court denies Defendant's Motion for Summary Judgment on Plaintiff's personal liability claims.

### D.   Alter Ego Liability

Lastly, Defendant argues that she may not be held liable on an alter ego theory because Konnektive LLC and CRC are not the alter egos of Defendant. *See* Mot. at 26–28; Reply at 13–14.

"Ordinarily, a corporation is regarded as a legal entity, separate and distinct from its stockholders, officers and directors, with separate and distinct liabilities and obligations." *Sonora Diamond Corp. v. Superior Court*, 99 Cal. Rptr. 2d 824, 836 (Ct. App. 2000). "The alter ego doctrine arises when a plaintiff comes into court claiming that an opposing party is using the corporate form unjustly and in derogation of the plaintiff's interests." *Gerritsen v. Warner Bros. Ent. Inc.*, 116 F. Supp. 3d 1104, 1135–36 (C.D. Cal. 2015) (citing *Mesler v. Bragg Mgmt. Co.*, 702 P.2d 601, 606 (Cal. 1985)).

"Alter ego is an extreme remedy" and is "sparingly used." *Sonora Diamond Corp*., 99 Cal. Rptr. 2d at 836. Courts look to "all the circumstances to determine whether the doctrine should be applied." *Id.* California courts have stated that a "corporate identity may be disregarded—the 'corporate veil' pierced—where an abuse of the corporate privilege justifies holding the equitable ownership of a corporation liable for the actions of the corporation." *Id.* "The purpose behind the alter ego doctrine is to prevent defendants who are the alter egos of a sham corporation from escaping personal liability for its debts." *Hennessey's Tavern, Inc. v. Am. Air Filter Co.*, 251 Cal. Rptr. 859, 862 (Ct. App. 1988).

To apply the alter ego doctrine, courts must determine that "(1) such a unity of interest and ownership exists that the personalities of the corporation and individual are no longer separate, and (2) an inequitable result will follow if the acts are treated as those of the corporation alone." *Sandoval v. Ali*, 34 F. Supp. 3d 1031, 1040 (N.D. Cal. 2014) (citing *RRX Indus., Inc. v. Lab–Con, Inc.*, 772 F.2d 543, 545–46 (9th Cir. 1985)). To determine whether there is a sufficient unity of interest and ownership to support alter ego liability, courts consider factors like: "commingling of funds and other assets of the two entities, the

holding out by one entity that it is liable for the debts of the other, identical equitable ownership in the two entities, use of the same offices and employees, use of one as a mere conduit for the affairs of the other, disregard of corporate formalities, lack of segregation of corporate records, and identical directors and officers." *Virtualmagic Asia, Inc. v. Fil–Cartoons, Inc.*, 121 Cal. Rptr. 2d 1, 13 (Ct. App. 2002). To establish inequity in the absence of alter ego liability under the second prong, "a plaintiff must plead facts sufficient to demonstrate that 'conduct amounting to bad faith makes it inequitable for the corporate owner to hide behind the corporate form.'" *Stewart v. Screen Gems-EMI Music, Inc.*, 81 F. Supp. 3d 938, 963 (N.D. Cal. 2015) (quoting *Sonora Diamond Corp.*, 99 Cal. Rptr. 2d at 837).

Here, Defendant argues that Plaintiff's alter ego claim fails because the mere fact that Defendant is the sole shareholder of CRC cannot justify the application of the alter ego doctrine. *See* Mot. at 27. Defendant states that Konnektive LLC and CRC have separate identities, separate books, and separate employees. *See id.*; DSSUF ¶ 40. In addition, Defendant asserts that CRC has sufficient assets to meet its debts including employee payroll, taxes, overhead, and other debts. *See* Mot. at 27; DSSUF ¶ 40. Defendant does not use CRC or Konnektive LLC to pay her personal debts, and she received a salary from Konnektive LLC and dividends from CRC when they were declared. *See* Mot. at 27; DSSUF ¶ 41. Defendant also argues that no inequity would result if Defendant is not held personally liable for claims against Konnektive LLC and CRC. *See* Mot. at 28.

In opposition, Plaintiff states that a number of factors relevant to an alter ego claim are present. *See* Oppo. at 29–30. First, Plaintiff points out that Defendant's claims that corporate formalities were followed contradict Defendant's claims throughout the Motion that she had no knowledge or involvement in the business. *See id.* at 29–30. In support of this argument, Plaintiff cites to Defendant's declaration and testimony. *Id.* Plaintiff offers statements from Defendant's testimony in which she states she had no idea what corporate formalities were and did not initially recall submitting declarations in this case. *See* K. Martorano Depo. 43:1-44:16, 61:4-67:18. Defendant also testified that she did not know

what was supposed to happen during corporate annual meetings and that she did not recall whether CRC ever had meetings to elect the company's directors. *See id.* 37:4-17. It is especially notable that Defendant testified as to having "no idea how many directors the company had, did not know whether she herself was a director, and did not know anyone who was a director of her own solely-owned corporation." *See id.* 37:19-38:19. Additionally, Plaintiff points to Defendant's contradicting testimony that Matthew Martorano had no formal role in CRC but that he was simultaneously submitting documents on CRC's behalf to the state and had the ability to determine CRC employees' compensation. *See id.* 87:13-90:1; 96:16-97:2.

Next, Plaintiff points out that this Court has previously recognized a verified complaint from a lawsuit filed in 2018 in Georgia state court by the former Chief Technical Officer of Konnektive Corporation against CRC, Konnektive LLC, and Matthew Martorano by Jared Hall. *See* Oppo. at 30; ECF No. 130 at 13–14; FAC ¶ 341. The Georgia verified complaint alleged that there existed such a unity of interest and ownership between CRC, Konnektive LLC, and Matthew Martorano that the entities' separate personalities do not in reality exist and that an inequitable result would lie if the Court allowed them to escape liability through the use of their separate forms. *See* ECF No. 130 at 13–14; FAC ¶ 341. Although Defendant was not named in the Georgia complaint, Defendant is alleged in the FAC to have "ha[d] a role controlling operations for all of the Konnektive entities despite them being nominally separate, and operates them from Roswell, Georgia as a single entity along with her husband." FAC ¶ 341.

Here, the evidence offered by Plaintiff leads to the inference that there was a unity of interest and ownership such that the personalities of Konnektive LLC, CRC, and Defendant were no longer separate, and an inequitable result would follow if the acts were treated as those of the corporation alone. The evidence leads to an inference that Defendant "comingl[ed] funds and other assets and failure to segregate funds of the separate entities" and that there was "treatment by an individual of the assets of the corporation as [her] own," which are two of the factors considered in the alter ego test. *See Goodrich v. Briones*,

626 F.3d 1032, 1038 (9th Cir. 2010); *Virtualmagic Asia, Inc.*, 121 Cal. Rptr. 2d at 13. It is also undisputed that CRC and Konnektive LLC identical directors and officers, which is another factor considered in the alter ego test. *See* DSSUF ¶¶ 1, 11, 13, 15; ECF No. 367-3, Exs. 10, 11; *Virtualmagic Asia, Inc.*, 121 Cal. Rptr. 2d at 13. Therefore, although Defendant states that Konnektive LLC and CRC have separate identities, contrary inferences may be drawn from the other materials in the record and conflicting inferences must be resolved in Plaintiff's favor as the non-moving party. Further, it is for the jury to weigh the evidence and make credibility determinations.

In light of the evidence offered by Plaintiff, the Court finds there is a genuine dispute of material fact on this issue and summary judgment is not appropriate. Moreover, "[s]ummary judgment based on disregard of the corporate form is typically not appropriate, because '[w]hether a party is liable under an alter-ego theory is normally a question of fact.'" *See Century Sur. Co. v. Belmont Seattle, LLC*, 543 F. App'x 737, 738 (9th Cir. 2013) (quoting *Zoran Corp. v. Chen*, 110 Cal. Rptr. 3d 597, 606 (Ct. App. 2010)). Accordingly, the Court denies Defendant's Motion for Summary Judgment on Plaintiff's alter ego claims.

## V.   CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendant's Motion for Summary Judgment.

**IT IS SO ORDERED.**

Dated:  March 14, 2024

Honorable Linda Lopez
United States District Judge

20cv1082-LL-DDL