1  **KNEUPPER & COVEY, PC**
2  Kevin Kneupper, Esq. (CA SBN 325413)
   kevin@kneuppercovey.com
3  A. Cyclone Covey, Esq. (CA SBN 335957)
   cyclone@kneuppercovey.com
4  A. Lorraine Weekes, Esq. (CA SBN 332369)
5  lorraine@kneuppercovey.com
   17011 Beach Blvd., Suite 900
6  Huntington Beach, CA 92647
7  Tel: (512) 420-8407

8
9  *Attorneys for Plaintiff LeAnne Tan
   and the putative Class*

10

11              UNITED STATES DISTRICT COURT

12            SOUTHERN DISTRICT OF CALIFORNIA

13

14  LEANNE TAN, Individually and On        Case No.:  3:20-cv-1082-LL-DDL
    Behalf of All Others Similarly Situated,
15                                          **PLAINTIFF'S MEMORANDUM OF**
                              Plaintiffs,   **POINTS AND AUTHORITIES IN**
16                                          **SUPPORT OF MOTION FOR FINAL**
    v.                                      **APPROVAL OF CLASS ACTION**
17                                          **SETTLEMENT**
    QUICK BOX, LLC, et al,
18                                          
                              Defendants.
19                                          **Date:**     January 6, 2025
20                                          **Time:**     *
                                            **Ctrm:**     2B
21                                          **Judge:**    Hon. Linda Lopez
22
23                                          *PER CHAMBERS RULES, NO ORAL
                                            ARGUMENT UNLESS SEPARATELY
24                                          ORDERED BY THE COURT
25
26                                          Complaint Filed:  June 12, 2020

27

28

---

# TABLE OF CONTENTS

**Page(s)**

I.    INTRODUCTION ................................................................................................. 1

II.   RELEVANT FACTS ........................................................................................... 1

III.  SETTLEMENT ADMINISTRATION ................................................................ 2

    A.   Class Notice ............................................................................................... 3

    B.   No Objections or Requests for Exclusion To Date ................................... 3

IV.   THE CLASS SETTLEMENT SHOULD BE GIVEN FINAL APPROVAL ....... 4

    A.   The Strength of the Plaintiff's Case .......................................................... 5

    B.   The Risk, Expense, Complexity, and Likely Duration of Further Litigation ...... 6

    C.   The Risk of Maintaining Class Action Status Throughout the Trial ................ 6

    D.   The Amount Offered in Settlement ............................................................ 7

    E.   The Relief Provided to the Class Is Adequate .......................................... 8

    F.   The Class Representative and Class Counsel Have Adequately Represented the Class ...... 10

    G.   The Extent of Discovery Completed and the Stage of Proceedings ............... 10

    H.   The Proposal Was Negotiated At Arms' Length ..................................... 12

    I.   The Experience and Views of Counsel ................................................... 14

    J.   The Remaining Factors ........................................................................... 15

V.    CONCLUSION .................................................................................................. 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allen v. Bedolla*,
   787 F.3d 1218 (9th Cir. 2015) ...................................................................12

*Arellano v. Kellermeyer Bldg. Servs., LLC*,
   No. 13-cv-00533-BAS(BGS),
   2014 U.S. Dist. LEXIS 168986 (S.D. Cal. Dec. 5, 2014) ...........................10

*Banales v. Autoclaims Direct, Inc.*,
   No. 11cv2914-DHB,
   2012 U.S. Dist. LEXIS 201160 (S.D. Cal. Dec. 20, 2012) .........................10

*Barragan v. Populus Fin. Grp., Inc.*,
   No. 2:21-cv-08021-SB-MRW,
   2023 U.S. Dist. LEXIS 27605 (C.D. Cal. Feb. 10, 2023) ...........................13

*Bellinghausen v. Tractor Supply Co.*,
   306 F.R.D. 245 (N.D. Cal. 2015)..................................................................8

*Booth v. Strategic Realty Tr. Inc.*,
   No. 13-cv-04921-JST,
   2015 U.S. Dist. LEXIS 84143 (N.D. Cal. June 28, 2015)............................5

*Briseño v. Henderson*,
   998 F.3d 1014 (9th Cir. 2021) ......................................................................5

*Chan v. Brady*,
   No. 20-CV-06569-LHK,
   2021 U.S. Dist. LEXIS 153096  (N.D. Cal. Aug. 13, 2021) .........................6

*Churchill Vill. v. Gen. Elec.*,
   361 F.3d 566 (9th Cir. 2004).........................................................................3

*Cifuentes v. Ceva Logistics U.S., Inc.*,
   No. 3:16-cv-01957-H-DHB,
   2017 U.S. Dist. LEXIS 176279 (S.D. Cal. Oct. 23, 2017) ...........................4

*Class Plaintiffs v. Seattle*,
   955 F.2d 1268 (9th Cir. 1992) ......................................................................5

PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

*Couser v. Comenity Bank*,

    125 F. Supp. 3d 1034 (S.D. Cal. 2015)..................................................................6

*Dunleavy v. Nadler (In re Mego Fin. Corp. Sec. Litig.)*,

    213 F.3d 454 (9th Cir. 2000).........................................................................8, 10

*Espinosa v. Ahearn (In re Hyundai & Kia Fuel Econ. Litig.)*,

    926 F.3d 539 (9th Cir. 2019).............................................................................12

*Feist v. Petco Animal Supplies, Inc.*,

    No. 3:16-cv-01369-H-MSB,

    2018 U.S. Dist. LEXIS 197186 (S.D. Cal. Nov. 16, 2018)...........................13

*Grimm v. Am. Eagle Airlines, Inc.*,

    No. LA CV11-00406 JAK (MANx),

    2014 U.S. Dist. LEXIS 199608 (C.D. Cal. Sep. 24, 2014) .............................7

*Hudson v. Libre Tech. Inc.*,

    No. 3:18-cv-1371-GPC-KSC,

    2020 U.S. Dist. LEXIS 84576 (S.D. Cal. May 12, 2020)................................9

*In re Celera Corp. Sec. Litig.*,

    No. 5:10-cv-02604-EJD,

    2015 U.S. Dist. LEXIS 157408 (N.D. Cal. Nov. 20, 2015) ............................6

*In re Omnivision Techs.*,

    559 F. Supp. 2d 1036 (N.D. Cal. 2007) ..........................................................15

*Jeter-Polk v. Casual Male Store, LLC*,

    No. EDCV 14-891-VAP (DTBx),

    2016 U.S. Dist. LEXIS 204837 (C.D. Cal. June 29, 2016) .............................5

*Jones v. GN Netcom, Inc. (In re Bluetooth Headset Prods. Liab. Litig.)*,

    654 F.3d 935 (9th Cir. 2011)......................................................................12, 13

*Khoja v. Orexigen Therapeutics*,

    No. 15-cv-00540-JLS-AGS,

    2021 U.S. Dist. LEXIS 230105 (S.D. Cal. Nov. 30, 2021) ............................4

*Klee v. Nissan N. Am., Inc.*,
   No. CV 12-08238 AWT (PJWx),
   2015 U.S. Dist. LEXIS 88270 (C.D. Cal. July 7, 2015),............................................3, 15

*Lloyd v. Navy Fed. Credit Union*,
   No. 17-cv-1280-BAS-RBB,
   2019 U.S. Dist. LEXIS 89246 (S.D. Cal. May 28, 2019)............................................14

*Loomis v. Slendertone Distribution*,
   No. 19-cv-854-MMA (KSC),
   2021 U.S. Dist. LEXIS 44047 (S.D. Cal. Mar. 8, 2021) ................................................9

*Maree v. Deutsche Lufthansa AG*,
   No. 8:20-cv-00885-SVW-MRW,
   2023 U.S. Dist. LEXIS 25130 (C.D. Cal. Feb. 13, 2023) ............................................10

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004) ....................................................................4, 6, 7, 14

*Nguyen v. Radient Pharm. Corp.*,
   No. SACV 11-00406 DOC(MLGx),
   2014 U.S. Dist. LEXIS 63312 (C.D. Cal. May 6, 2014) ................................................8

*Preston v. Porch.Com, Inc.*,
   No. 21-CV-168 JLS (BLM),
   2022 U.S. Dist. LEXIS 75256 (S.D. Cal. Apr. 25, 2022)............................................16

*Rodriguez v. W. Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009).........................................................................................7

*Ross v. Trex Co.*,
   No. 09-cv-00670-JSW,
   2013 U.S. Dist. LEXIS 177718 (N.D. Cal. Dec. 16, 2013)............................................4

*Sengvong v. Probuild Co. LLC*,
   No. 3:19cv2231-MMA-JLB,
   2021 U.S. Dist. LEXIS 189993 (S.D. Cal. Oct. 1, 2021) ............................................10

PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

*Shahbazian v. Fast Auto Loans*,

   No. 2:18-cv-03076-ODW (KSx),

   2019 U.S. Dist. LEXIS 231416 (C.D. Cal. June 20, 2019) .............................. 5

*Sihler v. Fulfillment Lab., Inc.*,

   No. 20cv1528-LL-DDL,

   2023 U.S. Dist. LEXIS 116306 (S.D. Cal. June 23, 2023) ........................... 11

*Smith v. One Nev. Credit Union*,

   No. 2:16-cv-02156-GMN-NJK,

   2020 U.S. Dist. LEXIS 244534 (D. Nev. Dec. 30, 2020) ............................. 13

*Spann v. J.C. Penney Corp.*,

   211 F. Supp. 3d 1244 (C.D. Cal. 2016) ....................................................... 13

*Stott v. Capital Fin. Servs.*,

   277 F.R.D. 316 (N.D. Tex. 2011) .................................................................. 5

*Stovall-Gusman v. W.W. Granger, Inc.*, No. 13-cv-02540-HSG, 2015 U.S. Dist. LEXIS 78671 (N.D. Cal. June 17, 2015) ...................................................................... 8

**Rules**

Fed. R. Civ. Pro. 23 ............................................................................... 4, 8, 10, 12

**Other Authorities**

4 A Conte & H. Newberg, *Newberg on Class Actions*, § 11:50 at 155 (4th ed. 2002) ....... 6

Herbert B. Newberg, Newberg on Class Actions § 11.41 (4th ed. 2013) ................... 10

PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

3:20-cv-1082-LL-DDL

## I.    INTRODUCTION

Plaintiff and the Quick Box Defendants (Quick Box, LLC, Stephen Adelé, James Martell, and Chad Biggins) have agreed to a Class Settlement to resolve the putative Class's claims against those Defendants in exchange for $5.5 million, which has been granted preliminary approval. Plaintiff now seeks final approval for this settlement as well.

This settlement came after a lengthy litigation period of more than three years, an Early Neutral Evaluation (ENE), and two separate mediations. The settlement offers relief to the Class that amounts to almost the entirety of the actual damages. It does so in a simple, straightforward settlement which focuses on obtaining monetary relief for Class members. And the settlement makes clear that claims against the La Pura Defendants and the Konnektive Defendants are not being waived, such that not only is the Class guaranteed this substantial recovery against what they lost, but they will have the opportunity to recover even more should Plaintiff's counsel be successful in pursuing claims against those other Defendants. This settlement eliminates the risk that the Class would receive nothing after long, protracted litigation—and it simplifies any jury trial against the remaining non-settling parties. The reaction to the settlement has thus far been favorable—while the deadline has not passed for objections or exclusions, to date, no class members have objected or requested exclusion.

## II.    RELEVANT FACTS

This lawsuit was filed on June 12, 2020. Dkt. 1. Three separate groups of parties filed their own motions to dismiss. *See* dkts. 25, 29-34, 36-40. After an initial order on these motions by the Court, dkt. 88, Plaintiff filed a First Amended Complaint. Dkt. 89. Three separate motions to dismiss were again filed by each group of parties. *See* dkts. 94, 98, 99. The Court resolved those motions, dkt. 130, and the case has proceeded with discovery. This has involved formal or informal discovery motions and conferences on a large volume of issues. *See* dkts. 190, 218, 223, 246, 252, 284, 321. The case was stayed as Plaintiff dealt with a bankruptcy filing by Defendant Total Health Supply TUA, Inc. *See* dkts. 192-194. The lawsuit has been ongoing for more than three years to date.

Throughout the lawsuit, there have been both formal and informal efforts to settle the case. These efforts ranged from informal discussions to an Early Neutral Evaluation before Judge Butcher on June 30, 2021, dkt. 174; a mediation before former Magistrate Judge Leonidas Papas on December 15, 2022 (which included ongoing discussions through January 2023); and a mediation before Jill Sperber on August 3, 2023 (along with ongoing discussions afterward).

After years of litigation, and multiple mediations, Plaintiff and the Quick Box Defendants have arrived at a settlement which will resolve the claims against those defendants in a way which is beneficial to the Class—and which Plaintiff requests be preliminarily approved by the Court, pending a final hearing after input from members of the Settlement Class. The parties have agreed to a Proposed Order which is attached.

The settlement provides a substantial monetary benefit to the Class: $5.5 million, which is almost the entirety of the actual damages in this case. Ex. 1 at section II ¶ (15). The settlement is straightforward. It does not contain any of the hallmarks of self-dealing (negotiated attorney's fees which are disproportionate to the settlement, clear sailing provisions, or a reverter to the Defendants). It does not engage in any efforts to artificially inflate the value of the settlement, such as coupon settlements. Any money that is not distributed to the Class directly will go to a highly reputable non-profit, the National Consumer Law Center ("NCLC"). Class members will be eligible to receive up to three times the amount they paid for the La Pura products, depending on claims rates. Ex. 1 at section IV ¶ 4(b). The settlement administrator, Epiq Class Action and Claims Solutions, is managing the notice process. And the settlement occurred not only after mediations with neutral mediators, but after a mediator's proposal which both sides agreed to—something that courts have held is a strong signal of a fair settlement that is not a product of any kind of self-dealing.

## III.  SETTLEMENT ADMINISTRATION

Since final approval, the settlement is in the process of being administered, and notice has been sent to class members.

PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

## A.    Class Notice

The Settlement Administrator complied with the notice procedures set forth in the Settlement Agreement and Preliminary Approval Order. Decl. of C. Azari at ¶ 10. After receiving files produced in this litigation, and comparing those files, the Settlement Administrator created a list of 59,583 class members. "An Email Notice was sent to all identified Class Members for whom a valid email address was available, and a Postcard Notice was sent via USPS first class mail to all identified Class Members for whom an Email Notice was either unavailable or undeliverable after multiple attempts." *Id.*

The Settlement Administrator also sent reminder e-mails to 50,586 identified Class Members with valid e-mail addresses, and sent this to each e-mail address if a Class Member had multiple e-mail addresses. *Id.* at ¶ 12. The e-mails followed industry best practices to avoid spam filters and undeliverable messages. *Id.* at ¶ 13-14.

The Settlement Administrator sent two rounds of postcard notices, one to 155 individuals, and a second to 8,369 individuals as a supplemental notice or to individuals for whom the e-mails were undeliverable. *Id.* at ¶ 15. The Settlement Administrator estimates that 97.4% of the identified class members have been reached by the e-mails and postcards. *Id.* at ¶ 28.

## B.    No Objections or Requests for Exclusion To Date

As of November 25, 2024, there have been no objections to the settlement and no requests for exclusion, although the deadline to do so does not expire until December 23, 2024. *Id.* at ¶ 26.

While these numbers are not final, a lack of objections weighs in favor of approval. For example, in *Klee v. Nissan N. Am., Inc.*, No. CV 12-08238 AWT (PJWx), 2015 U.S. Dist. LEXIS 88270 at *28-29 (C.D. Cal. July 7, 2015), a total of 121 class members opted out and 14 objected out of 19,300 notices. The court found that "[d]ue to the small number of objections and opt-outs, the court finds that this factor weighs in favor of approval." *Id.* In *Churchill Vill. v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir. 2004), the 9th Circuit approved a settlement where 45 of 90,000 class members objected and 500 class members opted out.

"A court may appropriately infer that a class action settlement is fair, adequate, and reasonable when few class members object to it." *Ross v. Trex Co.*, No. 09-cv-00670-JSW, 2013 U.S. Dist. LEXIS 177718 at *12-13 (N.D. Cal. Dec. 16, 2013). *See also Khoja v. Orexigen Therapeutics*, No. 15-cv-00540-JLS-AGS, 2021 U.S. Dist. LEXIS 230105 at *24-25 (S.D. Cal. Nov. 30, 2021) ("Considering the number of Notice Packets mailed to potential Class Members and the fact that zero objections have been filed, the Court finds that the reaction of the Class Members to the Settlement weighs in favor of approving the Settlement."); *Cifuentes v. Ceva Logistics U.S., Inc.*, No. 3:16-cv-01957-H-DHB, 2017 U.S. Dist. LEXIS 176279 at *17 (S.D. Cal. Oct. 23, 2017) ("It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members.") (quoting *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004)).

## IV.  THE CLASS SETTLEMENT SHOULD BE GIVEN FINAL APPROVAL

"Assessing a settlement proposal requires the district court to balance a number of factors: the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) "To survive appellate review, the district court must show it has explored comprehensively all factors." *Id.* Federal Rule of Civil Procedure 23(e)(2) as amended in 2018 adds additional factors that must be considered: whether "the class representatives and class counsel have adequately represented the class," "the proposal was negotiated at arm's length," "the relief provided for the class is adequate" taking into account certain factors, and whether "the proposal treats class members equitably relative to each other."

"[T]here is a strong judicial policy that favors settlements, particularly where complex

class action litigation is concerned." *Briseño v. Henderson*, 998 F.3d 1014, 1031 (9th Cir. 2021) (quoting *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)). Plaintiff submits that on these facts, a partial settlement of the Quick Box Defendants for $5.5 million is not only a reasonable settlement, but an excellent result for the Class that guarantees them a substantial recovery while still allowing them to pursue additional recovery through the settlement with the Konnektive Parties.

## A.    The Strength of the Plaintiff's Case

Even where a court believes a Plaintiff's case to be strong, courts have still held this factor to weigh in favor of settlement where the litigation is complex. *See Jeter-Polk v. Casual Male Store, LLC*, No. EDCV 14-891-VAP (DTBx), 2016 U.S. Dist. LEXIS 204837 at *8-9 (C.D. Cal. June 29, 2016) (considering the case to be strong, but subject to "risks and costs associated with future complex litigation"). Courts have recognized the inherent risks in litigation, even where a party believes its case to be strong. *Shahbazian v. Fast Auto Loans*, No. 2:18-cv-03076-ODW (KSx), 2019 U.S. Dist. LEXIS 231416 at *18 (C.D. Cal. June 20, 2019) ("Here, as with most class actions, there is risk to both parties in continuing towards trial.").

While Plaintiff believes her substantive case to be very strong, there is always an inherent risk of losing. Plaintiff still has to defend class certification against a de-certification motion, survive *Daubert* motions, survive summary judgment motions, win a jury trial, and win an anticipated appeal. There are risks inherent to litigation that this settlement avoids by providing certainty and damages awards to the Class.

Another factor considered by the Plaintiff is that two insurance policies at issue which covered the Quick Box Defendants are wasting policies. Decl. of K. Kneupper at ¶ 32. A wasting policy decreases as the case goes on and more money is spent on the defense, meaning that less money is available from the policies for the Class to potentially recover. *Booth v. Strategic Realty Tr. Inc.*, No. 13-cv-04921-JST, 2015 U.S. Dist. LEXIS 84143 at *22 (N.D. Cal. June 28, 2015); *see also Stott v. Capital Fin. Servs.*, 277 F.R.D. 316, 330 (N.D. Tex. 2011) ("Furthermore, as noted above, the insurance policy at issue is a 'wasting'

policy, and the cost of additional litigation regarding this question would be deducted from the fund itself. Thus, in addition to the delay, class members' recovery would very likely be reduced even further….").

**B.    The Risk, Expense, Complexity, and Likely Duration of Further Litigation**

"In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (quoting 4 A Conte & H. Newberg, *Newberg on Class Actions*, § 11:50 at 155 (4th ed. 2002)). "Immediate receipt of money through settlement, even if lower than what could potentially be achieved through ultimate success on the merits, has value to a class, especially when compared to risky and costly continued litigation." *In re Celera Corp. Sec. Litig.*, No. 5:10-cv-02604-EJD, 2015 U.S. Dist. LEXIS 157408 at *16 (N.D. Cal. Nov. 20, 2015). "It has been held proper to take the bird in hand instead of a prospective flock in the bush." *Couser v. Comenity Bank*, 125 F. Supp. 3d 1034, 1041 (S.D. Cal. 2015) (citations omitted).

As described above, there are significant risks, even if Plaintiff believes the case on the merits to be strong. Other courts have recognized that "RICO claims are complex claims that are expensive and time-consuming to litigate." *Chan v. Brady*, No. 20-CV-06569-LHK, 2021 U.S. Dist. LEXIS 153096 at *11 (N.D. Cal. Aug. 13, 2021). There are 487 docket entries in this lawsuit already, and the Defendants have vigorously disputed the claims and can be expected to continue to do so absent settlement. It could take an additional two years (or more) to reach finality after an appeal. Expert reports were expensive, as will be pursuing the claims to trial. This factor thus weighs in favor of approval of the settlement.

**C.    The Risk of Maintaining Class Action Status Throughout the Trial**

On this factor, the Court considers the risk of whether a class action can be maintained as a class throughout the trial. Where a class has not yet been certified (as this class had not been when the settlement was signed), there is inherently such a risk which Plaintiff's Counsel must consider in settling the case. *See Grimm v. Am. Eagle Airlines, Inc.*, No. LA

PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

CV11-00406 JAK (MANx), 2014 U.S. Dist. LEXIS 199608 at *25-26 (C.D. Cal. Sep. 24, 2014) ("Because there is no certified class for any purpose other than the proposed Settlement and Defendant will likely oppose certification if the case proceeds, Plaintiffs necessarily risk losing class action status."). In addition, there is inherently a risk that the jury might not find its evidence of the Class having seen the same general misrepresentations on the websites at issue as persuasive, because jury decisions can be difficult to predict. This factor therefore favors approval.

### D.  The Amount Offered in Settlement

"[I]t is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004). In the context of statutes with treble damages provisions, the Ninth Circuit has held that a District Court may analyze the reasonableness of the amount of a proposed settlement against either single damages, treble damages, or both. *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 964-65 (9th Cir. 2009) ("It is our impression that courts generally determine fairness of an antitrust class action settlement based on how it compensates the class for past injuries, without giving much, if any, consideration to treble damages…. We have never precluded courts from comparing the settlement amount to both single and treble damages. By the same token, we do not require them to do so in all cases.").

Plaintiff's estimate of the actual damages for a nationwide class is slightly over $6.4 million. Decl. of C. Covey at ¶ 27. Trebling of this number would lead to maximum damages of just over $19.2 million. This is consistent with the estimates of maximum liability provided in bankruptcy by the La Pura Defendants. Decl. of K. Kneupper at ¶ 32. While there have been slight differences during negotiations in estimations of the potential damages by the Quick Box Defendants and Plaintiff, the variance was extremely small.[1]

---

[1] That variance was based on how to adjust for chargebacks and refunds, but because the total amount billed to the Class without any adjustment for chargebacks or refunds was $7.63 million, Plaintiff's estimate of the maximum theoretical damages is necessarily close to the actual theoretical maximum. Decl. of C. Covey at ¶ 27.

Based on the numbers estimated by Plaintiff, the settlement of $5.5 million amounts to 85.9% of the actual damages, and 28.6% of those damages if trebled.

Other courts in this Circuit have approved amounts in the range of or less than this settlement. *See Nguyen v. Radient Pharm. Corp.*, No. SACV 11-00406 DOC(MLGx), 2014 U.S. Dist. LEXIS 63312 at *7-8 (C.D. Cal. May 6, 2014) (describing a settlement of "roughly 25.8 percent of the maximum provable damages" as "an excellent recovery"); *Dunleavy v. Nadler (In re Mego Fin. Corp. Sec. Litig.)*, 213 F.3d 454, 459 (9th Cir. 2000) (describing a recovery of roughly 16.67% of the maximum damages as "fair and adequate"); *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 256 (N.D. Cal. 2015) (describing a settlement that "represents between 27 percent and 11 percent of the total potential recovery" as "fair"); *Stovall-Gusman v. W.W. Granger, Inc.*, No. 13-cv-02540-HSG, 2015 U.S. Dist. LEXIS 78671 at *12-13 (N.D. Cal. June 17, 2015) (describing a settlement of 7.3 percent as "on the low end of the spectrum for class settlement awards receiving approval" but still "within the range of reasonableness").

Also significant is that unlike these other cases, this is a partial settlement which leaves the Class free to pursue its claims against the La Pura Defendants and its partial settlement with the Konnektive Parties.[2]

### E.    The Relief Provided to the Class Is Adequate

FRCP 23(e)(2)(C) requires that the relief provided in a class settlement be adequate, taking into account "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3). As to whether the relief is adequate, "[t]he amount offered in the proposed settlement agreement is generally considered to be the most important consideration of any

---

[2] The Settlement releases claims against the Quick Box Defendants, and the settlement is intended to have preclusive effect against the Quick Box Defendants for claims arising from the transactions or occurrences at issue in this suit.

class settlement." *Hudson v. Libre Tech. Inc.*, No. 3:18-cv-1371-GPC-KSC, 2020 U.S. Dist. LEXIS 84576 at *17 (S.D. Cal. May 12, 2020).

The adequacy of the amount negotiated has been addressed above. The costs, risks, and delay of trial and appeal have likewise been addressed above.

As to "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," the key questions are whether these methods are unduly burdensome and whether they deter or defeat illegitimate claims. *Loomis v. Slendertone Distribution*, No. 19-cv-854-MMA (KSC), 2021 U.S. Dist. LEXIS 44047 at *17-18 (S.D. Cal. Mar. 8, 2021). The settlement proposes to create pre-populated claim forms based on the granular class member data available from Defendants' databases. Ex. 1 at section V ¶ 1. The forms may be submitted via mail or via a website portal. *Id.* In *Loomis*, the Court held that "any subjective burden by a Class Member would be sufficiently mitigated by the toll-free helpline and settlement website to provide assistance." *Loomis*, 2021 U.S. Dist. LEXIS 44047 at *17. This settlement provides for both. Ex. 1 at section VI ¶ 1(b). Epiq, the settlement administrator, has further provided a declaration describing how this claims process will be tailored to ensure that claims are easy to file. Decl. of C. Azari at ¶ 25-27, 31-32. As for illegitimate claims, because both Quick Box and Konnektive have produced spreadsheets with detailed information about the class members and their identities, it is unlikely that illegitimate claims would be successful.[3]

As to the terms of any proposed award of attorney's fees, including timing of payment, the amount of any attorney's fees have not been negotiated, and will be subject to approval by motion.

As to "any agreement required to be identified under Rule 23(e)(3)," there is no such agreement, and the terms of the executed settlement were the only agreement made by the parties in connection with this settlement proposal. Decl. of K. Kneupper at ¶ 38.

---

[3] This issue is more of a concern in class actions with no identifying records for the class, for example, when class members bought products in a retail store.

**F.    The Class Representative and Class Counsel Have Adequately Represented the Class**

FRCP 23(e)(2)(A) requires consideration of whether "the class representatives and class counsel have adequately represented the class." As to this factor, courts consider in part the experience of counsel. *See Sengvong v. Probuild Co. LLC*, No. 3:19cv2231-MMA-JLB, 2021 U.S. Dist. LEXIS 189993 at *7-8 (S.D. Cal. Oct. 1, 2021). Class Counsel are experienced in both complex litigation and consumer law. Decl. of K. Kneupper at ¶ 1-29; decl. of C. Covey at ¶ 1-22. The adequacy of the settlement amount is further evidence that both counsel and Ms. Tan have adequately represented the Class.

**G.    The Extent of Discovery Completed and the Stage of Proceedings**

In considering "the extent of discovery completed and the stage of the proceedings," courts have focused on whether "sufficient discovery has been taken or investigation completed to enable counsel and the Court to act intelligently…." *Maree v. Deutsche Lufthansa AG*, No. 8:20-cv-00885-SVW-MRW, 2023 U.S. Dist. LEXIS 25130 at *25-26 (C.D. Cal. Feb. 13, 2023) (quoting Herbert B. Newberg, NEWBERG ON CLASS ACTIONS § 11.41 (4th ed. 2013)). Courts consider the extent of both formal and informal discovery as to this factor. *Dunleavy v. Nadler (In re Mego Fin. Corp. Sec. Litig.)*, 213 F.3d 454, 459 (9th Cir. 2000) ("However, 'in the context of class action settlements, 'formal discovery is not a necessary ticket to the bargaining table' where the parties have sufficient information to make an informed decision about settlement.'").

Courts have previously found this factor to weigh in favor of approval in cases that have been litigated for several years with multiple mediations. *See Arellano v. Kellermeyer Bldg. Servs., LLC*, No. 13-cv-00533-BAS(BGS), 2014 U.S. Dist. LEXIS 168986 at *23-24 (S.D. Cal. Dec. 5, 2014). Similarly, in a case where Defendants had produced 3,000 pages of documents, a substantial amount of ESI, and had taken multiple depositions, the court found this to be extensive discovery that justified settlement approval. *Banales v. Autoclaims Direct, Inc.*, No. 11cv2914-DHB, 2012 U.S. Dist. LEXIS 201160 at *5-6 (S.D. Cal. Dec. 20, 2012).

This case was filed on June 12, 2020 and has been pending for more than three years. Prior to filing this lawsuit, Plaintiff's counsel spent nearly six months investigating the specific claims in this lawsuit in detail. Decl. of K. Kneupper at ¶ 33. Plaintiff's counsel further had been conducting an industry-wide investigation into similar allegations against other companies which lasted much longer. *Id*. Those informal investigations continued during the pendency of the lawsuit. Plaintiff's counsel conducted informal interviews of former employees of Quick Box, LLC and associated companies. *Id*. Plaintiff's counsel further obtained publicly available information about (1) historical aggregate shipping volume by Quick Box, along with data permitting estimates of their revenue; (2) the amount of money which a majority equity stake in Quick Box was sold for in 2019; (3) public statements about the dollar amount of loans made to Quick Box by the bank that made those loans, and (4) information about the property and assets of the individual Defendants. *Id*.

There have been numerous discovery issues resolved by the Court, including a lengthy hearing conducted by Magistrate Judge Leshner addressing dozens of discovery disputes. Dkt. 321, 322. The Quick Box Defendants produced more than 5,500 pages of documents. Decl. of K. Kneupper at ¶ 34. This included both (1) insurance agreements, and (2) shipping data. *Id*. The Konnektive Defendants further produced highly granular data about the sales at issue. *Id*. Ms. Tan was deposed, as well as Defendant Adelé and a former employee of Private Label Campaigns. *Id*. Kiet Lieu was deposed, and the owner of Total Health Supply TUA, Inc. was questioned under oath at a bankruptcy hearing. *Id*. Three individuals employed in the payment processing industry at Mastercard or Paysafe were also deposed, as were several Konnektive employees. *Id*.

In addition, Plaintiff had insight into the merits of the lawsuit both from the Court's rulings on multiple rounds of motions to dismiss (dkts. 88, 130) and a decision from the Court on many similar issues on a class certification motion in a pending parallel lawsuit (*Sihler v. Fulfillment Lab., Inc.*, No. 20cv1528-LL-DDL, 2023 U.S. Dist. LEXIS 116306 (S.D. Cal. June 23, 2023)).

Plaintiff's counsel thus had more than adequate information available to assess the

strength of their case.

## H.    The Proposal Was Negotiated At Arms' Length

Rule 23(e)(2)(B), as amended in 2018, now requires that the Court consider whether the proposed class settlement "was negotiated at arm's length." The Ninth Circuit has laid out certain factors which Courts should consider in conducting the "higher level of scrutiny for evidence of collusion or other conflicts of interest" that is required for pre-certification settlements. *See Allen v. Bedolla*, 787 F.3d 1218, 1224 (9th Cir. 2015). This includes a requirement that the Court look for certain "subtle signs that class counsel have allowed pursuit of their own self-interests . . . to infect the negotiations." *Id.* (quoting *Jones v. GN Netcom, Inc. (In re Bluetooth Headset Prods. Liab. Litig.)*, 654 F.3d 935, 947 (9th Cir. 2011)).

Those signs of self-dealing include: (1) when counsel receive a disproportionate distribution of the settlement; (2) when the parties negotiate a 'clear sailing' arrangement' (i.e., an arrangement where defendant will not object to a certain fee request by class counsel); and (3) when the parties create a reverter that returns unclaimed fees to the defendant. *Id.*

None of these signs exist here. There is nothing in the proposed agreement as to the amount that counsel will receive. Instead, that issue has been left for the Court itself to resolve via motion. *See, e.g.*, Ex. 1 at section IV ¶ 5(a); section IX. Counsel did not seek to negotiate any agreement as to their own fees **at all** in this settlement. The Ninth Circuit has held that a decision by class counsel to leave the issue of their fees to the Court via motion is a strong sign that there has been no collusion or self-dealing: "Providing further assurance that the agreement was not the product of collusion, class counsel McCuneWright did not reach an agreement with the automakers regarding the amount of attorney's fees to which they were entitled." *Espinosa v. Ahearn (In re Hyundai & Kia Fuel Econ. Litig.)*, 926 F.3d 539, 569-70 (9th Cir. 2019).

As to the second sign of self-dealing, a clear sailing arrangement, there is none in this settlement.

As to the third sign of self-dealing, an agreement to revert unclaimed fees to the defendants, again, there is none. Instead, class counsel negotiated a clean settlement in which unclaimed fees would be distributed to a well-respected *cy pres* recipient, the NCLC. *See* Ex. 1 at section IV ¶ 4(e); section II ¶ 17. The NCLC is a non-profit which has a history of addressing internet fraud and payment processing fraud. Decl. of R. Dubois. The NCLC has been approved as an appropriate *cy pres* recipient in various other cases. *See Smith v. One Nev. Credit Union*, No. 2:16-cv-02156-GMN-NJK, 2020 U.S. Dist. LEXIS 244534 at *3-6 (D. Nev. Dec. 30, 2020); *Spann v. J.C. Penney Corp.*, 211 F. Supp. 3d 1244, 1261 (C.D. Cal. 2016) ("Indeed, courts have repeatedly found the NCLC to have the requisite nexus with consumer classes for qualification as a *cy pres* recipient."); *Feist v. Petco Animal Supplies, Inc.*, No. 3:16-cv-01369-H-MSB, 2018 U.S. Dist. LEXIS 197186 at *17-18 (S.D. Cal. Nov. 16, 2018) Counsel for Plaintiffs have no connection personally or professionally to the NCLC and their only relationship has been purchasing and utilizing highly valuable practice guides the NCLC has created on consumer law, including in this lawsuit. Decl. of K. Kneupper at ¶ 35.

Not only are there no signs of self-dealing, but there are many signs to the contrary. The settlement was negotiated only after an initial Early Neutral Evaluation before Magistrate Judge Butcher, dkt. 174, as well as two subsequent mediations before two separate neutral mediators, former Magistrate Judge Leonidas Papas and Jill Sperber, Esq. Decl. of K. Kneupper at ¶ 36. Both are highly accomplished mediators who assisted in negotiating the agreement between the parties. *Id. See Bluetooth*, 654 F.3d at 948 (holding that the "presence of a neutral mediator," while not dispositive, is "a factor weighing in favor of a finding of non-collusiveness"). Further supporting non-collusiveness is that the settlement amount here was determined after a mediator's proposal made by Mrs. Sperber. Decl. of K. Kneupper at ¶ 36. *See Barragan v. Populus Fin. Grp., Inc.*, No. 2:21-cv-08021-SB-MRW, 2023 U.S. Dist. LEXIS 27605 at *9 (C.D. Cal. Feb. 10, 2023) ("The settlement was reached after mediation and only after the parties received a mediator's proposal, which suggests that it was the product of informed, arm's-length negotiations.").

Other aspects of the settlement discussed herein further suggest a lack of collusion. The case was not one in which class counsel sought a quick settlement: it was instead a hard-fought one with extensive discovery, as well as extensive investigation pre-suit, and an amount that reflects Class Counsel's willingness to pursue the case zealously as far as needed to secure a favorable recovery for the Class.

## I.    The Experience and Views of Counsel

"Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation. This is because parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." *Lloyd v. Navy Fed. Credit Union*, No. 17-cv-1280-BAS-RBB, 2019 U.S. Dist. LEXIS 89246 at *33 (S.D. Cal. May 28, 2019) (quoting *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004)).

Counsel for Plaintiff in this case are highly experienced in complex litigation. *See* Decl. of K. Kneupper at ¶ ¶ 1-29; Decl. of C. Covey at ¶ 1-22. Counsel are further highly experienced in consumer law cases, and the law firm of Kneupper & Covey currently maintains a docket of over 350 active individual consumer law cases in either arbitration or litigation. Decl. of K. Kneupper at ¶ 29. The law firm settled or recovered judgments in over 200 individual consumer law cases in 2023, and counsel are regularly involved in numerous mediations or settlement discussions. *Id.* at ¶ 30. In 2023, these individually settled or recovered cases by Kneupper & Covey amounted to more than $2.5 million. *Id.*

Based on their experience, Counsel for Plaintiff believe this is a highly favorable settlement for the Class. Partly this is because the amount of $5.5 million is 85.9% of the actual damages, and 28.6% percent of those damages if trebled. Weighed against the risks of an unfavorable litigation outcome and the time and expense needed to try for a higher damages award before a jury, Counsel believes they have obtained an extremely favorable outcome for the Class, even if this was all that is ever recovered.

But another issue that was significant to Counsel's decision was that this is only a

**partial** settlement against one group of Defendants. The Class continues to have claims against both (1) the Konnektive Defendants, and (2) claims against the La Pura shell companies which may be collectible through an alter ego action. A settlement that "offers an immediate and certain award for a large number of potential class members" creates "much less risk of anyone who may have actually been injured going away empty-handed." *In re Omnivision Techs.*, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2007). By settling for almost all of the actual damages, the Class is guaranteed an immediate, highly significant recovery while retaining the ability to try to recover more money it is entitled to from the other Defendants.

### J.     The Remaining Factors

As to the presence of a governmental participant, "[n]o government entity participated in this case. Under these circumstances, this factor is neutral." *Klee*, 2015 U.S. Dist. LEXIS 88270 at *28. With respect to the reaction of the class members to the proposed settlement, as discussed above, there have to date been zero objections and zero requests for exclusion. While the claims process is ongoing, and the deadline has not passed for objection or exclusion, at this time the response is highly positive and suggests a presumption of adequacy of the settlement. *See* Decl. of C. Azari.

As to whether "the proposal treats class members equitably relative to each other," the settlement treats class members equitably because it bases their recovery on the amount they paid, subject to pro rata increases or decreases based on the number of claims. Ex. 1 at section IV. Depending on how many class members make claims, that amount can also be increased pro rata up to three times the class member's actual damages (to reflect trebling). *Id.* at section IV(4)(b).

While Plaintiff has separately sought an incentive award in line with 9th Circuit authority, *see* Ex. 1 at section IX(2), the amount was not negotiated as part of the settlement and the Court will ultimately determine whether such an award is proper, and if so, the amount. Such incentive awards do not constitute inequitable treatment of class members. *Preston v. Porch.Com, Inc.*, No. 21-CV-168 JLS (BLM), 2022 U.S. Dist. LEXIS 75256 at

*19 (S.D. Cal. Apr. 25, 2022).

## V.    CONCLUSION

Plaintiff respectfully requests that the Court should grant final approval after consideration at the hearing.

DATED: December 2, 2024                                    **KNEUPPER & COVEY, PC**

                                                          /s/Kevin M. Kneupper

                                                          Kevin M. Kneupper, Esq.

                                                          *Attorneys for Plaintiff LeAnne Tan and the putative Class*