1   **KNEUPPER & COVEY, PC**
2   Kevin Kneupper, Esq. (CA SBN 325413)
    kevin@kneuppercovey.com
3   A. Cyclone Covey, Esq. (CA SBN 335957)
    cyclone@kneuppercovey.com
4   A. Lorraine Weekes, Esq. (CA SBN 332369)
    lorraine@kneuppercovey.com
5   17011 Beach Blvd., Suite 900
    Huntington Beach, CA 92647
6   Tel: (512) 420-8407
7
8
9   *Attorneys for Plaintiff LeAnne Tan*
    *and the putative Class*
10

11              UNITED STATES DISTRICT COURT
12            SOUTHERN DISTRICT OF CALIFORNIA
13

| | |
|---|---|
| 14  LEANNE TAN, Individually and On Behalf of All Others Similarly Situated, | Case No.: 3:20-cv-1082-LL-DDL |
| 15                                    Plaintiffs, | **PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT WITH KONNEKTIVE PARTIES** |
| 16  v. | |
| 17  QUICK BOX, LLC, et al, | |
| 18                                    Defendants. | |
| 19 | |
| 20 | **Date:** |
| 21 | **Time:**    * |
| 22 | **Ctrm:**    2B |
| 23 | **Judge:**   Hon. Linda Lopez |
| 24 | *PER CHAMBERS RULES, NO ORAL ARGUMENT UNLESS SEPARATELY ORDERED BY THE COURT |
| 25 | |
| 26 | Complaint Filed:  June 12, 2020 |
| 27 | |
| 28 | |

---

PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT
                                                                3:20-cv-1082-LL-DDL

# TABLE OF CONTENTS

**Page(s)**

I.      INTRODUCTION ................................................................................................ 1

II.     RELEVANT FACTS .......................................................................................... 1

III.    SETTLEMENT ADMINISTRATION ............................................................. 2

IV.     THE CLASS SETTLEMENT SHOULD BE GIVEN FINAL APPROVAL ............. 4

    A.    The Proposed Bench Trial Is In The Interests of the Class ................................. 5

    B.    The Strength of the Plaintiff's Case ..................................................................... 7

    C.    The Risk, Expense, Complexity, and Likely Duration of Further Litigation ...... 8

    D.    The Risk of Maintaining Class Action Status Throughout the Trial ................... 8

    E.    The Amount Offered in Settlement ...................................................................... 9

    F.    The Relief Provided to the Class Is Adequate ................................................... 11

    G.    The Class Representative and Class Counsel Have Adequately Represented the Class ........................................................................................................ 12

    H.    The Extent of Discovery Completed and the Stage of Proceedings .................. 12

    I.    The Proposal Was Negotiated At Arms' Length ............................................... 14

    J.    The Experience and Views of Counsel .............................................................. 16

    K.    The Remaining Factors ...................................................................................... 17

V.      CONCLUSION ................................................................................................ 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abrams v. Nucor Steel Marion, Inc.*,
  694 F. App'x 974 (6th Cir. 2017) ....................................................................... 6

*Allen v. Bedolla*,
  787 F.3d 1218 (9th Cir. 2015) ......................................................................... 17

*Arellano v. Kellermeyer Bldg. Servs., LLC*,
  No. 13-cv-00533-BAS(BGS),
  2014 U.S. Dist. LEXIS 168986 (S.D. Cal. Dec. 5, 2014) ........................... 15

*Banales v. Autoclaims Direct, Inc.*,
  No. 11cv2914-DHB, 2012 U.S. Dist. LEXIS 201160 (S.D. Cal. Dec. 20, 2012) ......... 16

*Barragan v. Populus Fin. Grp., Inc.*,
  No. 2:21-cv-08021-SB-MRW,
  2023 U.S. Dist. LEXIS 27605 (C.D. Cal. Feb. 10, 2023) ........................... 19

*Beaver v. Tarsadia Hotels*,
  No. 11-cv-01842-GPC-KSC,
  2017 U.S. Dist. LEXIS 80648 (S.D. Cal. May 24, 2017) ............................ 21

*Bellinghausen v. Tractor Supply Co.*,
  306 F.R.D. 245 (N.D. Cal. 2015) ..................................................................... 12

*Briseño v. Henderson*, 998 F.3d 1014 (9th Cir. 2021) ..................................... 4

*Chan v. Brady*, No. 20-CV-06569-LHK,
  2021 U.S. Dist. LEXIS 153096  (N.D. Cal. Aug. 13, 2021) ......................... 9

*Class Plaintiffs v. Seattle*,
  955 F.2d 1268 (9th Cir. 1992) ........................................................................... 4

*Collazo v. WEN by Chaz Dean, Inc.*,
  No. 2:15-CV-01974-ODW-AGR,
  2018 U.S. Dist. LEXIS 116509 (C.D. Cal. July 12, 2018) ........................... 5

*Couser v. Comenity Bank*,
  125 F. Supp. 3d 1034 (S.D. Cal. 2015) ............................................................ 9

*Dunleavy v. Nadler (In re Mego Fin. Corp. Sec. Litig.)*,

213 F.3d 454 (9th Cir. 2000)........................................................................... 12, 15

*Espinosa v. Ahearn (In re Hyundai & Kia Fuel Econ. Litig.)*,

   926 F.3d 539 (9th Cir. 2019).............................................................................. 18

*Feist v. Petco Animal Supplies, Inc.*,

   No. 3:16-cv-01369-H-MSB,

   2018 U.S. Dist. LEXIS 197186 (S.D. Cal. Nov. 16, 2018) ............................. 19

*Hanlon v. Chrysler Corp.*,...................................................................................

   150 F.3d 1011 (9th Cir. 1998) ........................................................................ 3, 4

*Hudson v. Libre Tech. Inc.*,

   No. 3:18-cv-1371-GPC-KSC,

   2020 U.S. Dist. LEXIS 84576 (S.D. Cal. May 12, 2020)................................ 13

*In re Celera Corp. Sec. Litig.*,

   No. 5:10-cv-02604-EJD, 2015 U.S. Dist. LEXIS 157408 (N.D. Cal. Nov. 20, 2015) ... 9

*In re Chevron U.S.A., Inc.*,

   109 F.3d 1016  (5th Cir. 1997) ........................................................................... 6

*In re GM LLC Ignition Switch Litig.*,

   407 F. Supp. 3d 212 (S.D.N.Y. 2019)................................................................. 6

*In re Hydroxycut Mktg. & Sales Practice Litig.*,

   No. 3:09-md-2087-BTM(KSC), 2012 U.S. Dist. LEXIS 93282 (S.D. Cal. June 28, 2012)....................................................................................................................... 5

*In re LinkedIn User Privacy Litig.*,

   309 F.R.D. 573 (N.D. Cal. 2015) ...................................................................... 10

*In re Marriott Int'l, Inc.*,

   440 F. Supp. 3d 447 (D. Md. 2020) .................................................................... 6

*In re Omnivision Techs.*,

   559 F. Supp. 2d 1036 (N.D. Cal. 2007) ............................................................ 21

*In re Packaged Seafood Prods. Antitrust Litig.*,

   No. 15-md-2670-JLS-MDD, 2021 U.S. Dist. LEXIS 90054 (S.D. Cal. May 11, 2021) 3, 22

*In re Toyota Motor Corp. Unintended Acceleration Mktg.*,

No. 8:10ML2151 JVS (FMOx), 2012 U.S. Dist. LEXIS 189352 (C.D. Cal. Jan. 30, 2012).................................................................................................................7

*Jeter-Polk v. Casual Male Store, LLC*,
No. EDCV 14-891-VAP (DTBx),
2016 U.S. Dist. LEXIS 204837 (C.D. Cal. June 29, 2016) ...............................8

*Jones v. GN Netcom, Inc. (In re Bluetooth Headset Prods. Liab. Litig.)*,
654 F.3d 935 (9th Cir. 2011)...............................................................17, 19

*Klee v. Nissan N. Am., Inc.*,
No. CV 12-08238 AWT (PJWx),
2015 U.S. Dist. LEXIS 88270 (C.D. Cal. July 7, 2015)...................................21

*Lloyd v. Navy Fed. Credit Union*,
No. 17-cv-1280-BAS-RBB,
2019 U.S. Dist. LEXIS 89246 (S.D. Cal. May 28, 2019)...............................20

*Loomis v. Slendertone Distribution*,
No. 19-cv-854-MMA (KSC),
2021 U.S. Dist. LEXIS 44047 (S.D. Cal. Mar. 8, 2021) .........................13, 14

*Maree v. Deutsche Lufthansa AG*,
No. 8:20-cv-00885-SVW-MRW,
2023 U.S. Dist. LEXIS 25130 (C.D. Cal. Feb. 13, 2023) ...............................15

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
221 F.R.D. 523 (C.D. Cal. 2004) .................................................9, 10, 20

*Nguyen v. Radient Pharm. Corp.*,
No. SACV 11-00406 DOC(MLGx),
2014 U.S. Dist. LEXIS 63312 (C.D. Cal. May 6, 2014) ...............................12

*Preston v. Porch.Com, Inc.*,
No. 21-CV-168 JLS (BLM),
2022 U.S. Dist. LEXIS 75256 (S.D. Cal. Apr. 25, 2022).............................22

*Rodriguez v. W. Publ'g Corp.*,
563 F.3d 948 (9th Cir. 2009).........................................................................11

*Sengvong v. Probuild Co. LLC*,

No. 3:19cv2231-MMA-JLB,

2021 U.S. Dist. LEXIS 189993 (S.D. Cal. Oct. 1, 2021) ............................... 14

*Shahbazian v. Fast Auto Loans*,

No. 2:18-cv-03076-ODW (KSx),

2019 U.S. Dist. LEXIS 231416 (C.D. Cal. June 20, 2019) ............................ 8

*Silber v. Mabon*,

18 F.3d 1449 (9th Cir. 1994) ......................................................................... 22

*Smith v. One Nev. Credit Union*,

No. 2:16-cv-02156-GMN-NJK,

2020 U.S. Dist. LEXIS 244534 (D. Nev. Dec. 30, 2020) .............................. 18

*Spann v. J.C. Penney Corp.*,

211 F. Supp. 3d 1244 (C.D. Cal. 2016) ........................................................ 18

*Steinberg v. Corelogic Credco, LLC*,

No. 3:22-cv-00498-H-SBC,

2023 U.S. Dist. LEXIS 177325 (S.D. Cal. Oct. 2, 2023) .............................. 4

*Stevens v. Safeway, Inc.*,

No. CV 05-01988 MMM (SHx),

2008 U.S. Dist. LEXIS 17119 (C.D. Cal. Feb. 25, 2008) ............................ 10

*Stovall-Gusman v. W.W. Granger, Inc.*,

No. 13-cv-02540-HSG,

2015 U.S. Dist. LEXIS 78671 (N.D. Cal. June 17, 2015) ............................ 12

**Rules**

Fed. R. Civ. P. 23 ................................................................................... passim

Fed. R. Civ. P. 42 ............................................................................................ 6

**Other Authorities**

4 A Conte & H. Newberg, *Newberg on Class Actions*,

§ 11:50 at 155 (4th ed. 2002) ......................................................................... 9

4 NEWBERG AND RUBENSTEIN ON CLASS ACTIONS

§ 13:1 (6th ed.) ............................................................................................... 3

ELDON E. FALLON ET. AL., *Bellwether Trials in Multidistrict Litigation*,

PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

82 Tul. L. Rev. 2323 (2008)............................................................... 5

Herbert B. Newberg, NEWBERG ON CLASS ACTIONS

§ 11.41 (4th ed. 2013) .................................................................. 15

PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

# I.    INTRODUCTION

Plaintiff and the Konnektive Defendants (Konnektive LLC, Converging Resources Corporation, Konnektive Rewards LLC, Matthew MArtorano, and Kathryn Martorano) have agreed to a Class Settlement to resolve the putative Class's claims against those Defendants in exchange for a minimum of $2 million and a maximum of $5 million. That amount will be determined via a summary bench trial before Judge Leshner. This agreement came after a lengthy litigation period of more than four years, an Early Neutral Evaluation (ENE), and two separate mediations. Combined with the previous Quick Box settlement, the Konnektive settlement offers relief to the Class that exceeds the entirety of the actual damages. And the settlement does not waive claims against the La Pura Defendants, such that not only is the Class guaranteed this substantial recovery against what they lost, but they will have the opportunity to recover even more should Plaintiff's counsel be successful in pursuing claims against those other Defendants. The reaction to the settlement has thus far been favorable—while the deadline has not passed for objections or exclusions, to date, no class members have objected or requested exclusion.

# II.    RELEVANT FACTS

This lawsuit was filed on June 12, 2020. Dkt. 1. Three separate groups of parties filed their own motions to dismiss. *See* dkts. 25, 29-34, 36-40. After an initial order on these motions by the Court, dkt. 88, Plaintiff filed a First Amended Complaint. Dkt. 89. Three separate motions to dismiss were again filed by each group of parties. *See* dkts. 94, 98, 99. The Court resolved those motions, dkt. 130, and the case has proceeded with discovery. This has involved formal or informal discovery motions and conferences on a large volume of issues. *See* dkts. 190, 218, 223, 246, 252, 284, 321. The case was stayed as Plaintiff dealt with a bankruptcy filing by Defendant Total Health Supply TUA, Inc. *See* dkts. 192-194. The lawsuit has been ongoing for more than four years to date.

Throughout the lawsuit, there have been both formal and informal efforts to settle the case. These efforts ranged from informal discussions to an Early Neutral Evaluation before Judge Butcher on June 30, 2021, dkt. 174; as well as a subsequent settlement conference

with Magistrate Judge Leshner, dkt. 345. Plaintiff and the Konnektive Parties then held a mediation with Antonio Piazza, a highly regarded mediator who assisted in negotiating the agreement between the parties.

After years of litigation, and multiple mediations, Plaintiff and the Konnektive Defendants have arrived at a settlement which will resolve the claims against those defendants in a way which is beneficial to the Class—and which Plaintiff requests be preliminarily approved by the Court, pending a final hearing after input from members of the Settlement Class. The parties have agreed to a Proposed Order which is attached.

The settlement provides a substantial monetary benefit to the Class: either $2 million or $5 million depending on the results of a bench trial on liability on the CLRA claim. Ex. 1 at section III(5)(b). The settlement is straightforward. It does not contain any of the hallmarks of self-dealing (negotiated attorney's fees which are disproportionate to the settlement, clear sailing provisions, or a reverter to the Defendants). It does not engage in any efforts to artificially inflate the value of the settlement, such as coupon settlements. Any money that is not distributed to the Class directly will go to a highly reputable non-profit, the National Consumer Law Center ("NCLC"). Class members will be eligible to receive up to three times the amount they paid for the La Pura products, depending on claims rates. Ex. 1 at section III ¶ 4(b). The settlement administrator, Epiq Class Action and Claims Solutions, was selected after a detailed interview with Class Counsel involving technical questions to ensure that they would be able to notify as many Class members as possible. And the settlement occurred not only after mediations with neutral mediators, but after a mediator's proposal which both sides agreed to—something that courts have held is a strong signal of a fair settlement that is not a product of any kind of self-dealing.

## III. SETTLEMENT ADMINISTRATION

Since preliminary approval, the settlement is in the process of being administered, and notice has been sent to class members.

### A. Class Notice

The Settlement Administrator complied with the notice procedures set forth in the Settlement Agreement and Preliminary Approval Order. Decl. of C. Azari at ¶ 10. After receiving files produced in this litigation, and comparing those files, the Settlement Administrator created a list of 49,530 class members based on results from the Quick Box settlement notice process. An Email Notice was sent to all identified Class Members for whom a valid email address was available, and a Postcard Notice was sent via USPS first class mail to all identified Class Members for whom an Email Notice was either unavailable or undeliverable after multiple attempts. *Id.* at 10-12. The e-mails followed industry best practices to avoid spam filters and undeliverable messages. *Id.*

The Settlement Administrator sent postcard notice to 9,991 individuals as a supplemental notice or to individuals for whom the e-mails were determined to be undeliverable after the Quick Box notice process. *Id.* at ¶ 12. The Settlement Administrator estimates that 96.3% of the identified class members have been reached by the e-mails and postcards. *Id.* at ¶ 15.

### B. No Objections or Requests for Exclusion To Date

As of December 27, 2024, there have been no objections to the settlement and no requests for exclusion. *Id.* at ¶ 22.

While these numbers are not final, a lack of objections weighs in favor of approval. For example, in *Klee v. Nissan N. Am., Inc.*, No. CV 12-08238 AWT (PJWx), 2015 U.S. Dist. LEXIS 88270 at *28-29 (C.D. Cal. July 7, 2015), a total of 121 class members opted out and 14 objected out of 19,300 notices. The court found that "[d]ue to the small number of objections and opt-outs, the court finds that this factor weighs in favor of approval." *Id.* In *Churchill Vill. v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir. 2004), the 9th Circuit approved a settlement where 45 of 90,000 class members objected and 500 class members opted out. "A court may appropriately infer that a class action settlement is fair, adequate, and reasonable when few class members object to it." *Ross v. Trex Co.*, No. 09-cv-00670-JSW, 2013 U.S. Dist. LEXIS 177718 at *12-13 (N.D. Cal. Dec. 16, 2013). *See also Khoja v.*

*Orexigen Therapeutics*, No. 15-cv-00540-JLS-AGS, 2021 U.S. Dist. LEXIS 230105 at *24-25 (S.D. Cal. Nov. 30, 2021) ("Considering the number of Notice Packets mailed to potential Class Members and the fact that zero objections have been filed, the Court finds that the reaction of the Class Members to the Settlement weighs in favor of approving the Settlement."); *Cifuentes v. Ceva Logistics U.S., Inc.*, No. 3:16-cv-01957-H-DHB, 2017 U.S. Dist. LEXIS 176279 at *17 (S.D. Cal. Oct. 23, 2017) ("It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members.") (quoting *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004)).

## IV. THE CLASS SETTLEMENT SHOULD BE GIVEN FINAL APPROVAL

"Assessing a settlement proposal requires the district court to balance a number of factors: the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) "To survive appellate review, the district court must show it has explored comprehensively all factors." *Id.* Federal Rule of Civil Procedure 23(e)(2) as amended in 2018 adds additional factors that must be considered: whether "the class representatives and class counsel have adequately represented the class," "the proposal was negotiated at arm's length," "the relief provided for the class is adequate" taking into account certain factors, and whether "the proposal treats class members equitably relative to each other."

"[T]here is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Briseño v. Henderson*, 998 F.3d 1014, 1031 (9th Cir. 2021) (quoting *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)). Plaintiff submits that on these facts, the proposed settlement with the Konnektive Defendants (which

will be a minimum of $2 million, and a maximum of $5 million), when combined with a settlement with the Quick Box Defendants for $5.5 million, is not only a reasonable settlement, but an excellent result for the Class that guarantees them a substantial recovery which exceeds the actual damages in this case.

## A. The Proposed Bench Trial Is In The Interests of the Class

The settlement proposes a bench trial before Magistrate Judge Leshner on the issue of liability on Plaintiff's CLRA claim. This proposal—which was submitted as a mediator's proposal and accepted by Plaintiff and the Konnektive Defendants—is a fair method of arriving at reasonable damages for the nationwide Class.

The proposed bench trial bears some resemblance to a bellwether trial used in mass torts or multi-District litigation ("MDL"). In that context, "[t]he method of selecting test cases for trial is 'limited only by the ingenuity of each . . . court and the coordinating attorneys.'" *Collazo v. WEN by Chaz Dean, Inc.*, No. 2:15-CV-01974-ODW-AGR, 2018 U.S. Dist. LEXIS 116509 at *17 (C.D. Cal. July 12, 2018) (quoting ELDON E. FALLON ET. AL., *Bellwether Trials in Multidistrict Litigation*, 82 Tul. L. Rev. 2323, 2337 (2008)).

"The notion that the trial of some members of a large group of claimants may provide a basis for enhancing prospects of settlement or for resolving common issues or claims is a sound one that has achieved general acceptance by both bench and bar." *In re Hydroxycut Mktg. & Sales Practice Litig.*, No. 3:09-md-2087-BTM(KSC), 2012 U.S. Dist. LEXIS 93282 at *50 (S.D. Cal. June 28, 2012) (quoting *In re Chevron U.S.A., Inc.*, 109 F.3d 1016, 1019 (5th Cir. 1997)).

The ability to hold a trial on one issue to expedite resolution is also generally authorized by Federal Rule of Civil Procedure 42(b): "For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims."

Bellwether trials have been used in class actions previously by agreement of the parties. *See Abrams v. Nucor Steel Marion, Inc.*, 694 F. App'x 974, 977 (6th Cir. 2017) (unpublished) (describing bellwether process used in class action). In a consumer class

action involving the law of numerous states, the Southern District of New York adopted a bellwether class action trial process in which an initial group of state law claims from three states would be tried as bellwethers to provide settlement information for the remaining state law classes. *In re GM LLC Ignition Switch Litig.*, 407 F. Supp. 3d 212, 216-17 (S.D.N.Y. 2019) (describing bellwether process). Similarly, a court in the District of Maryland applied a bellwether process to a Motion to Dismiss that involved consumer class action claims from a large number of states. *In re Marriott Int'l, Inc.*, 440 F. Supp. 3d 447 (D. Md. 2020). In that case, the parties selected a subset of class representatives and a subset of their claims to act as a bellwether as to the validity of the Motion to Dismiss. *Id.* Another court in the Central District of California noted that it had adopted a bellwether process in a class action case. *In re Toyota Motor Corp. Unintended Acceleration Mktg.*, No. 8:10ML2151 JVS (FMOx), 2012 U.S. Dist. LEXIS 189352 at *4-5 (C.D. Cal. Jan. 30, 2012).

The mediator's proposal in this case was designed to bridge the gap between the parties in their assessments of the strength of their cases (and thus the potential range of damages). Where both parties believe their case to be strong, it is difficult to fashion a settlement. The settlement here proposes to use a short bench trial on one issue—liability under Plaintiff's CLRA claims—to test the strength of the parties' respective claims and defenses. The CLRA claims were selected because (1) they are simpler to try than a RICO claim or the other alternatives; and (2) the parties deemed it highly likely to provide information which would determine the strength of all of the claims in the case. While the elements and law regarding the claims at issue is not identical, the point of the proposed trial is to gather such information. The parties have agreed that if Plaintiff wins this proposed trial, the total damages for the class nationwide will be $5 million. This is because, if the Plaintiff wins, it suggests that Plaintiff was correct in her assessment of the strength of the claims as a whole. The parties have also agreed that if Plaintiff loses this proposed trial, the damages will be $2 million—because again, if Plaintiff loses, it suggests the Konnektive Defendants were correct in their own assessment as to the weakness of the claims as a whole.

Plaintiff believes this process is fair to the Class as a whole. While the claim to be tried is under California law, if the Plaintiff cannot prevail on liability as to this claim, it suggests that it would be difficult to prevail on the other claims as well, including the federal law RICO claim. A loss on liability for the CLRA claim would suggest that a lower settlement to resolve the claims as a whole is, in fact, fair. And similarly, although a win on liability for the CLRA claim does not guarantee a win on similar claims under RICO, it would suggest that those claims are more valuable and should be settled for a higher value. Plaintiff also believes that the settlement amounts proposed are fair, as discussed further below. The $2 million figure acts as a floor which guarantees a recovery to the Class even if their claims are determined to be weaker than Plaintiff expects.

The proposed process would consume significantly less resources on the part of the Court than a full-blown jury trial on all of the claims. Plaintiff and the Konnektive Defendants have agreed to allow Magistrate Judge Leshner to fashion appropriate procedures for the bench trial.

## B.    The Strength of the Plaintiff's Case

Even where a court believes a Plaintiff's case to be strong, courts have still held this factor to weigh in favor of settlement where the litigation is complex. *See Jeter-Polk v. Casual Male Store, LLC*, No. EDCV 14-891-VAP (DTBx), 2016 U.S. Dist. LEXIS 204837 at *8-9 (C.D. Cal. June 29, 2016) (considering the case to be strong, but subject to "risks and costs associated with future complex litigation"). Courts have recognized the inherent risks in litigation, even where a party believes its case to be strong. *Shahbazian v. Fast Auto Loans*, No. 2:18-cv-03076-ODW (KSx), 2019 U.S. Dist. LEXIS 231416 at *18 (C.D. Cal. June 20, 2019) ("Here, as with most class actions, there is risk to both parties in continuing towards trial.").

While Plaintiff believes her substantive case to be very strong, there is always an inherent risk of losing. Absent settlement approval, Plaintiff still has to defeat a pending motion to decertify the Class, survive the pending *Daubert* motions, survive the remaining summary judgment motion, win a jury trial, and win an anticipated appeal. There are risks

inherent to litigation that this settlement avoids by providing certainty and damages awards to the Class.

### C. The Risk, Expense, Complexity, and Likely Duration of Further Litigation

"In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (quoting 4 A Conte & H. Newberg, *Newberg on Class Actions*, § 11:50 at 155 (4th ed. 2002)). "Immediate receipt of money through settlement, even if lower than what could potentially be achieved through ultimate success on the merits, has value to a class, especially when compared to risky and costly continued litigation." *In re Celera Corp. Sec. Litig.*, No. 5:10-cv-02604-EJD, 2015 U.S. Dist. LEXIS 157408 at *16 (N.D. Cal. Nov. 20, 2015). "It has been held proper to take the bird in hand instead of a prospective flock in the bush." *Couser v. Comenity Bank*, 125 F. Supp. 3d 1034, 1041 (S.D. Cal. 2015) (citations omitted).

As described above, there are significant risks, even if Plaintiff believes the case on the merits to be strong. Other courts have recognized that "RICO claims are complex claims that are expensive and time-consuming to litigate." *Chan v. Brady*, No. 20-CV-06569-LHK, 2021 U.S. Dist. LEXIS 153096 at *11 (N.D. Cal. Aug. 13, 2021). There are 490 docket entries in this lawsuit already, and the Defendants have vigorously disputed the claims and can be expected to continue to do so absent settlement. It could take an additional two years (or more) to reach finality after an appeal. There will be significant expense associated with pursuing the claims to a jury trial, much of which is avoided by the mechanism of the proposed bench trial. This factor thus weighs in favor of approval of the settlement.

### D. The Risk of Maintaining Class Action Status Throughout the Trial

On this factor, the Court considers the risk of whether a class action can be maintained as a class throughout the trial. There is a pending motion to de-certify the class filed by the Konnektive Parties. Dkt. 422. Where a motion to de-certify has been filed prior to settlement, this factor weighs in favor of approval. *See Stevens v. Safeway, Inc.*, No. CV 05-

01988 MMM (SHx), 2008 U.S. Dist. LEXIS 17119 at *20-21 (C.D. Cal. Feb. 25, 2008); *see also In re LinkedIn User Privacy Litig.*, 309 F.R.D. 573, 587 (N.D. Cal. 2015) ("[T]he notion that a district court could decertify a class at any time is an inescapable and weighty risk that weighs in favor of a settlement."). In addition, there is inherently a risk that the jury might not find its evidence of the Class having seen the same general misrepresentations on the websites at issue as persuasive, because jury decisions can be difficult to predict. This factor therefore favors approval.

### E.     The Amount Offered in Settlement

"[I]t is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial." *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 527. In the context of statutes with treble damages provisions, the Ninth Circuit has held that a District Court may analyze the reasonableness of the amount of a proposed settlement against either single damages, treble damages, or both. *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 964-65 (9th Cir. 2009) ("It is our impression that courts generally determine fairness of an antitrust class action settlement based on how it compensates the class for past injuries, without giving much, if any, consideration to treble damages…. We have never precluded courts from comparing the settlement amount to both single and treble damages. By the same token, we do not require them to do so in all cases.").

Plaintiff's estimate of the actual damages for a nationwide class is slightly over $6.4 million. Decl. of C. Covey at ¶ 28. Trebling of this number would lead to maximum damages of just over $19.2 million. This is consistent with the estimates of maximum liability provided in bankruptcy by the La Pura Defendants. Decl. of K. Kneupper at ¶ 31. The Konnektive Defendants have disputed this number and submitted an expert report calculating this number at $5.4 million, and further suggesting a more appropriate damages range is between $20,903 and $3,693,712.

Based on the higher numbers estimated by Plaintiff, in the event Plaintiff loses the bench trial and the Class receives $2 million, the partial settlement with the Konnektive

Parties amounts to 37% of the actual damages and 10.4% of those damages if trebled. If Plaintiff wins the bench trial and the Class receives $5 million, the partial settlement with the Konnektive Parties amounts to 92.5% of the actual damages and 26% of those damages if trebled.

Importantly, this is a partial settlement, and there is already a recovery of $5.5 million from the proposed settlement with the Quick Box Parties which will also be used to compensate the class. Taken together, on the low end the recovery for the Class will be $7.5 million—138% of the actual damages, and 39% of those damages if trebled. On the high end, if Plaintiff wins the proposed bench trial, the total recovery of $10.5 million will be 194% of the actual damages, and 54.6% of those damages if trebled.

Other courts in this Circuit have approved amounts in the range of or less than this settlement. *See Nguyen v. Radient Pharm. Corp.*, No. SACV 11-00406 DOC(MLGx), 2014 U.S. Dist. LEXIS 63312 at *7-8 (C.D. Cal. May 6, 2014) (describing a settlement of "roughly 25.8 percent of the maximum provable damages" as "an excellent recovery"); *Dunleavy v. Nadler (In re Mego Fin. Corp. Sec. Litig.)*, 213 F.3d 454, 459 (9th Cir. 2000) (describing a recovery of roughly 16.67% of the maximum damages as "fair and adequate"); *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 256 (N.D. Cal. 2015) (describing a settlement that "represents between 27 percent and 11 percent of the total potential recovery" as "fair"); *Stovall-Gusman v. W.W. Granger, Inc.*, No. 13-cv-02540-HSG, 2015 U.S. Dist. LEXIS 78671 at *12-13 (N.D. Cal. June 17, 2015) (describing a settlement of 7.3 percent as "on the low end of the spectrum for class settlement awards receiving approval" but still "within the range of reasonableness").

Also significant is that unlike these other cases, these two settlements (with the Quick Box Parties and the Konnektive Parties) are a partial settlement which leaves the Class free to pursue its claims against the La Pura Defendants, as well as others behind them under a post-judgment alter ego theory. The percentage recovered here thus does not mean it is the maximum the Class will recover—it is the percentage that the Class will "bank" as a certain recovery and as a hedge against any risk of losing the Class's claims against the non-settling

parties which Counsel will continue to zealously pursue.

### F. The Relief Provided to the Class Is Adequate

FRCP 23(e)(2)(C) requires that the relief provided in a class settlement be adequate, taking into account "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3). As to whether the relief is adequate, "[t]he amount offered in the proposed settlement agreement is generally considered to be the most important consideration of any class settlement." *Hudson v. Libre Tech. Inc.*, No. 3:18-cv-1371-GPC-KSC, 2020 U.S. Dist. LEXIS 84576 at *17 (S.D. Cal. May 12, 2020).

The adequacy of the amount negotiated has been addressed above. The costs, risks, and delay of trial and appeal have likewise been addressed above.

As to "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," the key questions are whether these methods are unduly burdensome and whether they deter or defeat illegitimate claims. *Loomis v. Slendertone Distribution*, No. 19-cv-854-MMA (KSC), 2021 U.S. Dist. LEXIS 44047 at *17-18 (S.D. Cal. Mar. 8, 2021). The settlement proposes to create pre-populated claim forms based on the granular class member data available from Defendants' databases. Ex. 1 at section IV ¶ 1. The forms may be submitted via mail or via a website portal. *Id.* In *Loomis*, the Court held that "any subjective burden by a Class Member would be sufficiently mitigated by the toll-free helpline and settlement website to provide assistance." *Loomis*, 2021 U.S. Dist. LEXIS 44047 at *17. This settlement provides for both. Ex. 1 at section V ¶ 1(b). Epiq, the settlement administrator, has further provided a declaration describing how this claims process will be tailored to ensure that claims are easy to file. Decl. of C. Azari at ¶ 25-27, 31-32. As for illegitimate claims, because both Quick Box and Konnektive have

produced spreadsheets with detailed information about the class members and their identities, it is unlikely that illegitimate claims would be successful.[1]

As to the terms of any proposed award of attorney's fees, including timing of payment, the amount of any attorney's fees have not been negotiated, and will be subject to approval by motion.

As to "any agreement required to be identified under Rule 23(e)(3)," there is no such agreement, and the terms of the executed settlement were the only agreement made by the parties in connection with this settlement proposal. Decl. of K. Kneupper at ¶ 37.

### G.   The Class Representative and Class Counsel Have Adequately Represented the Class

FRCP 23(e)(2)(A) requires consideration of whether "the class representatives and class counsel have adequately represented the class." As to this factor, courts consider in part the experience of counsel. *See Sengvong v. Probuild Co. LLC*, No. 3:19cv2231-MMA-JLB, 2021 U.S. Dist. LEXIS 189993 at *7-8 (S.D. Cal. Oct. 1, 2021). Class Counsel are experienced in both complex litigation and consumer law. Decl. of K. Kneupper at ¶ 1-29; decl. of C. Covey at ¶ 1-22. The adequacy of the settlement amount is further evidence that both counsel and Ms. Tan have adequately represented the Class.

### H.   The Extent of Discovery Completed and the Stage of Proceedings

In considering "the extent of discovery completed and the stage of the proceedings," courts have focused on whether "sufficient discovery has been taken or investigation completed to enable counsel and the Court to act intelligently…." *Maree v. Deutsche Lufthansa AG*, No. 8:20-cv-00885-SVW-MRW, 2023 U.S. Dist. LEXIS 25130 at *25-26 (C.D. Cal. Feb. 13, 2023) (quoting Herbert B. Newberg, Newberg on Class Actions § 11.41 (4th ed. 2013)). Courts consider the extent of both formal and informal discovery as to this factor. *Dunleavy v. Nadler (In re Mego Fin. Corp. Sec. Litig.)*, 213 F.3d 454, 459 (9th Cir. 2000) ("However, 'in the context of class action settlements, 'formal discovery is

---

[1] This issue is more of a concern in class actions with no identifying records for the class, for example, when class members bought products in a retail store.

not a necessary ticket to the bargaining table' where the parties have sufficient information to make an informed decision about settlement.'").

Courts have previously found this factor to weigh in favor of approval in cases that have been litigated for several years with multiple mediations. *See Arellano v. Kellermeyer Bldg. Servs., LLC*, No. 13-cv-00533-BAS(BGS), 2014 U.S. Dist. LEXIS 168986 at *23-24 (S.D. Cal. Dec. 5, 2014). Similarly, in a case where defendants had produced 3,000 pages of documents, a substantial amount of ESI, and had taken multiple depositions, the court found this to be extensive discovery that justified settlement approval. *Banales v. Autoclaims Direct, Inc.*, No. 11cv2914-DHB, 2012 U.S. Dist. LEXIS 201160 at *5-6 (S.D. Cal. Dec. 20, 2012).

This case was filed on June 12, 2020 and has been pending for more than four years. Prior to filing this lawsuit, Plaintiff's counsel spent nearly six months investigating the specific claims in this lawsuit in detail. Decl. of K. Kneupper at ¶ 32. Plaintiff's counsel further had been conducting an industry-wide investigation into similar allegations against other companies which lasted much longer. *Id*. Those informal investigations continued during the pendency of the lawsuit. Plaintiff's counsel conducted informal interviews of former employees of the Konnektive Parties. *Id*. The Konnektive Parties produced sworn declarations regarding their financial assets. *Id*. Plaintiff's counsel further obtained publicly available information about (1) real estate assets held by the Konnektive Parties; (2) corporations in which the Konnektive Parties had a financial interest; and (3) estimates of their transaction volume. *Id*. at ¶ 31.

There have been numerous discovery issues resolved by the Court, including a lengthy hearing conducted by Magistrate Judge Leshner addressing dozens of discovery disputes. Dkt. 321, 322. The Konnektive Defendants produced more than 12,000 pages of documents. Decl. of K. Kneupper at ¶ 33. The Konnektive Defendants further produced highly granular data about the sales at issue. *Id*. Ms. Tan was deposed, as well as Defendants Matthew Martorano and Kathryn Martorano. *Id*. Four former Konnektive employees were deposed, as well as three current employees. *Id*. Kiet Lieu was deposed, and the owner of Total Health

Supply TUA, Inc. was questioned under oath at a bankruptcy hearing. *Id*. Four individuals employed in the payment processing industry were also deposed, as were several expert witnesses on either side. *Id*.

In addition, Plaintiff had insight into the merits of the lawsuit both from the Court's rulings on multiple rounds of motions to dismiss (dkts. 88, 130), its ruling granting class certification (dkt. 391); and its ruling denying the motion for summary judgment by Kathryn Martorano (dkt. 416).

Plaintiff's counsel thus had more than adequate information available to assess the strength of their case.

## I.     The Proposal Was Negotiated At Arms' Length

Rule 23(e)(2)(B), as amended in 2018, now requires that the Court consider whether the proposed class settlement "was negotiated at arm's length." The Ninth Circuit has laid out certain factors which Courts should consider in conducting the "higher level of scrutiny for evidence of collusion or other conflicts of interest" that is required for pre-certification settlements. *See Allen v. Bedolla*, 787 F.3d 1218, 1224 (9th Cir. 2015). This includes a requirement that the Court look for certain "subtle signs that class counsel have allowed pursuit of their own self-interests . . . to infect the negotiations." *Id.* (quoting *Jones v. GN Netcom, Inc. (In re Bluetooth Headset Prods. Liab. Litig.)*, 654 F.3d 935, 947 (9th Cir. 2011)).

Those signs of self-dealing include: (1) when counsel receive a disproportionate distribution of the settlement; (2) when the parties negotiate a 'clear sailing' arrangement' (i.e., an arrangement where defendant will not object to a certain fee request by class counsel); and (3) when the parties create a reverter that returns unclaimed fees to the defendant. *Id.*

None of these signs exist here. There is nothing in the proposed agreement as to the amount that counsel will receive. Instead, that issue has been left for the Court itself to resolve via motion. *See, e.g.*, Ex. 1 at section III ¶ 5(a); section VIII. Counsel did not seek to negotiate any agreement as to their own fees **at all** in this settlement. The Ninth Circuit

has held that a decision by class counsel to leave the issue of their fees to the Court via motion is a strong sign that there has been no collusion or self-dealing: "Providing further assurance that the agreement was not the product of collusion, class counsel McCuneWright did not reach an agreement with the automakers regarding the amount of attorney's fees to which they were entitled." *Espinosa v. Ahearn (In re Hyundai & Kia Fuel Econ. Litig.)*, 926 F.3d 539, 569-70 (9th Cir. 2019).

As to the second sign of self-dealing, a clear sailing arrangement, there is none in this settlement.

As to the third sign of self-dealing, an agreement to revert unclaimed fees to the defendants, again, there is none. Instead, class counsel negotiated a clean settlement in which unclaimed fees would be distributed to a well-respected *cy pres* recipient, the NCLC. *See* Ex. 1 at section III ¶ 4(e); section I ¶ 17. The NCLC is a non-profit which has a history of addressing internet fraud and payment processing fraud. Decl. of R. Dubois. The NCLC has been approved as an appropriate *cy pres* recipient in various other cases. *See Smith v. One Nev. Credit Union*, No. 2:16-cv-02156-GMN-NJK, 2020 U.S. Dist. LEXIS 244534 at *3-6 (D. Nev. Dec. 30, 2020);  *Spann v. J.C. Penney Corp.*, 211 F. Supp. 3d 1244, 1261 (C.D. Cal. 2016) ("Indeed, courts have repeatedly found the NCLC to have the requisite nexus with consumer classes for qualification as a *cy pres* recipient."); *Feist v. Petco Animal Supplies, Inc.*, No. 3:16-cv-01369-H-MSB, 2018 U.S. Dist. LEXIS 197186 at *17-18 (S.D. Cal. Nov. 16, 2018) Counsel for Plaintiffs have no connection personally or professionally to the NCLC and their only relationship has been purchasing and utilizing highly valuable practice guides the NCLC has created on consumer law, including in this lawsuit. Decl. of K. Kneupper at ¶ 34.

Not only are there no signs of self-dealing, but there are many signs to the contrary. The settlement was negotiated only after an initial Early Neutral Evaluation before Magistrate Judge Butcher, dkt. 174, as well as a subsequent settlement conference with Magistrate Judge Leshner, dkt. 345. Plaintiff and the Konnektive Parties then held a mediation with Antonio Piazza. Decl. of K. Kneupper at ¶ 35. Mr. Piazza is a highly

regarded mediator who assisted in negotiating the agreement between the parties. *Id*. *See Bluetooth*, 654 F.3d at 948 (holding that the "presence of a neutral mediator," while not dispositive, is "a factor weighing in favor of a finding of non-collusiveness"). Further supporting non-collusiveness is that the settlement amount and proposed bench trial here was a result of a mediator's proposal made by Mr. Piazza. Decl. of K. Kneupper at ¶ 35. *See Barragan v. Populus Fin. Grp., Inc.*, No. 2:21-cv-08021-SB-MRW, 2023 U.S. Dist. LEXIS 27605 at *9 (C.D. Cal. Feb. 10, 2023) ("The settlement was reached after mediation and only after the parties received a mediator's proposal, which suggests that it was the product of informed, arm's-length negotiations.").

Other aspects of the settlement discussed herein further suggest a lack of collusion. The case was not one in which class counsel sought a quick settlement: it was instead a hard-fought one with extensive discovery, as well as extensive investigation pre-suit, and an amount that reflects Class Counsel's willingness to pursue the case zealously as far as needed to secure a favorable recovery for the Class.

## J.    The Experience and Views of Counsel

"Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation. This is because parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." *Lloyd v. Navy Fed. Credit Union*, No. 17-cv-1280-BAS-RBB, 2019 U.S. Dist. LEXIS 89246 at *33 (S.D. Cal. May 28, 2019) (quoting *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 528).

Counsel for Plaintiff in this case are highly experienced in complex litigation. *See* Decl. of K. Kneupper at ¶¶ 1-29; Decl. of C. Covey at ¶ 1-22. Counsel are further highly experienced in consumer law cases, and the law firm of Kneupper & Covey currently maintains a docket of over 200 active individual consumer law cases in either arbitration or litigation. Decl. of K. Kneupper at ¶ 29. The law firm has settled or recovered judgments in over 500 individual consumer law cases, and counsel are regularly involved in numerous

mediations or settlement discussions. *Id.* at ¶ 30. In 2023, these individually settled or recovered cases by Kneupper & Covey amounted to more than $2.5 million. *Id.*

Based on their experience, Counsel for Plaintiff believe this is a highly favorable settlement for the Class. Partly this is because the amount being recovered exceeds the actual damages, and has the potential to exceed them by a significant amount if Plaintiff prevails in the proposed bench trial. Weighed against the risks of an unfavorable litigation outcome and the time and expense needed to try for a higher damages award before a jury, Counsel believes they have obtained an extremely favorable outcome for the Class, even if this was all that is ever recovered.

A settlement that "offers an immediate and certain award for a large number of potential class members" creates "much less risk of anyone who may have actually been injured going away empty-handed." *In re Omnivision Techs.*, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2007). By putting a floor on the damages of $2 million, the Class is guaranteed a highly significant recovery even if they lose on the issue of liability, while retaining the ability to try to recover more money through the proposed bench trial. And while it would theoretically be possible absent settlement to seek a higher award than the $5 million ceiling, to do so would create collectability issues. The Konnektive Defendants have stated in discovery that they do not have an insurance policy that applies to the claims here. Decl. of K. Kneupper at ¶ 31. There is significant uncertainty if a larger, eight figure judgment would be collectable. And even if Plaintiff was successful in locating and levying substantial assets that the Konnektive Defendants controlled such a process would likely significantly delay any recovery to the Class for months if not years.

## K.    The Remaining Factors

As to the presence of a governmental participant, "[n]o government entity participated in this case. Under these circumstances, this factor is neutral." *Klee v. Nissan N. Am., Inc.*, No. CV 12-08238 AWT (PJWx), 2015 U.S. Dist. LEXIS 88270 at *28 (C.D. Cal. July 7, 2015). With respect to the reaction of the class members to the proposed settlement, as discussed above, there have to date been zero objections and zero requests for exclusion.

While the claims process is ongoing, and the deadline has not passed for objection or exclusion, at this time the response is highly positive and suggests a presumption of adequacy of the settlement. *See* Decl. of C. Azari.

As to whether "the proposal treats class members equitably relative to each other," the settlement treats class members equitably because it bases their recovery on the amount they paid, subject to pro rata increases or decreases based on the number of claims. Ex. 1 at section III. Depending on how many class members make claims, that amount can also be increased pro rata up to three times the class member's actual damages (to reflect trebling). *Id.* at section IV(4)(b).

While Plaintiff has sought an incentive award of $3,000 from each settlement ($6,000 in total) in line with 9th Circuit authority, *see* ex. 1 at section VIII(2), the amount was not negotiated as part of the settlement and the Court will ultimately determine whether such an award is proper, and if so, the amount. Such incentive awards do not constitute inequitable treatment of class members. *Preston v. Porch.Com, Inc.*, No. 21-CV-168 JLS (BLM), 2022 U.S. Dist. LEXIS 75256 at *19 (S.D. Cal. Apr. 25, 2022).

## V.  CONCLUSION

Plaintiff respectfully requests that the Court should grant final approval after consideration at the final approval hearing.

DATED: January 2, 2025                    **KNEUPPER & COVEY, PC**

/s/Kevin M. Kneupper

Kevin M. Kneupper, Esq.

*Attorneys for Plaintiff LeAnne Tan and the putative Class*