UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEANNE TAN, individually and on behalf of all others similarly situated,<br><br>                              Plaintiff,<br><br>v.<br><br>QUICK BOX, LLC, et al.,<br><br>                              Defendants.<br><br>AND RELATED CROSS-ACTION. | Case No.: 20cv1082-LL-DDL<br><br>**ORDER:**<br><br>**GRANTING MOTIONS FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENTS [ECF Nos. 488, 492];**<br><br>**GRANTING MOTIONS FOR ATTORNEY FEES, COSTS, AND INCENTIVE AWARDS [ECF Nos. 487, 489];**<br><br>**DENYING AS MOOT SEALING MOTION [ECF No. 494]** |

    On June 12, 2020, Plaintiff Leanne Tan filed a putative consumer fraud class action against Defendants La Pura, Quick Box, and Konnektive, alleged operators of an online "free trial" scam. ECF No. 1. The First Amended Complaint is operative. ECF No. 89 ("FAC"); *see* ECF No. 299 (denying motion to further amend the complaint but noting Konnektive's post-suit name change on the docket). Plaintiff alleges that Defendants fraudulently lured her and similarly situated consumers into purchasing La Pura skin care products by offering "free samples" and assuring her that she would only pay for shipping

and handling, but then charging her for samples and an undisclosed recurring payment for additional samples each month. *See* FAC ¶¶ 8–121.

The Court has jurisdiction over this action under the Class Action Fairness Act. 28 U.S.C. § 1332(d). Plaintiff moved for class certification, which the Court granted. ECF Nos. 229, 378, 391. Plaintiff later moved for default against La Pura, which the Clerk entered. ECF Nos. 214, 215. Then Plaintiff settled in principle with Quick Box and Konnektive. ECF Nos. 330, 332, 464, 468, 477. In turn, Plaintiff moved for preliminary settlement approvals, which the Court granted too. ECF Nos. 350, 481, 483, 486.

After the parties' settlement administrator began notifying class members of the preliminary approvals, Plaintiff moved for final settlement approval with Quick Box as well as for attorney fees, costs, and an incentive award. ECF Nos. 487, 488. Plaintiff moved for the same with Konnektive. ECF Nos. 489, 492. Unlike with Quick Box, however, Konnektive opposed in part Plaintiff's request for attorney fees. ECF No. 493. Konnektive also moved to seal materials in support of its opposition. ECF No. 494. Plaintiff replied. ECF No. 496.

The administrator contacted 99% of all class members across both settlements with the following result: ~10,000 of the ~60,000 members responded to opt into the settlements with actual damages totaling ~$1,365,000. *See* ECF No. 502 ¶¶ 12, 17, 25–28. This is a ~16% take-up rate and ~$136.50 average claim per class member. Notably, no one objected to or opted out of the settlements. *See id*.

On June 10, 2025, in accordance with Federal Rule of Civil Procedure 23(e)(2), the Court held a hearing to better evaluate the fairness of the settlements, pending motions, and any other outstanding matters. ECF Nos. 500, 503, 511.

**I.    CLASS CERTIFICATION**

The Court found that the proposed settlement class met Rule 23(a) and (b)(3) requirements for class action certification, namely numerosity, commonality, typicality, adequacy of the class representative and class counsel, predominance of common questions of fact and law among the settlement class, and superiority. *See* ECF Nos. 391, 483, 486.

1 | As such, the Court preliminarily certified the settlement class as:

> All consumers in the U.S. who, during the class period, were billed for products sold, shipped, or caused to be sold or shipped by any of the Defendants under the La Pura, La'Pura, La' Pura, LaPura or any similar brand name, including any La Pura Product marketed or otherwise promoted by Rocket Management Group. Excluded from the settlement class are: (i) jurists and mediators who are or have presided over the action, Plaintiff's counsel, and Defendants' counsel, their employees, legal representatives, heirs, successors, assigns, or any members of their immediate family; (ii) any government entity; (iii) the Quick Box and Konnektive Parties and any entity in which the Quick Box and Konnektive Parties have a controlling interest, any of their subsidiaries, parents, affiliates, and officers, directors, employees, legal representatives, heirs, successors, or assigns, or any members of their immediate family; and (iv) any persons who timely opt out of the settlement class.

*See* ECF Nos. 391, 483, 486. The Court affirms its findings and certifies the class for settlement purposes. It also affirms its appointment of Mr. Kneupper and Mr. Covey of Kneupper & Covey PC as class counsel representing all class members per Rule 23(g)(1).

## II.   CLASS SETTLEMENT TERMS

Plaintiff's settlement agreement with Quick Box is signed and dated October 2023. ECF No. 488-4. In consideration for class members releasing their claims against it, Quick Box agreed to pay $5,500,000 into a common fund to distribute to: (1) class counsel for their fees and costs; (2) Ms. Tan, class representative, for her incentive service award; (3) Epiq Class Action and Claims Solutions, settlement administrator, for expenses to notify class members of this settlement, process their claims, and distribute their payments; (4) class members who opted into this settlement for the amount they paid for products sold or shipped by any Defendant under La Pura or a similar brand name, subject to a pro rata adjustment up to three times the amount they paid based on fund availabilities; and (5) National Consumer Law Center, an American nonprofit and designated cy pres gift recipient, for any leftover money from the common fund. *See id.*

Plaintiff's settlement agreement with Konnektive is signed and dated August 2024. ECF No. 492-4. In consideration for class members releasing their claims against it,

1  Konnektive agreed to pay either $2,000,000 or $5,000,000 into a common fund for the
2  same distribution as in Quick Box's fund. *See id*. The amount depends on the agreed-to
3  bench trial before Magistrate Judge Leshner: if he finds that Plaintiff proved any of her
4  Consumer Legal Remedies Act ("CLRA") claims against Konnektive by a preponderance
5  of the evidence and that no affirmative defense applies, Konnektive shall pay $5,000,000;
6  conversely, if Plaintiff does not prove any CLRA claim or Konnektive is otherwise found
7  not liable due to one of its defenses, Konnektive shall only pay $2,000,000 into the
8  common fund. *See id*. at 15–16.

## III.  FINAL APPROVAL OF CLASS SETTLEMENTS

### A.  Legal Standard

The Ninth Circuit has a "strong judicial policy" favoring class action settlements. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). Still, if a settlement "would bind class members," a court "may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). This is due to the "inherent risk" that "class counsel may collude with the defendants, tacitly reducing the overall settlement in return for a higher attorney's fee," which presents "unique due process concerns for absent class members." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (quotation marks omitted).

Factors to consider are whether: (A) the class representative and class counsel have "adequately represented the class;" (B) the settlement was "negotiated at arm's length;" (C) the "relief provided for the class is adequate," given, for instance, the "costs, risks, and delay of trial and appeal;" and (D) the settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2). We further weigh: "(1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members." *Kim v. Allison*, 8 F.4th 1170, 1178 (9th Cir. 2021).

**B.    Discussion**

    **1.    Adequate Representation**

To serve as class representative, one must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement serves to protect the "constitutional due process concerns" of absent members who will be bound by a class action judgment. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Id*.

Here, there is no conflict of interest between Ms. Tan, class counsel, and the class as a whole. Over the past five years, Ms. Tan and class counsel have conveyed their abilities to vigorously prosecute this action on behalf of the class. This included class counsel reviewing over 15,000 pages of documents in discovery, deposing over a dozen witnesses, defending Ms. Tan in her deposition, briefing motions to dismiss ("MTDs") and motions for summary judgment ("MSJs"), mediating, and so on. *See* ECF Nos. 88, 130, 416, 482, 488, 492. This factor favors approving the class settlements.

    **2.    Negotiated at Arm's Length**

When settlement agreements are "reached after mediation with a neutral mediator," they are "presumptively the product of a non-collusive, arms-length negotiation." *Saucillo v. Peck*, 25 F.4th 1118, 1124 (9th Cir. 2022). That is the case here. Plaintiff, Quick Box, and Konnektive partook in the Court's Early Neutral Evaluation before a Magistrate Judge and then mediated again and again. *See* ECF Nos. 350, 481. These serious and informed efforts over years of litigation ultimately led each side to accept an experienced mediator's settlement proposal. The Court finds these settlements to be the product of non-collusive, arm's-length negotiations. This factor, too, favors approval.

    **3.    Adequate Relief**

In determining whether the relief provided to a class is adequate, the Court weighs the strength of plaintiff's case, risks of further litigation, settlement amounts, and so forth.

*See* Fed. R. Civ. P. 23(e)(2)(C); *Kim*, 8 F.4th at 1178. Plaintiff's case has survived MTDs, an MSJ, and obtained initial class certification, but, on the other hand, another MSJ, motion to decertify the class, and motions to exclude Plaintiff's expert testimonies were merely mooted due to the settlements. *See* ECF Nos. 88, 130, 391, 416, 482. This suggests that the case is relatively strong so far but by no means a slam dunk given the inherent risks in trying to proceed to trial. On balance, then, these favor approval. *See Jeter-Polk v. Casual Male Store, LLC*, No. 14-cv-0891-VAP-DTBx, 2016 WL 9450464, at *4 (C.D. Cal. June 29, 2016) (finding "this factor favors final approval" when "the relative strength" of the case was weighed against "the risks and costs associated with future complex litigation"); *Couser v. Comenity Bank*, 125 F. Supp. 3d 1034, 1041 (S.D. Cal. 2015) ("It has been held proper to take the bird in hand instead of a prospective flock in the bush.").

Above all, the money favors approving these settlements. Quick Box agreed to pay $5,500,000 and Konnektive will pay $2,000,000 or $5,000,000. ECF Nos. 488-4, 492-4. Class counsel both declare that damages in this case total ~$6,400,000. ECF Nos. 487-1 ¶ 29; 487-2 ¶ 31; 488-1 ¶ 31; 488-2 ¶ 27; 489-1 ¶ 29; 489-2 ¶ 31; 492-1 ¶ 28; 492-3 ¶ 31. After the agreed-to bench trial before Judge Leshner, which will result in Konnektive paying either $2,000,000 or $5,000,000, the combined settlements will total $7,500,000 or $10,500,000. At worst this is 117% of the maximum actual damages and, at best, 164%. Courts routinely approve settlements for far less. *See, e.g.*, *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) ("[T]he Settlement amount of almost $2 million was roughly one-sixth of the potential recovery, which, given the difficulties in proving the case, is fair and adequate."); *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 256 (N.D. Cal. 2015) ("[T]he agreed upon common fund represents between 27 percent and 11 percent of the total potential recovery. The Court is satisfied that these numbers are fair."). Indeed, even assuming the class recovered all its damages and had them trebled at trial, the settlements before the Court are still safely within the wide ranges of fairness.

Finally, the settlements do not guarantee a recovery for attorney fees, costs, and incentive awards, which are separate motions. Even if the Court grants those motions, all

members who opted into the settlements will receive their actual losses. *See* ECF No. 511. Based on the ~16% take-up rate, this is a ~$136.50 average recovery per class member. *See* ECF No. 502 ¶¶ 12, 17, 25–28. Depending on the outcome of the bench trial and final accounting from the parties' settlement administrator, each member may even receive a pro rata increase up to two or three times their actual losses. *See* ECF No. 511. These are meaningful recoveries, so this factor likewise favors approval.

### 4. Equitable Relief

Class action settlements ought to treat "class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). Here, each class member who was billed for products sold or shipped by any Defendant under La Pura or a similar brand name can recover the amount they paid, subject to pro rata increases. *See* ECF Nos. 488-4, 492-4, 511. Because each class member can receive their fair share of the cash, they are treated equitably relative to each other. This factor also favors approval.

### 5. Discovery Completed and Stage of Proceedings

"Extensive discovery" and at least "one round of summary judgment proceedings" enables a court to "find that counsel had a good grasp on the merits of their case" and to "weigh this factor in favor of approval." *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009). That is the case here. Class counsel litigated this case for over three years with Quick Box and over four years with Konnektive prior to settling with each of them. *See* ECF Nos. 1, 350, 481. The parties produced over 15,000 pages of documents in discovery and deposed over a dozen witnesses, including experts. *See* ECF Nos. 488, 492. The parties also briefed two MSJs. *See* ECF Nos. 338, 416, 431, 482. This factor therefore favors approval.

### 6. Class Counsel Experience and Views

"Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). "Great weight" is thus "accorded to the recommendation of counsel, who are most closely acquainted with the facts of the

underlying litigation." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) (quotation marks omitted). Here, class counsel both have extensive experience litigating consumer law cases and have conveyed a high degree of competence in this litigation. They strongly believe that the settlements with Quick Box and Konnektive are fair, adequate, and reasonable. *See* ECF Nos. 488, 492. This factor favors approval.

### 7. Governmental Participant

"There is no governmental participant in this case, so this factor is neutral." *McMorrow v. Mondelez Int'l, Inc.*, No. 17-cv-2327-BAS-JLB, 2022 WL 1056098, at *4 (S.D. Cal. Apr. 8, 2022). Indeed, "this factor weighs slightly in favor of final approval" when nonparty "governmental officials served" with settlement notices, "as required by CAFA" under 28 U.S.C. § 1715, do not object to their approval. *Barr v. SelectBlinds LLC*, No. 22-cv-8326-SPG-PD, 2024 WL 5162609, at *10 (C.D. Cal. Mar. 4, 2024). That is the case again here. There is no governmental party, and the nonparty governmental officials that the administrator served with the settlement notices did not object to their approval. *See* ECF Nos. 361, 501-1. This factor slightly favors approval or is, at a minimum, neutral.

### 8. Class Member Reactions to Proposed Settlements

The "absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Nat'l Rural Telecomms.*, 221 F.R.D. at 529. The Court approved the parties' requested procedures for notifying members of their right to object to or opt out of the settlements. ECF Nos. 483, 486. The administrator has since executed these procedures, which satisfies due process. *See* ECF No. 502. The result: no one objected to or opted out of the settlements. *See id.* This factor therefore favors approval. *See Testone v. Barlean's Organic Oils, LLC*, No. 19-cv-0169-RBM-BGS, 2023 WL 2375246, at *4 (S.D. Cal. Mar. 6, 2023) (finding this factor favors "final approval" when there is a "strong claims rate, lack of objections, and low opt-out rate").

On balance of the factors above, the Court finds Plaintiff's settlement agreements with Quick Box and Konnektive to be fair, reasonable, and adequate. It thus approves them.

## IV. MOTIONS FOR ATTORNEY FEES, COSTS, AND INCENTIVE AWARDS

Having approved the settlements, the Court next considers the requests for attorney fees, costs, and incentive awards. ECF Nos. 487, 489. For the settlement with Quick Box, Plaintiff's attorneys seek one-third of the $5,500,000 common fund ($1,833,333) as their reasonable fees; $119,618 as their costs; and $3,000 as Ms. Tan's incentive award. *See* ECF No. 487. For the settlement with Konnektive, Plaintiff's attorneys seek one-third of the either $2,000,000 or $5,000,000 common fund ($666,666 or $1,666,666) as their reasonable fees; $259,307 as their costs; and $3,000 as Ms. Tan's incentive award. *See* ECF No. 489.

### A. Attorney Fees

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law." Fed. R. Civ. P. 23(h). Courts have an "independent obligation to ensure that the award, like the settlement itself, is reasonable." *Bluetooth*, 654 F.3d at 941. "Where a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method." *Id*. at 942. The "lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer," subject to an "upward or downward" departure based on other "reasonable" factors like "the benefit obtained for the class." *Id*. at 941–42.

"Many courts and commentators have recognized" that "the percentage of the available fund analysis is the preferred approach in class action fee requests because it more closely aligns the interests of the counsel and the class, i.e., class counsel directly benefit from increasing the size of the class fund and working in the most efficient manner." *Aichele v. City of Los Angeles*, No. 12-cv-0863-DMG-FFMx, 2015 WL 5286028, at *5 (C.D. Cal. Sept. 9, 2015) (listing cases). This Court agrees.

Next, courts "typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances'

justifying a departure." *Bluetooth*, 654 F.3d at 942. When assessing "the reasonableness of the requested fees," the "Ninth Circuit has approved" factors like: "(1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases," along with (6) the "reaction of the class" and (7) a cross-check "lodestar analysis." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046–48 (N.D. Cal. 2008). The Court will consider each reasonableness factor in turn.

### 1. Results Achieved

"The overall result and benefit to the class from the litigation is the most critical factor in granting a fee award." *Omnivision*, 559 F. Supp. 2d at 1046. Here, the settlements eclipse the total actual damages in this case regardless of the bench trial's outcome. This is a great achievement on behalf of the class and supports granting the requested fees.

### 2. Litigation Risk

"The risk that further litigation might result in Plaintiffs not recovering at all" is a "significant factor in the award of fees." *Id.* at 1046–47. Although Plaintiff's case has survived MTDs, an MSJ, and obtained initial class certification, another pending MSJ, motion to decertify the class, and motions to exclude Plaintiff's expert testimonies were merely mooted due to the settlements. *See* ECF Nos. 88, 130, 391, 416, 482. Without these settlements, Defendants will likely re-file those motions and, if necessary, move for further pre-trial relief. Whether a jury would find in Plaintiff's favor is also entirely uncertain, as would the results of any ultimate appeals. The risk that Plaintiff would have recovered less, if anything, supports granting the requested fees.

### 3. Skill Required

The "prosecution and management of a complex national class action requires unique legal skills and abilities." *Omnivision*, 559 F. Supp. 2d at 1047. Plaintiff's case has attained initial class certification and withstood MTDs and an MSJ, despite other alleged weaknesses, which conveys her attorneys' skills. This factor thus supports the requested fees.

### 4. Contingent Fee

"The importance of assuring adequate representation for plaintiffs who could not otherwise afford competent attorneys justifies providing those attorneys who do accept matters on a contingent-fee basis a larger fee than if they were billing by the hour or on a flat fee." *Id.* at 1047. This suit began over five years ago and Plaintiff's attorneys have spent over 3,200 hours litigating this case without compensation. *See* ECF Nos. 487-3, 489-4, 489-5 (billing records). They have also advanced over $375,000 in litigation expenses. *See* ECF Nos. 487-3, 489-6, 489-7, 489-8 (expense records). This substantial opportunity cost and outlay, when there is a risk of no recovery, further supports awarding the requested fees.

### 5. Awards in Similar Cases

In "most common fund cases," the awarded fee "exceeds" the "benchmark of 25%." *Omnivision*, 559 F. Supp. 2d at 1047. This includes awarding one-third of common funds as reasonable attorney fees. *See Testone*, 2023 WL 2375246, at *7 (awarding "one-third of the common fund" as "reasonable attorneys' fees" in a "food [mis]labeling" class action); *Clarke v. Insight Glob., Inc.*, No. 13-cv-0357-H-BLM, 2015 WL 13828417, at *7–8 (S.D. Cal. Jan. 5, 2015) (awarding the same in a "wage and hour class action"). Therefore, although the facts of this case are not identical to those cases, they suffice for the Court to find this factor neutral.

### 6. Class Reaction

In response to the tens of thousands of notices provided to 99% of the class members, which eventually specified that Plaintiff's attorneys were seeking one-third of the common funds for their fees, no one objected to or opted out of the settlements. *See* ECF Nos. 502, 511. This factor, then, supports the requested fees.

### 7. Lodestar Comparison

"Calculation of the lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002). Plaintiff's attorneys have spent over

3,200 hours litigating this case to date, which, at their hourly rates, results in a lodestar exceeding $2,150,000. *See* ECF Nos. 487-3, 489-4, 489-5 (billing records). The requested one-third fee amounts to either $2,499,999 or $3,499,999, depending on the outcome of Plaintiff and Konnektive's bench trial, which represents a multiplier of either 1.16 or 1.63 times the lodestar. "In similar [class action] cases, courts have approved multipliers ranging between 1 and 4." *Omnivision*, 559 F. Supp. 2d at 1048; *see, e.g.*, *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1176 (S.D. Cal. 2007) (finding "a multiplier of 1.47" to be "reasonable in light of the duration of the litigation and the risk assumed by counsel in accepting this case on a contingency basis"). This lodestar cross-check suggests that the requested one-third fee award is reasonable, particularly since the 2020–24 bills on record exclude this year and the additional time needed to litigate the bench trial before Judge Leshner.

On balance of the factors above, the Court finds Plaintiff's attorneys' requests for one-third of the common funds to be reasonable fee awards. It thus approves them.[1]

**B.   Costs**

"There is no doubt that an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of reasonable litigation expenses from that fund." *Selk v. Pioneers Mem'l Healthcare Dist.*, 159 F. Supp. 3d 1164, 1181 (S.D. Cal. 2016). Courts have found "meals, hotels, and transportation; photocopies; postage, telephone, and fax; filing fees; messenger and overnight delivery; online legal research; class action notices; experts, consultants, and investigators; and mediation fees" to be "reasonable and necessary" litigation costs in class actions. *In re Immune Response*, 497 F. Supp. at 1177 (omitting numerical brackets).

---

[1] The Court was not persuaded by Konnektive's cursory opposition to Plaintiff's attorneys' request for one-third of its common fund, which, instead of arguing that such-and-such reasonableness factor supports a lesser recovery, basically argued that Plaintiff's claims were weak. *See generally* ECF No. 493. Konnektive's motion to seal materials in support of its opposition, which the Court did not rely on in its ruling, is thus moot. ECF No. 494.

Here, Plaintiff's attorneys request $119,618 and $259,307 for litigation costs with Quick Box and Konnektive under the same preceding categories. ECF Nos. 487-3, 489-6, 489-7, 489-8. The Court finds these costs to be reasonable under the circumstances and adequately documented. It thus approves them.

### C. Incentive Awards

"Incentive awards are payments to class representatives for their service to the class in bringing the lawsuit." *Radcliffe v. Experian Info. Sols. Inc.*, 715 F.3d 1157, 1163 (9th Cir. 2013). "In cases where the class receives a monetary settlement, the awards are often taken from the class's recovery." *Id*. Courts must "scrutinize carefully the awards so that they do not undermine the adequacy of the class representatives." *Id*. After all, "if class representatives expect routinely to receive special awards in addition to their share of the recovery, they may be tempted to accept suboptimal settlements at the expense of the class members whose interests they are appointed to guard." *Staton v. Boeing Co.*, 327 F.3d 938, 975 (9th Cir. 2003). In scrutinizing these awards, we consider "the number of named plaintiffs receiving incentive payments, the proportion of the payments relative to the settlement amount, and the size of each payment." *Id*. at 977.

Here, the one named plaintiff, Ms. Tan, seeks to receive a $3,000 incentive payment for each settlement with Quick Box and Konnektive. $3,000 is 0.05% of the $5,500,000 settlement with Quick Box and 0.15% or 0.06% of the $2,000,000 or $5,000,000 settlement with Konnektive. The Court finds Ms. Tan's two $3,000 incentive awards totaling $6,000 eminently reasonable. This is because Defendants deposed her, moved for sanctions against her and her attorneys (which the Court denied, *see* ECF Nos. 109–111, 115), and because Ms. Tan has otherwise helped further the entire class's interest over the last five years in this rather complex litigation. The Court therefore awards the requested incentive awards. *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 947–48 (9th Cir. 2015) (affirming "$5,000" as "reasonable" awards for each of the nine "class representatives" when the "$45,000 in incentive awards makes up a mere .17% of the total settlement fund").

## V. CONCLUSION

Accordingly, the Court **GRANTS** Plaintiff's Motions for Final Approval of Class Action Settlements, ECF Nos. 488, 492; **GRANTS** Plaintiff's Motions For Attorney Fees, Costs, and Incentive Awards, ECF Nos. 487, 489; and **DENIES AS MOOT** Konnektive's Sealing Motion, ECF No. 494. As such, to be paid out of the common funds in line with the settlement agreements, the Court **ORDERS** as follows:

1. This Order incorporates both settlement agreements, including the exhibits and definitions. *See* ECF No. 488-4 (Quick Box); ECF No. 492-4 (Konnektive).

2. For the settlement with Quick Box, class counsel shall receive one-third of the $5,500,000 common fund—$1,833,333—as their reasonable fees, $119,618 as their costs, and Ms. Tan shall receive a $3,000 award.

3. For the settlement with Konnektive, class counsel shall receive one-third of either the $2,000,000 or $5,000,000 common fund—$666,666 or $1,666,666—as their reasonable fees, $259,307 as their costs, and Ms. Tan shall receive a $3,000 award. For the final amount of this common fund only, if Judge Leshner finds that Plaintiff proved any of her CLRA claims against Konnektive by a preponderance of the evidence and that no affirmative defense applies, Konnektive shall pay $5,000,000; conversely, if Plaintiff does not prove any CLRA claim or Konnektive is otherwise found not liable due to one of its defenses, Konnektive shall instead pay $2,000,000 into the common fund.

4. For both agreements, the settlement administrator, Epiq Class Action and Claims Solutions, shall receive its expenses to notify class members of the settlements, process their claims, and distribute their payments. Class members who opted into the settlements shall receive the amount they paid for products sold or shipped by any Defendant under La Pura or a similar brand name, subject to a pro rata increase up to three times the amount they paid based on fund availabilities. National Consumer Law Center, an American nonprofit and designated cy pres gift recipient, shall receive any leftover money from the common funds.

5. Class members who did not affirmatively opt out are enjoined from partaking

as a plaintiff, claimant, or class member in all other proceedings in all jurisdictions based on the released claims.

6. Approving these two class settlements does not establish any party's legal violation or other wrongdoing.

7. The parties may consent to Judge Leshner's jurisdiction for resolving any disputes over the full execution of this Order and Final Judgment by signing and lodging the attached consent form by **July 10, 2025**.

8. The Court, finding no reason to delay entering this Order, directs the Clerk to enter Final Judgment. *See* Fed. R. Civ. P. 54(b). This action is hereby **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED.**

Dated:  July 3, 2025

_____
Honorable Linda Lopez
United States District Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEANNE TAN, individually and on behalf of all others similarly situated,<br><br>                    Plaintiff,<br><br>v.<br><br>QUICK BOX, LLC, et al.,<br><br>                    Defendants. | CONSENT TO EXERCISE OF SETTLEMENT JURISDICTION BY A UNITED STATES MAGISTRATE JUDGE AND ORDER OF REFERENCE<br><br>Case No.: 20cv1082-LL-DDL |

### CONSENT TO JURISDICTION BY A UNITED STATES MAGISTRATE JUDGE

The parties, having settled this case, by signing below further voluntarily consent to the jurisdiction of United States Magistrate Judge David D. Leshner to decide: (1) all disputes regarding settlement terms arising during the documentation thereof not resolved by the parties themselves; and (2) all disputes arising out of the terms of the settlement agreement once completed. The parties further consent and agree that any decision by the Magistrate Judge regarding any such dispute(s) shall be **FINAL AND BINDING, WITH NO APPEAL**.

The parties intend to provide Magistrate Judge Leshner with plenary authority to achieve finality regarding disputes, reduce the risk of future litigation, and provide a venue to solve disputes with a minimum of expense. As part of his authority, Magistrate Judge Leshner may impose any sanction or penalty he deems appropriate, which, in his sole discretion, he believes is commensurate with the nature and severity of the dispute and resolution thereof. This authority includes, but is not limited to, monetary and/or injunctive relief and discretion to impose sanctions or penalties including imposition of any sanction up to and including contempt of court pursuant to 28 U.S.C. §636(e). This consent is valid for *one year* from the date this order is signed by the District Judge.

| Signatures of All Parties and Attorneys | Date |
|---|---|
| _____<br>circle one each: (Plaintiff/Defendant) and (Attorney/Client) | |
| _____<br>circle one each: (Plaintiff/Defendant) and (Attorney/Client) | |
| _____<br>circle one each: (Plaintiff/Defendant) and (Attorney/Client) | |
| _____<br>circle one each: (Plaintiff/Defendant) and (Attorney/Client) | |
| _____<br>circle one each: (Plaintiff/Defendant) and (Attorney/Client) | |
| _____<br>circle one each: (Plaintiff/Defendant) and (Attorney/Client) | |

### ORDER OF REFERENCE

IT IS HEREBY ORDERED that this case be referred to the Honorable David D. Leshner, United States Magistrate Judge, to resolve all settlement-related disputes as descrived above, in accordance with 28 U.S.C. 636(c) and the foregoing consent of the parties.

_____        _____
Date                                                                                          United States District Judge